HONORABLE MARSHA J. PECHMAN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FIERCE, INC., a Washington corporation,<br><br>                  Plaintiff,<br><br>vs.<br><br>FRANKLIN COVEY CO., a Utah corporation,<br><br>               Defendant. | CIVIL ACTION NO. 2:18-cv-01449-MJP<br><br>**DEFENDANT'S MOTION TO DISMISS**<br><br>**NOTE ON MOTION CALENDAR: NOVEMBER 16, 2018** |

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT ......................................... 1

II. FACTS IN SUPPORT OF MOTION TO DISMISS ................................................. 2

    A.    *Fierce Loyalty: Cracking the Code to Customer Devotion* is the Descriptive Title for Franklin Covey's Forthcoming Book. ......................................... 2

    B.    Plaintiff's Trademark Exists In a Fiercely Overcrowded Educational Services Marketplace. ......................................... 3

    C.    Plaintiff's Complaint Is Chock Full of Vague and Inconsistent Allegations Regarding Its Supposed "Orange" Trade Dress ......................................... 5

III. LAW AND ARGUMENT ......................................... 7

    A.    Legal Standard Governing Defendant's Motion to Dismiss ......................................... 7

    B.    The Court Should Dismiss The Trademark Infringement and Unfair Competition Claims Over The Book Title and Ancillary Webinar Series Because Those Claims Are Built on Demonstrably Flawed Legal Theories and Contain Numerous Factual Deficiencies ......................................... 8

        1.    The title of Defendant's book—*Fierce Loyalty: Cracking the Code to Customer Devotion*—is not a source identifier and, therefore, cannot be "infringing" as a matter of law. ......................................... 8

        2.    "Fierce," as used in the book title *Fierce Loyalty: Cracking the Code to Customer Devotion,* is fair use as a matter of law and cannot give rise to liability. ......................................... 9

        3.    Imposing liability under the Lanham Act based on the title of the book would violate Defendant's First Amendment rights under the Ninth Circuit's binding decision in *Twentieth Century Fox TV v. Empire Distribution.* ......................................... 11

            a.    The book is an expressive work ......................................... 13

            b.    The title clearly has artistic relevance to the contents of the book because the title is the topic of the entire book ......................................... 13

            c.    No alleged facts remotely suggest the title "explicitly misleads" consumers ......................................... 14

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

4.    *Twentieth Century Fox TV v. Empire Distribution* also precludes liability under the Lanham Act for Defendant's use of the book title in the accused promotional material. ......................................................15

C.    This Court Should Dismiss Plaintiff's Unfair Competition Claims Over The Purported "Orange Trade Dress" Because The Allegations Are Plainly Deficient To Establish Protectable Rights In This Basic, Ubiquitous Color. ........17

1.    Plaintiff's trade dress claim fails because it alleges a vague hodgepodge of various "orange" motifs and themes as the purported "trade dress." ......................................................18

2.    Plaintiff fails to allege sufficient facts that the supposed trade dress has acquired secondary meaning. ......................................................21

3.    Plaintiff fails to allege any facts that the supposed trade dress is "non-functional." ......................................................23

D.    Plaintiff's Complaint Fails To State A Consumer Protection Claim For The Same Reasons. ......................................................24

IV.    CONCLUSION......................................................24

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adams v. Johnson*,
5     355 F.3d 1179 (9th Cir. 2004) ........................................................................7

6

*ArcSoft, Inc. v. CyberLink Corp.*,
    153 F. Supp. 3d 1057 (N.D. Cal. 2015) ...................................................18
7

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
8     581 F.3d 1138 (9th Cir. 2009) ..............................................................17, 22

9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................7, 24
10

11

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*,
    No. 08-cv-04397-WHA, 2008 U.S. Dist. LEXIS 109800 (N.D. Cal. Dec. 18,
12     2008) ....................................................................................................18, 23

13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................7
14

15

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) .................................................................16

16

*Bryant v. Matvieshen*,
17     904 F. Supp. 2d 1034 (E.D. Cal. 2012).................................................18

18

*Cairns v. Franklin Mint Co.*,
    292 F.3d 1139 (9th Cir. 2002) ..............................................................9
19

20

*Castagnola v. Hewlett-Packard Co.*,
    No. C 11-05772 JSW, 2012 U.S. Dist. LEXIS 82026 (N.D. Cal. June 13,
21     2012) ...................................................................................................16

22

*In re Cooper*,
    45 C.C.P.A. 923, 254 F.2d 611 (C.C.P.A. 1958).................................8
23

24

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
    No. CV 15-769 PSG, 2015 U.S. Dist. LEXIS 188274 (C.D. Cal. May 8, 2015) .............20, 22

25

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Diamond Foods, Inc. v. Hottrix, LLC*,
  No. 14-cv-03162-BLF, 2016 U.S. Dist. LEXIS 93247, 2016 WL 3880797
  (N.D. Cal. July 18, 2016) ...................................................................................23

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
  No. 16-CV-2779-JLS (BGS), 2018 U.S. Dist. LEXIS 84985 (S.D. Cal. May
  21, 2018) ...............................................................................................................14

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  11 F.3d 1460 (9th Cir. 1993) ...............................................................................10

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
  547 F.3d 1095 (9th Cir. 2008) ........................................................................13, 15

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) ................................................................................7

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
  925 F. Supp. 2d 1067 (C.D. Cal. 2012) ..................................................................8

*In re Gen. Mills IP Holdings II, LLC*,
  124 USPQ2d 1016 (TTAB 2017) .........................................................................22

*Hensley Mfg. v. ProPride, Inc.*,
  579 F.3d 603 (6th Cir. 2009) ...............................................................................10

*Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*,
  270 F.3d 298 (6th Cir. 2001) .................................................................................9

*Keithly v. Intelius Inc.*,
  764 F. Supp. 2d 1257 (W.D. Wash. 2011)............................................................16

*KP Permanent Make-Up v. Lasting Impression I, Inc.*,
  543 U.S. 111 (2004)............................................................................................9, 11

*Lepton Labs, LLC v. Walker*,
  55 F. Supp. 3d 1230 (C.D. Cal. 2014) ............................................................17, 18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ................................................................................7

*Moldex-Metric, Inc. v. McKeon Prods.*,
  891 F.3d 878 (9th Cir. 2018) ..........................................................................17, 23

MOTION TO DISMISS - iv
2:18-cv-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Morton & Bassett, LLC v. Organic Spices, Inc.*,
  No. 15-cv-01849-HSG, 2016 U.S. Dist. LEXIS 120092 (N.D. Cal. Sept. 6,
  2016) ....................................................................................................................22, 23

*Regal Art & Gifts, Inc. v. Fusion Prods.*,
  No. 15-cv-04363-KAW, 2016 U.S. Dist. LEXIS 14506 (N.D. Cal. Feb. 5,
  2016) ....................................................................................................................17, 22

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989).................................................................................12, 13

*Salt Optics, Inc. v. Jand, Inc.*,
  No. 10-cv-00828, 2010 U.S. Dist. LEXIS 131388 (C.D. Cal. Nov. 19, 2010) .......18

*Shaw v. Hahn*,
  56 F.3d 1128 (9th Cir. 1995) ...................................................................................7

*Shwarz v. United States*,
  234 F.3d 428 (9th Cir. 2000) ...................................................................................7

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
  944 F. Supp. 2d 830 (C.D. Cal. 2012) ..................................................................8, 9

*Stephen W. Boney, Inc. v. Boney Servs., Inc.*,
  127 F.3d 821 (9th Cir. 1997) ...................................................................................17

*Syler v. Woodruff*,
  610 F. Supp. 2d 256 (S.D.N.Y. 2009)...................................................................14, 15

*Twentieth Century Fox TV v. Empire Distribution*,
  875 F.3d 1192 (2017)..................................................................................12, 13, 14, 15

*Wal-Mart Stores v. Samara Bros.*,
  529 U.S. 205 (2000)...............................................................................................22

*Weisbuch v. Cnty. of L.A.*,
  119 F.3d 778 (9th Cir. 1997) ...................................................................................7

**Statutes**

15 U.S.C. § 1114 ("Lanham Act").............................................................. *passim*

15 U.S.C. § 1115(b) ...............................................................................................10

15 U.S.C. § 1115(b)(4) ...........................................................................................9

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Washington Consumer Protection Act.................................................................1, 2, 24

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 7, 18

TMEP § 1202.05(a) ...............................................................................................22

TMEP § 1202.08.......................................................................................................8

MOTION TO DISMISS - vi
2:18-cv-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Pursuant to Fed. R. Civ. P. 12(b)(6), Franklin Covey Co. ("Defendant" or "Franklin Covey") hereby respectfully submits this motion for dismissal with prejudice of all claims for relief alleged by Fierce, Inc. ("Plaintiff" or "Fierce").

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

As a matter of law, Plaintiff has not—indeed, cannot—state a valid claim for trademark infringement, unfair competition, or violation of the Washington Consumer Protection Act (the "CPA").  All of the claims for relief center around Defendant's forthcoming book entitled *Fierce Loyalty: Cracking the Code to Customer Devotion.*  Specifically, Plaintiff takes aim at:  (1) the title of the book; (2) a seven-part webinar series based on the contents of book; and (3) the orange color on the book jacket.  None of these accused elements—either individually or collectively—give rise to cognizable claims under the Lanham Act or the CPA.

**The Title—*Fierce Loyalty: Cracking the Code to Customer Devotion*.**  For several powerful reasons, there is no valid claim regarding the title.  For starters, Lanham Act liability cannot attach unless the alleged infringer uses the accused trademark as a "source identifier."  Numerous courts have held that a book title is not a "source identifier" as a matter of law.  For this reason alone, the book cannot give rise to a claim for infringement or unfair competition.  Even if the book title is a source identifier (which it is not), the claim still fails.  Franklin Covey is using the title *Fierce Loyalty: Cracking the Code to Customer Devotion* to describe the contents of its book and the necessary ingredients to develop a loyal customer base.  Such a descriptive use cannot be infringing.  Finally, *Fierce Loyalty: Cracking the Code to Customer Devotion* is an artistic work of authorship.  The Ninth Circuit recently articulated the test for Lanham Act claims involving the title of an expressive work.  It held there can be no infringement so long as the title of the expressive work is "artistically relevant" to the contents of the work itself and does not "explicitly mislead consumers."  This principle applies with powerful force here.  Plaintiff's claims fail as a matter of law regarding the book title.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

1

**The Webinar Series to Promote the Book.**  Likewise, Franklin Covey's seven-part

2 webinar that discusses the contents of Franklin Covey's book does not give rise to colorable

3 Lanham Act or CPA claims. The Ninth Circuit confirmed that auxiliary works (*i.e.*, a live book

4 talk or an online webinar) that use the expressive work's title are likewise immune from Lanham

5 Act claims.

6

**The Color "Orange."**  Lastly, Plaintiff's trade dress claims over the ubiquitous color

7 orange are deficient for numerous reasons.  Plaintiff's allegations are vague, inconsistent, and

8 wholly incomplete.  They cannot support a claim for trade dress infringement as a matter of law.

9

The Court should dismiss all of Plaintiff's claims.

## II.  FACTS IN SUPPORT OF MOTION TO DISMISS

11 **A.**  ***Fierce Loyalty: Cracking the Code to Customer Devotion* is the Descriptive Title for Franklin Covey's Forthcoming Book.**

12

13 Defendant Franklin Covey is a world leader in helping organizations achieve results that

14 require lasting changes in human behavior for a durable, competitive advantage, often the most

15 difficult challenge any organization faces. (Dkt. 1 ("Complaint") ¶ 28.)  Franklin Covey provides

16 content, tools, methodology, training, and thought leadership, all based on a foundation of

17 unshakeable principles and proven practices.  (*Id.*)  It offers these materials through various

18 channels, including white papers, case studies, blogs, videos, web series, books, and more. (*Id.*

19 ¶¶ 31-32.)

20 Franklin Covey's newest book, *Fierce Loyalty: Cracking the Code to Customer

21 Devotion*, is scheduled for release to the public in November 2018.  (*Id.* ¶ 33.)  The title of the

22 book indicates its subject matter and contents; namely, how "fierce loyalty" to one's customers

23 can provide a competitive advantage in the commercial marketplace.  (*Id.*)  The book cover uses

24 a standard orange background, with the word "FIERCE" in black uppercase font and the word

25 "LOYALTY" in white uppercase font.  (*Id.*)  The words "CRACKING THE CODE TO

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

CUSTOMER DEVOTION" appear directly between "FIERCE" and "LOYALTY" in black upper case font with a white background.  (*Id.*)  The top of the book cover contains white uppercase font, indicating that the forward is by Robert A. Whiteman, "CHAIRMAN AND CEO, FRANKLIN COVEY."  (*Id.*)  The bottom of the cover lists the names of the three co-authors in black uppercase font, and indicates in white font that they are "The Loyalty Experts at Franklin Covey."  (*Id.*)

The release of *Fierce Loyalty: Cracking the Code to Customer Devotion* corresponds with a seven-part webinar series based on the contents of book.  (*Id.* ¶ 32, citing website: http://www.fierceloyalty.com)  In the series, the book authors expand upon the principles and theories discussed in their book.  (Ex. 18.) [1],[2]  Visitors to the online webinar offering immediately see a prominent picture of the book cover and upon scrolling down can learn more about the authors, read early reviews about the book, and sign up for the webinar series based directly on the book.  (*Id.*)  Additionally, the website displays Franklin Covey's name and mark and invites users to "LEARN MORE ABOUT FRANKLIN COVEY," which links users to Franklin Covey's homepage: https://www.franklincovey.com/.  (*Id.*)

**B.      Plaintiff's Trademark Exists In a Fiercely Overcrowded Educational Services Marketplace.**

Plaintiff's suit alleges it owns a "family" of trademark registrations and applications for the adjective "Fierce."  (Complaint ¶¶ 6-18, 21 (claiming a "family of marks using FIERCE")).  All of Plaintiff's registrations are in Class 41 and described as "educational services, namely, conducting classes, seminars, conferences and workshops in the field of business management and interpersonal communications."  (*Id.* Exs. A-L.)  Plaintiff's flagship theory of liability is that the title of Franklin Covey's new book (and ancillary web-based marketing and promotional

---

[1]    Filed concurrently with this motion is Defendant's Request for Judicial Notice.
[2]    Exhibit 18 to the Declaration of Erin C. Kolter in Support of Defendant Franklin Covey Co.'s Motion to Dismiss.  Unless otherwise noted, references to "Ex. __" or "Exs. __" are to exhibits to the same declaration.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

efforts around it) will cause "confusion" in the marketplace.  (*Id.* ¶ 37.)

Plaintiff is not the only company using the "Fierce" mark in the "educational services" industry.  Far from it.  The United States Patent and Trademark database is loaded with other uses of "Fierce" in Class 41 for "educational services."[3]  The following chart highlights just how fiercely crowded this mark is in the educational services arena:

| Mark | U.S. Trademark Registration No. | Description of Services |
|---|---|---|
| FIERCE WITH AGE | 4,286,723 | Conducting workshops and seminars in personal awareness; Educational and entertainment services, namely, providing motivational and educational speakers in the field of self- and personal improvement; Educational and entertainment services, namely, providing motivational speaking services in the field of life improvement and age adjustment; Personal coaching services in the field of life improvement and age adjustment. |
| SO FIERCE | 4,759,989 | Publication of books, of magazines, of journals, of newspapers, of periodicals, of catalogs, of brochures |
| FIERCE LADY OF FINANCE | 4,828,683 | Education services, namely, providing classes, seminars, speaking engagements and workshops in the field of personal finance and financial planning. |
| fierce love and wisdom | 4,878,589 | Educational services, namely, conducting classes, seminars, lectures, workshops, retreats, mentoring, teleseminars/webinars, conferences, programs, and teleclasses in the field of personal growth and spiritual development, and distribution of printed materials in connection therewith in hard copy or electronic format on the same topics |
| let lose your fierce love and wisdom now | 4,878,590 | Educational services, namely, conducting classes, seminars, lectures, workshops, retreats, mentoring, teleseminars/webinars, conferences, programs, and teleclasses in the field of personal growth and spiritual development, and distribution of printed materials in connection therewith in hard copy or electronic format on the same topics |
| FIND YOUR FIERCE | 4,993,908 | Educational and entertainment services, namely, providing motivational and educational speakers in the field of self- and personal improvement; Providing a website featuring non-downloadable videos on inspirational or motivational topics for women |
| Fierce Loving | 5,252,161 | Personal coaching services in the field of life coaching; Professional coaching services in the field of career fulfillment |

---

[3]   Exs. 1-7.

MOTION TO DISMISS - 4
2:18-cv-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Curiously, Ms. Susan Scott—Plaintiff's CEO—also recently joined the crowd in her *individual* capacity.  She submitted two federal trademark applications to register "Fierce Leadership" and "Fierce Conversations" for "educational books."  (*See* Exs. 8 and 9.)  Plaintiff claims it is the owner of these exact same trademarks.  (*See* Complaint ¶¶ 9-10.)

**C.    Plaintiff's Complaint Is Chock Full of Vague and Inconsistent Allegations Regarding Its Supposed "Orange" Trade Dress.**

Plaintiff builds its additional theory of liability on allegations that it somehow owns the color "orange" for exclusive use with its educational offerings.  (Complaint ¶¶ 19, 32.)  The Complaint contains a number of vague and inconsistent factual allegations to prop up this claim.

For example, the Complaint makes the grandiose statement that Plaintiff uses orange with "almost everything", (*id.* ¶ 19), and points to four uses of "orange." (*Id.* ¶ 19.)  Plaintiff fails to allege what this material is, when it was used, or what aspects of the color orange make up the claimed trade dress.  For example, is Plaintiff claiming trade dress in orange triangle-like shapes? Orange rectangles? Both?  These are just a few of the questions swirling about in light of Plaintiff's vague allusions to its supposed orange trade dress.

Next, Plaintiff points to its website, <fierceinc.com>, as containing this protectable "orange scheme."  (*Id.* ¶ 20.)  Its homepage contains a mishmash of orange icons (a heart, a stick figure-like character, and an orange flame inside of a human head, for example) and trapezoid-like shapes.  *See infra* at p. 20.  Plaintiff provides <u>no</u> facts to explain what aspects of this "scheme" is its supposed trade dress.  The Complaint is further defective in that it fails to allege any facts to show the trade dress is "non-functional" or how it has acquired "secondary meaning" in the educational services marketplace.

Finally, Plaintiff alleges protectable trade dress in two "Fierce Books."  (Complaint ¶ 19.)  As noted above, though, Ms. Scott recently filed a federal trademark application for "Fierce Leadership."  Her "specimen of use" submitted with the application is the **<u>same cover</u>** that

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Plaintiff claims contains its supposed "trade dress":

| Plaintiff's Claimed "Trade Dress" (Complaint ¶¶ 27, 33.) | Specimen from Ms. Susan Scott's Pending Trademark Application U.S. Trademark Application Serial No. 87/464504 (*See* Ex. 8) |
|---|---|
|  | |

Presumably, Plaintiff and its CEO seem to disagree on who owns the trade dress (if any) in the cover of the "Fierce Leadership" book.

Even if Plaintiff is the owner of the trade dress for the two "Fierce Books," the covers for "Fierce Conversations" have wildly deviated over the years, as shown below (*see* Exs. 10-15):

| | | | | |
|---|---|---|---|---|
| 2002 | 2003 | 2004 | 2011 | 2017 |

These radical changes and departures simply underscore the vagueness and incomplete trade dress allegations of the Complaint.

MOTION TO DISMISS - 6
2:18-cv-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

### III.    LAW AND ARGUMENT

**A.    Legal Standard Governing Defendant's Motion to Dismiss.**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

A court is also not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.  Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Here, Plaintiff's allegations fall into two broad categories:  (1) trademark infringement and unfair competition with respect to the book title *Fierce Loyalty: Cracking the Code to Customer Devotion* (and the descriptive reference to the book in the ancillary webinar series); and (2) unfair competition with respect to the use of orange on the cover of the book and its related marketing material.   These claims are patently deficient as a matter of law.

**B.**     **The Court Should Dismiss The Trademark Infringement and Unfair Competition Claims Over The Book Title and Ancillary Webinar Series Because Those Claims Are Built on Demonstrably Flawed Legal Theories and Contain Numerous Factual Deficiencies.**

Plaintiff's claims over the book title and ancillary webinar series fail as a matter of law for several powerful reasons.

      **1.**     **The title of Defendant's book—*Fierce Loyalty: Cracking the Code to Customer Devotion*—is not a source identifier and, therefore, cannot be "infringing" as a matter of law.**

A defendant cannot be liable for trademark infringement or unfair competition unless it is using the allegedly infringing mark as a "source identifier."  *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F. Supp. 2d 1067, 1077 (C.D. Cal. 2012) ("A non-trademark use cannot be infringing, so Plaintiff's claims fail.").  Numerous federal courts and the Trademark Trial and Appeal Board have universally held that a book title simply does not function as a "source identifier" as a matter of law. *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, 853 (C.D. Cal. 2012) (citing *Herbko Int'l, Inc. v. Kappa Books, Inc.,* 308 F.3d 1156, 1162-63 (Fed. Cir. 2002)) ("The title of a single book cannot be a trademark because it does not 'serve as a source identifier' that creates 'an association between the book's title (the alleged mark) and the source of the book (the publisher).'"); *In re Cooper*, 45 C.C.P.A. 923, 930, 254 F.2d 611 (C.C.P.A. 1958) (". . . titles of books are mere names, and hence not trademarks. . ."); *see also* TMEP § 1202.08 ("The title of a single creative work is not registrable on either the Principal or Supplemental Register.").

MOTION TO DISMISS - 8
2:18-cv-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Here, because the title of a single literary work is not a "source identifier" under the Lanham Act, Defendant's book title simply cannot give rise to an infringement or unfair competition claim.  *See Spin Master,* 944 F. Supp. 2d at 853.  For this reason, Plaintiff's claim with respect to the title of the book fails.

    **2.**       **"Fierce," as used in the book title *Fierce Loyalty: Cracking the Code to Customer Devotion,* is fair use as a matter of law and cannot give rise to liability.**

"Classic fair use" is a defense to trademark infringement. 15 U.S.C. § 1115(b)(4); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002).  This defense recognizes "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first." *KP Permanent Make-Up v. Lasting Impression I, Inc.,* 543 U.S. 111, 122 (2004).  Classic fair use applies where a defendant uses the plaintiff's mark only to describe defendant's own product, and not at all to describe the plaintiff's product.  *Cairns,* 292 F.3d at 1150.

Under the classic fair use doctrine, "the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 319 (6th Cir. 2001). Rather,

> [t]he only right of exclusion that trademark law creates in a descriptive word is in the secondary, new, 'trademark' meaning of the word that plaintiff has created. The original, descriptive primary meaning is always available for use by others to describe their goods, in the interest of free competition.

*Id.* (quoting J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 11:45 (4th ed. 1996)).

According to the Supreme Court, "the defendant has no independent burden to negate the likelihood of any confusion in raising the affirmative defense" of fair use. *KP Permanent Make-Up,* 543 U.S. at 124.

Several courts have held that "classic fair use" can be decided as a matter of law by the

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

trial court at the pleading stage so long as "no confusion [i]s possible" because of pure descriptive use. *See, e.g., In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1467 (9th Cir. 1993) (affirming dismissal "as a matter of law" on classic fair use where "[n]o possibility existed that a person would buy the plainly labelled JVC receiver thinking that it was made by Go-Video").

In *Dual Deck*, Go-Video had registered the trademark "VCR-2" for its dual-decker VCR machine. 11 F.3d at 1462. Competitors began labeling their two VCR slots "VCR-1" and "VCR-2" and used the label "VCR 2" in the instruction book and on the remote. *Id.* The court dismissed the claims because "no confusion of others' products for Go-Video's was possible" due to the clearly descriptive use of the term "VCR-2" to label the second VCR slot on defendant's goods. *Id.; see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612 (6th Cir. 2009) (affirming dismissal of complaint where company's ads did not use the name "Hensley" in the trademark sense; but used "Jim Hensley's name only to identify him as a designer of trailer hitches (including the [defendant's] Hitch), describe his relationship to [defendant], and tell the story behind his success. To the extent they cause some level of consumer confusion, Hensley Manufacturing assumed that risk by trademarking Jim Hensley's own personal last name.").

A defendant must establish the following three elements to successfully invoke the fair use defense: (1) the use of the term is not as a trademark or service mark; (2) defendant uses the term fairly and in good faith; and (3) defendant uses the term only to describe defendant's own goods or services. *See* 15 U.S.C. § 1115(b).

Here, based on the allegations of the Complaint, the classic fair use defense applies as a matter of law.

First, Franklin Covey's use of "fierce" is not use as a trademark. A book title does not identify a source but acts as a short hand for a book's contents. While "fierce" functions as a piece of the work's title and a short description of the work's contents, it does not function to

MOTION TO DISMISS - 10
2:18-cv-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

brand the work nor to suggest sponsorship.  Because the book title is not used as a source identifier, there simply cannot be any trademark infringement of any kind.

Second, the use of "fierce" is fair and in good faith. Here, Franklin Covey is fairly using "fierce" as the adjective is defined: "furiously active or determined." (*See* Ex. 16 (definition from Merriam-Webster).)  Using an adjective in its definitional capacity is fair use and is beyond the scope of an infringement action.

Third, the use of "fierce" is only to describe defendant's goods and services. Franklin Covey uses the adjective "fierce" to describe the book title's noun "loyalty." The book's cover, in between the words "FIERCE" and "LOYALTY," states "*CRACKING THE CODE TO CUSTOMER DEVOTION*." Taken together, this descriptive title—*Fierce Loyalty: Cracking the Code to Customer Devotion*—offers readers a short hand for what will be expanded upon within the book—as do many words chosen for titles. The descriptive nature of the title is bolstered even further by the text at the bottom of the cover that lists the authors and identifies them as "The Loyalty Experts at Franklin Covey."  The labeling on the book that identifies the authors and Franklin Covey precludes confusion as to the source of the goods.[4]

*Fierce Loyalty: Cracking the Code to Customer Devotion* is fair use of the adjective "fierce" as a matter of law.

**3.   Imposing liability under the Lanham Act based on the title of the book would violate Defendant's First Amendment rights under the Ninth Circuit's binding decision in *Twentieth Century Fox TV v. Empire Distribution*.**

All of Plaintiff's claims for relief ignore this undisputed, salient reality:  Defendant's book entitled *Fierce Loyalty: Cracking the Code to Customer Devotion* is an "expressive work" under the Lanham Act.  A significant distinction exists under the Lanham Act between typical

---

[4]   The Supreme Court has recognized that the classic fair use defense contemplates and tolerates "some possibility of consumer confusion." *KP Permanent Make-Up*, 543 U.S. at 121. Plaintiff's allegation of one consumer's supposed "confusion"—even if that is true—is tolerable. (Complaint ¶ 38.)

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

"consumer goods" that use an allegedly infringing mark, and "expressive works" that use an allegedly infringing mark *in the title*. *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989) ("the expressive element of titles requires more protection than the labeling of ordinary commercial products"). In this regard, the Ninth Circuit's recent decision in *Twentieth Century Fox TV v. Empire Distribution* applies with powerful, binding force.

In *Twentieth Century Fox TV*, the trademark holder, Empire Distribution, was a "well-known and respected record label" that produced records in the hip hop, rap, and R&B music genres. 875 F.3d 1192, 1195 (2017). In 2015, Fox TV launched a television show titled "*Empire*," which portrayed "a fictional hip hop music label named 'Empire Enterprises' that is based in New York." *Id.* Empire Distribution sued Twentieth Century Fox TV for "trademark infringement" and "unfair competition"—the exact same claims at issue in this suit. The Ninth Circuit affirmed the trial court's decision that Twentieth Century Fox was not liable under the Lanham Act because expressive works receive heighted protection under the Lanham Act. The Court's reasoning and analysis is dead-on point in this case.

First, the Ninth Circuit explained why "expressive works" receive different treatment:

> In general, claims of trademark infringement under the Lanham Act are governed by a likelihood-of-confusion test. When the allegedly infringing use is in the title of an expressive work, however, we instead apply a test developed by the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), to determine whether the Lanham Act applies. Like the Second Circuit, we have identified two rationales for treating expressive works differently from other covered works: because (1) they implicate the First Amendment right of free speech, which must be balanced against the public interest in avoiding consumer confusion; and (2) consumers are less likely to mistake the use of someone else's mark in an expressive work for a sign of association, authorship, or endorsement.

> *Id.* at 1196 (internal citation omitted).

Next, the Court articulated the applicable legal test that must be satisfied in order for

MOTION TO DISMISS - 12
2:18-cv-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Lanham Act liability to apply:

> Under the *Rogers* test, the title of an expressive work does not violate the Lanham Act *unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work*.

*Id.* (quoting *Rogers*, 875 F.2d at 999) (emphasis supplied).

Here, the facts as alleged in the Complaint compel dismissal of the trademark infringement and unfair competition claims with respect to the title of Franklin Covey's book.

### a.       The book is an expressive work.

It is undisputed that *Fierce Loyalty: Cracking the Code to Customer Devotion* is an "expressive work" that receives the heightened protection under *Twentieth Century Fox TV. Rogers,* 875 F.2d at 997 ("Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection.").  Thus, the first element of the *Twentieth Century Fox TV is* satisfied.

### b.       The title clearly has artistic relevance to the contents of the book because the title is the topic of the entire book.

The "artistic relevance" threshold is low: "the level of relevance merely must be above zero." *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008); *see also Twentieth Century Fox TV,* 875 F.3d at 1199 ("A title may have artistic relevance by . . . supporting the themes and geographic setting of the work. . .").  Here, the title encourages readers to be "fiercely loyal," as that will lead to retaining "devoted customers." (Complaint ¶ 33 (book cover)). The need to be "fiercely loyal" (to gain customer devotion) is a recurring motif that appears throughout the course of the entire expressive work.  (*See* Ex. 17 (screenshot of amazon.com webpage for book).)  The title easily meets the minimal "above zero" threshold articulated by the Ninth Circuit.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

### c. No alleged facts remotely suggest the title "explicitly misleads" consumers.

Plaintiff has not alleged a single fact to suggest the title of Franklin Covey's book "explicitly misleads" consumers. "Explicitly misleads" means there must be an "overt claim," or "explicit misstatement" that caused consumer confusion. *Twentieth Century Fox TV,* 875 F.3d at 1199; *e.g.*, *Syler v. Woodruff*, 610 F. Supp. 2d 256, 259 (S.D.N.Y. 2009) (applying *Rogers* to deny temporary restraining order and permanent injunction where both parties' books' titles used the phrase "*Perfectly Imperfect*" with black ink for the word perfect and red ink for the word imperfect, both authors used an autobiographical perspective to discuss family, work, and personal lives, and both authors delivered lectures under their "Perfectly Imperfect" book titles – at the same venue and under the same title just weeks apart); *Dr. Seuss Enters., L.P. v. ComicMix LLC*, No. 16-CV-2779-JLS (BGS), 2018 U.S. Dist. LEXIS 84985, at *12 (S.D. Cal. May 21, 2018) (applying *Rogers* and granting defendant's partial motion for judgment on the pleadings where "[t]he look of the lettering [wa]s unquestionably identical on both books, down to the shape of the exclamation point[]" but "Defendants' use of the text and design of Go!'s title [wa]s not enough to be an 'explicit misstatement.'") (quoting *Rogers*, 875 F.2d at 999).  There are no facts alleged to show any sort of "explicit misstatements" by Franklin Covey, rather the only explicit statements on the cover direct readers to Franklin Covey and the book's authors. (Complaint ¶ 33 (depicting book cover with authors' names and designation as "The Loyalty Experts at Franklin Covey")).

For all of these reasons, under *Twentieth Century Fox TV v. Empire Distribution, Inc.*, the First Amendment prohibits imposing Lanham Act liability.  The Court should dismiss Plaintiff's claims with prejudice.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

4. ***Twentieth Century Fox TV v. Empire Distribution* also precludes liability under the Lanham Act for Defendant's use of the book title in the accused promotional material.**

Plaintiff also seeks to improperly impose Lanham Act liability due to Franklin Covey's promotional endeavors directly related to the book. In this regard, Plaintiff alleges, "Defendant is promoting and marketing the Defendant's Book and *associated webinars, videos, podcasts and trainings* to Washington consumers." (Complaint ¶ 31 (emphasis supplied)). Plaintiff specifically identifies these promotional materials as giving rise to claims for infringement and unfair competition. (*See id.* ¶ 41 (identifying "Defendant's Book, *websites, and associated marketing materials*"), ¶ 47 (identifying Defendant's "promotion and branding of its goods and services.")). These claims likewise fail as a matter of law and should be dismissed under *Twentieth Century Fox TV*.

In *Twentieth Century Fox TV*, in addition to objecting to the title "Empire" for the television show, Empire Distribution objected to Fox's related promotional activities. Specifically, Empire Distribution claimed that the following "promotional activities" using the "Empire" name gave rise to liability under the Lanham Act: "appearances by cast members in other media, radio play, online advertising, live events, and the sale or licensing of consumer goods." *Twentieth Century Fox TV*, 875 F.3d at 1196. The court roundly rejected Empire's argument that these additional pieces gave rise to liability because "Fox's promotional activities, including those that generate revenue, are ***auxiliary to the television show*** and music releases, which lie at the heart of its 'Empire' brand." *Id.* (emphasis supplied); *see also Syler*, 610 F. Supp. at 262 (denying plaintiff's request for a temporary restraining order and preliminary injunction against defendant's identical book title and defendant's use of that title in promotional activities).

MOTION TO DISMISS - 15
2:18-cv-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Here, Plaintiff takes aim at Franklin Covey's website, fierceloyalty.com, and the free webinar series promoted on that site.  (Complaint ¶ 32.)  Plaintiff conveniently neglects to include any content from the website.  Because Plaintiff references the website in its Complaint, the content of it can be reviewed by this Court on a motion to dismiss.  *See* Defendant's concurrently filed Request for Judicial Notice; *see also Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (explaining that materials referenced in the complaint are "not truly 'outside' the complaint"); *Keithly v. Intelius Inc.,* 764 F. Supp. 2d 1257, 1261 (W.D. Wash. 2011) (on motion to dismiss, considering defendant's screen shots of defendant's web pages which plaintiff incorporated into his complaint); *Castagnola v. Hewlett-Packard Co.*, No. C 11-05772 JSW, 2012 U.S. Dist. LEXIS 82026, at *7-10 (N.D. Cal. June 13, 2012) (same).  These ancillary uses on the website "fierceloyatly.com" are clearly and unmistakably tied to promoting the book *Fierce Loyalty: Cracking the Code to Customer Devotion* (*see* Ex. 18):





**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    Just as the ancillary promotional activities in Twentieth Century Fox TV could not raise

2    liability under the Lanham Act, so too is it here.  Plaintiff's claims fail regarding the ancillary

3    webinar series based on the book.  Those claims should be dismissed with prejudice.

4    **C.    This Court Should Dismiss Plaintiff's Unfair Competition Claims Over The Purported "Orange Trade Dress" Because The Allegations Are Plainly Deficient To Establish Protectable Rights In This Basic, Ubiquitous Color.**

6    Trade dress refers to "a combination of any elements in which a product is presented to a

7    buyer, including the shape and design of a product." *Art Attacks Ink, LLC v. MGA Entm't Inc.*,

8    581 F.3d 1138, 1145 (9th Cir. 2009); *see also Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127

9    F.3d 821, 828 (9th Cir. 1997) ("Trade dress is the totality of elements in which a product or

10   service is packaged or presented.") (internal quotation marks omitted).  To sufficiently state a

11   claim for unfair competition with respect to unregistered trade dress, a plaintiff must allege

12   several factual elements.  First, it must specifically identify the trade dress.  *Lepton Labs, LLC v.*

13   *Walker,* 55 F. Supp. 3d 1230, 1240 (C.D. Cal. 2014).  Second, it must allege sufficient facts to

14   raise a plausible inference that the trade dress has acquired secondary meaning.  *Regal Art &*

15   *Gifts, Inc. v. Fusion Prods.*, No. 15-cv-04363-KAW, 2016 U.S. Dist. LEXIS 14506, at *20 (N.D.

16   Cal. Feb. 5, 2016).  Third, it must allege the trade dress is non-functional.  *Moldex-Metric, Inc. v.*

17   *McKeon Prods.,* 891 F.3d 878, 881 (9th Cir. 2018).  Plaintiff's complaint fails as a matter of law

18   on <u>all</u> pleading requirements.[5]   Its trade dress claim should be dismissed.

---

[5]    Plaintiff mistakenly styles its first cause of action, in part, as a claim for "trade dress infringement" under Section 1114 of the Lanham Act. (Complaint ¶ 41.)  Because Plaintiff does not allege that it owns a federal trade dress registration, though, it does not have a claim under Section 1114, as that section applies only to registered marks.  15 U.S.C. § 1114.  Thus, Plaintiff's claim as it pertains to trade dress should be constructed as a claim for unfair competition.

MOTION TO DISMISS - 17
2:18-cv-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

1.      **Plaintiff's trade dress claim fails because it alleges a vague hodgepodge of various "orange" motifs and themes as the purported "trade dress."**

In the Ninth Circuit, courts require "a complete recitation of the concrete elements of the[] alleged trade dress." *Lepton Labs, LLC*, 55 F. Supp. 3d at 1240; *see also Bryant v. Matvieshen*, 904 F. Supp. 2d 1034, 1046 (E.D. Cal. 2012) ("In order to state a trade dress claim for website design, [plaintiff] needs to clearly define the specific elements that constitute the trade dress; a general description of the site is insufficient."); *Salt Optics, Inc. v. Jand, Inc.*, No. 10-cv-00828, 2010 U.S. Dist. LEXIS 131388, at *4 (C.D. Cal. Nov. 19, 2010) ("A plaintiff must clearly articulate its claimed trade dress to give a defendant sufficient notice."); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, No. 08-cv-04397-WHA, 2008 U.S. Dist. LEXIS 109800, at *5 (N.D. Cal. Dec. 18, 2008) ("[Plaintiff] must provide more detail and clarify . . . the trade dress at issue. The complaint does not sufficiently put [defendant] on notice of the trade dress claim alleged.").  As one court aptly put it, a "shifting sands approach" to defining a plaintiff's trade dress is not sufficient to state claim under Rule 12(b)(6).  *ArcSoft, Inc. v. CyberLink Corp.*, 153 F. Supp. 3d 1057, 1070 (N.D. Cal. 2015).

Here, Plaintiff is all over the map with its definition of its supposed "orange trade dress." As an initial matter, Plaintiff vaguely alleges it uses the color orange "in connection with almost everything it does."  (Complaint ¶ 19.)  It then incorporates four "examples" of this supposed trade dress without defining what these examples are or where they even come from.  (*Id.*) ("examples of Fierce's use of the color orange as trade dress for its products and services"). Below is a table incorporating these four examples with a number of obvious questions that flow from Plaintiff's vague allegations:

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

| | |
|---|---|
| <br><br>(Complaint ¶ 19.) | <br><br>(*Id.*) |
| • What is this, where is it from, and when and how does Plaintiff supposedly use this?<br>• Does the trade dress claim include the orange "sticky" notes in the photo?<br>• Does it include the aerial picture of a table with people and books? | • What is this, where is it from, and when and how does Plaintiff supposedly use this?<br>• Is the dress an orange triangle?<br>• Does it include the photograph of individuals? |
| <br><br>(*Id.*) | <br><br>(*Id.*) |
| • What is this, where is it from, and when and how does Plaintiff supposedly use this?<br>• Is the trade dress an orange rectangle?<br>• Does it include the grey block and white lettering? | • What is this, where is it from, and when and how does Plaintiff supposedly use this?<br>• Is the trade dress an orange rectangle? |

To compound matters, Plaintiff then references its website <fierceinc.com> where it apparently is "prominently displaying" the supposed "orange color scheme."  (*Id.* ¶ 20.)  The

MOTION TO DISMISS - 19
2:18-cv-01449-MJP

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

problem is there are any number of orange "schemes" on that website including the following images:



(Ex. 19.)  It is not at all clear from this vague "orange color scheme" allegation what elements from the website are part of Plaintiff's unregistered trade dress.  The trade dress pleading deficiencies do not stop there.

Next, Plaintiff injects more vagueness and confusion into the mix when it provides the following inconsistent definition:

> Plaintiff's registered marks, pending applications, <u>unregistered trade dress</u> and other common laws rights and goodwill (including <u>its use of the color orange</u>) are referred to collectively as the "FIERCE Marks."

> (*Id.* ¶ 21.)

Plaintiff now defines its "unregistered trade dress" as something *different than* the "use of the color orange," whereas two paragraphs earlier Plaintiff referred to its "use of the color orange as trade dress for its products and services."  (*Id.* ¶ 19.)  This is exactly the type of confusion and inconsistent trade dress pleading that courts routinely find deficient. *E.g., Deckers Outdoor Corp. v. Fortune Dynamic, Inc.,* No. CV 15-769 PSG (SSx), 2015 U.S. Dist. LEXIS 188274, at *8 (C.D. Cal. May 8, 2015) (granting motion to dismiss trade dress claim because "[a] plaintiff should clearly articulate its claimed trade dress to give a defendant sufficient notice.").

Finally, Plaintiff throws in depictions of two of its books (the so-called "Fierce Books"):

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820



(Complaint ¶ 33.)  Neither one of the Fierce Books was included in Plaintiff's definition of FIERCE Marks.  (*Id.* ¶ 21.)  Yet, Plaintiff now asserts that Franklin Covey's book uses a confusingly similar "typeface and contrasting colors." (*Id.* ¶ 33.)  To the extent Plaintiff is claiming a "typeface and contrasting colors" as part of its unregistered trade dress, it is simply too vague and nonspecific to be actionable.  (*Id.*)  Moreover, the "typeface and contrasting colors" on these Fierce Books have apparently changed over time (*see* Exs. 10-15):



| 2002 | 2003 | 2004 | 2011 | 2017 |

In sum, Plaintiff hopscotches all over the place with its vague and shifting articulations of its supposed protectable "trade dress."  This claim should be dismissed for failure to articulate a sufficiently concrete and consistent trade dress.

> **2.**     **Plaintiff fails to allege sufficient facts that the supposed trade dress has acquired secondary meaning.**

In order to state a claim related to unregistered trade dress, several courts in the Ninth Circuit have held that the plaintiff must allege facts sufficient to plausibly show the trade dress

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

has acquired "secondary meaning." *See Regal Art & Gifts, Inc. v. Fusion Prods.*, No. 15-cv-04363-KAW, 2016 U.S. Dist. LEXIS 14506, at *20 (N.D. Cal. Feb. 5, 2016) (dismissing trade dress claim for pleading "conclusory, formulaic recitation of the elements," and noting "pleading standards require Plaintiff to describe how its design is distinctive and how it has acquired a secondary meaning."); *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.,* No. CV 15-769 PSG (SSx), 2015 U.S. Dist. LEXIS 188274, at *7 (C.D. Cal. May 8, 2015) ("To state a claim for trade dress infringement, a plaintiff must allege that the asserted trade dress '. . . is either inherently distinctive or has acquired a secondary meaning.'") (citing *See Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir. 1993) (affirming denial of preliminary injunction); *Morton & Bassett, LLC v. Organic Spices, Inc*., No. 15-cv-01849-HSG, 2016 U.S. Dist. LEXIS 120092, at *19 (N.D. Cal. Sept. 6, 2016) ("Because Plaintiff has admitted that its trade dress is unregistered its failure to plead that its trade dress is not generic also causes its trade dress infringement claim under the Lanham Act to fail.") (internal citation to record omitted). Unregistered trade dress enjoys secondary meaning only when "in the minds of the public, the primary significance of a [design] is to identify the source of the product rather than the product itself." *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 216 (2000).  The burden of proving that a color mark has acquired distinctiveness is substantial. *E.g., In re Gen. Mills IP Holdings II, LLC,* 124 USPQ2d 1016, 1028 (TTAB 2017) (finding evidence insufficient to demonstrate that mark consisting of "the color yellow appearing as the predominant uniform background color on product packaging" for cereal had acquired distinctiveness); *see also* TMEP § 1202.05(a): Color Marks Never Inherently Distinctive.

Here, Plaintiff does not allege how the supposed trade dress has acquired secondary meaning.  Simple conclusory allegations of the mere use of the color orange do not sufficiently allege if and how consumers associate the color with its source. *See Art Attacks Ink, LLC,* 581 F.3d at 1145 (quoting *Japan Telecom v. Japan Telecom Am.*, 287 F.3d 866, 873 (9th Cir. 2002))

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

("To show secondary meaning, a plaintiff must demonstrate 'a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source.'"); *Autodesk, Inc.*, 685 F. Supp. 2d at 1015 (granting summary judgement on trade dress where plaintiff provided "no data on how extensive the advertising was using these elements. . . . Plaintiff merely cite[d] to various examples of advertising without explaining how often these advertisements were used or explaining the context in which they were presented to the consuming market."). Likewise, broad sweeping conclusory allegations that "the consuming public has come to recognize services and goods sold under FIERCE Marks and/or trade dress as . . . associated with Plaintiff" do not suffice. (Complaint ¶ 25.) Especially considering that Plaintiff failed to articulate what the trade dress is, it certainly has failed to establish secondary meaning as well. The trade dress infringement claim fails as a matter of law.

> **3.     Plaintiff fails to allege any facts that the supposed trade dress is "non-functional."**

Plaintiff's complaint does not allege any facts regarding non-functionality. "For unregistered trade dress, the person who asserts protection 'has the burden of proving that the matter sought to be protected is not functional.'" *Moldex-Metric,* 891 F.3d at 881 (quoting 15 U.S.C. § 1125(a)(3)); *see also Morton & Bassett, LLC v. Organic Spices, Inc.*, No. 15-cv-01849-HSG, 2016 U.S. Dist. LEXIS 120092, at *19 (N.D. Cal. Sept. 6, 2016) ("Accordingly, to state a claim for infringement of an unregistered trade dress, a plaintiff must plead that the trade dress is nonfunctional.") (citing *Art Attacks Ink*, 581 F.3d at 1145); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-cv-03162-BLF, 2016 U.S. Dist. LEXIS 93247, 2016 WL 3880797, at *10 (N.D. Cal. July 18, 2016) (on motion to dismiss, permitting a conclusory allegation of non-functionality only where it was supported by facts sufficient to show specific expressive elements that give rise to a secondary meaning).

Here, Plaintiff did not allege a single fact about the non-functionality of its trade dress.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

The Complaint entirely omits this element.  Therefore, the trade dress infringement claim must fail as a matter of law.

**D.      Plaintiff's Complaint Fails To State A Consumer Protection Claim For The Same Reasons.**

Plaintiff's Complaint tacks on an additional cause of action under the CPA arising under the same facts. (Complaint ¶¶ 53-57.)  The CPA claim fails for all the same reasons as the Lanham Act claims.  Moreover, the Court need not accept Plaintiff's insufficient pleading of a mere conclusory recitation of the elements of a CPA claim. *Iqbal*, 556 U.S. at 678. Because the CPA claim is based on the same alleged factual conduct as Plaintiff's trademark and trade dress claims, this claim cannot stand when the Lanham Act claims fail.

## IV.      CONCLUSION

For all of these reasons, Plaintiff's claims fails as a matter of law.  The Court should dismiss this case in its entirety.

DATED this 24th day of October, 2018

DORSEY & WHITNEY LLP


*s/ J. Michael Keyes*
J. MICHAEL KEYES WSBA #29215
KEYES.MIKE@DORSEY.COM
ERIN KOLTER WSBA #53365
KOLTER.ERIN@DORSEY.COM
**Dorsey & Whitney LLP**
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
(206) 903-8800

*Attorneys for Defendant Franklin Covey Co.*

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused to be served the foregoing on the following counsel of record by the method indicated:

Brian W. Esler, WSB No. 22168
brian.esler@millernash.com
Vanessa L. Wheeler, WSB No. 48205
vanessa.wheeler@millernash.com
Pier 70 ~ 2801 Alaskan Way, Suite 300
Seattle, Washington 98121
Tel: 206-624-8300
Fax: 206-340-9599

☐ Via Messenger
☐ Via Facsimile
☐ Via U.S. Mail
☐ Via Electronic Mail
☒ Via ECF Notification

Dated this 24th day of October, 2018

*s/ J. Michael Keyes*
J. Michael Keyes

MOTION TO DISMISS - 25
2:18-cv-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820