1

Honorable Marsha J. Pechman

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
9                               AT SEATTLE

10  FIERCE, INC., a Washington corporation,

11              Plaintiff,                      Case No. 2:18-cv-01449-MJP

12         v.                                   PLAINTIFF'S MOTION FOR
                                                PRELIMINARY INJUNCTION
13  FRANKLIN COVEY CO., a Utah
    corporation,                                NOTE ON MOTION CALENDAR:
14                                              NOVEMBER 30, 2018
                Defendant.
15                                              ORAL ARGUMENT REQUESTED

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

# TABLE OF CONTENTS

**Page**

I. OVERVIEW AND RELIEF REQUESTED ................................................................... 1

II. FACTS ............................................................................................................... 3

    A. FIERCE HAS BEEN USING ITS FIERCE® FAMILY OF MARKS WITH A DISTINCTIVE SHADE OF ORANGE FOR OVER A DECADE ........................................................................................................... 3

        1. Susan Scott started Fierce almost 20 years ago, and built a top corporate training company with a recognized brand ............................... 3

        2. Ms. Scott has also authored a series of best-selling books that have furthered the FIERCE brand .................................................................... 6

    B. FRANKLIN COVEY IS A COMPETITOR WHO RECENTLY DECIDED TO START A CONFUSINGLY SIMILAR BRAND TO THAT OF FIERCE ................................................................................................... 8

        1. Like Fierce, Franklin Covey built its brand on the success of a book series ....................................................................................................... 8

        2. Franklin Covey appears to have recently rebranded one of its traditional trainings as FIERCE LOYALTY in order to trade on plaintiff's goodwill ......................................................................................... 9

        3. Franklin Covey's use is likely to cause confusion ................................... 12

III. ARGUMENT ..................................................................................................... 12

    A. FIERCE IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS ...... 13

        1. Fierce has valid marks .............................................................................. 13

        2. Defendant Franklin Covey's use of FIERCE LOYALTY is likely to cause confusion, to cause mistake or to deceive potential customers into believing there is an affiliation between Fierce and Franklin Covey ......................................................................................... 15

            a. The marks are virtually identical ................................................... 16

            b. The products and services are virtually identical ......................... 17

            c. The marketing channels are virtually identical ............................ 18

            d. Fierce's marks are strong .............................................................. 19

            e. Franklin Covey appears to have intentionally copied Fierce ....... 20

            f. There is already evidence of confusion ........................................ 20

            g. The likelihood of expansion into other markets .......................... 20

            h. Purchasers are likely to exercise less care in picking the book or webinar, and are then more likely to buy Franklin Covey's more expensive offerings ................................................. 21

        3. Franklin Covey's defenses are unlikely to succeed ................................. 21

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - i

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 $$ F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

**TABLE OF CONTENTS**
(continued)

**Page**

B.   FIERCE WILL SUFFER IRREPARABLE HARM ............................................. 23

C.   THE BALANCE OF THE EQUITIES TIPS IN FIERCE'S FAVOR ................. 23

D.   THE PUBLIC INTEREST WILL NOT BE HARMED ..................................... 24

E.   ONLY A MINIMAL BOND IS NECESSARY ................................................... 24

IV.   CONCLUSION ................................................................................................................ 24

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 $$ F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Alliance for the Wild Rockies v. Pena,*
5      865 F.3d 1211 (9th Cir. 2017) ........................................................................13

6

*Am. Int'l Grp., Inc. v. Am. Int'l Bank,*
     926 Fd 829, 832 (9th Cir. 1991) ....................................................................20
7

*AMF, Inc. v. Sleekcraft Boats,*
8      599 F.2d 341 (9th Cir. 1979) .............................................15, 16, 18, 21

9

*Applied Info. Sciences Corp. v. eBay, Inc.,*
10      511 F.3d 966 (9th Cir. 2007) ........................................................................13

11

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.,*
     457 F.3d 1062 (9th Cir. 2006) .....................................................................20
12

*Borinquen Biscuit Corp. v. M.V. Trading Corp.,*
13      443 F.3d 112 (1st Cir. 2006) .............................................14, 15, 17, 19

14

*Brookfield Communications, Inc. v. West Coast Ent. Corp.,*
     174 F.3d 1036 (9th Cir. 1999) .........................................15, 18, 20, 21
15

16

*Caesars World, Inc. v. Milanian,*
     247 F.Supp.2d 1171 (D. Nev. 2003) ...................................................16, 19

17

*Cairns v. Franklin Mint Co.,*
18      292 F.3d 1139 (9th Cir. 2002) .....................................................................22

19

*Garcia v. Google, Inc.,*
     786 F.3d 733 (9th Cir. 2015) (en banc) .........................................................13
20

21

*Gordon v. Drape Creative, Inc.,*
     897 F.3d 1184 (9th Cir. 2018) .....................................................................22

22

*GoTo.com, Inc. v. Walt Disney Co.,*
23      202 F.3d 1199 (9th Cir. 2000) .....................................................................16

24

*Han Beauty, Inc. v. Alberto-Culver Co.,*
     236 F.3d 1333 (Fed. Cir. 2001) ....................................................................16
25

*Herbko Int'l, Inc. v. Kappa Books, Inc.,*
26      308 F.3d 1156 (Fed. Cir. 2002) ....................................................................22

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - i

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1              **TABLE OF AUTHORITIES**

2                                                              **Page**

3   *Interstellar Starship Servs., Ltd. v. Epix, Inc*.,
4       304 F.3d 936 (9th Cir. 2002) ........................................................................15, 16

5   *J&J Snack Foods Corp. v. McDonald's Corp.*,
        932 F.2d 1460 (Fed. Cir. 1991)...........................................................................16
6
7   *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
        150 F.3d 1042 (9th Cir. 1998) ............................................................................19

8   *Lois Sportswear USA, Inc. v. Levi Strauss & Co.*,
9       799 F.2d 867 (2nd Cir. 1986)..............................................................................19

10  *Official Airline Guides, Inc. v. Goss*,
        6 F.3d 1385 (9th Cir. 1993) ...........................................................................17, 20
11
12  *Palm Bay Imps. Inc. v. Vueve Clicquot Ponsardin Maison Fondee En 1772*,
        396 F.3d 1369 (Fed. Cir. 2005)...........................................................................16
13
    *Pom Wonderful, LLC v. Hubbard*,
14      775 F.3d 118 (9th Cir. 2014) ...............................................................................13

15  *Rogers v. Grimaldi*,
        875 F.2d 994 (1989).................................................................................22, 23, 24
16
    *Simon & Schuster, Inc. v. Dove Audio, Inc*.,
17      970 F.Supp. 279 (S.D.N.Y 1997).........................................................................23

18  *Specialty Brands v. Coffee Bean Distributors, Inc.*,
19      748 F.2d 669 (Fed. Cir. 1984)..............................................................................16

20  *Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
        944 F.Supp.2d. 830 (C.D. Cal. 2012) ............................................................15, 22
21
    *Treemo, Inc. v. Flipboard, Inc*.,
22      53 F.Supp.3d 1342, 1367 (W.D. Wash. 2014).....................................................23

23  *Usrey v. Chen*,
        2014 WL 12570232 (C.D. Cal. May 29, 2014) ....................................................23
24
    *Warner Bros. Ent. v. Asylum, Inc*.,
25      2013 WL 12114836 (C.D. Cal. Jan. 29, 2013) ..............................................20, 23

26

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - ii

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1

## TABLE OF AUTHORITIES

2

**Page**

3   *Winter v. Nat. Res. Def. Council, Inc.*,

4        555 U.S. 7 (2008) ................................................................................................ 12, 13

5   **Statutes**

6   15 U.S.C. § 1065 ........................................................................................................... 15

7   15 U.S.C. § 1114 ........................................................................................................... 13

8   15 U.S.C. § 1115 ......................................................................................... 14, 15, 17, 19

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

# I. OVERVIEW AND RELIEF REQUESTED

1       Almost 20 years ago, Susan Scott started plaintiff Fierce, Inc., to provide better

business consulting, training and education services.  Scott Decl., ¶ 3.  Her book FIERCE

CONVERSATIONS became a best-seller in 2001, and went on to sell over half a million copies,

with many more distributed as part of Fierce's corporate trainings.  Scott Decl., ¶ 4.  Ms. Scott

followed up that book with FIERCE LEADERSHIP in 2009, another best-seller that opened

further doors for her company.  Scott Decl., ¶ 5.  Since 2001, Fierce has obtained a dozen federal

trademark registrations for marks that start with FIERCE to promote its training and educational

services for business customers.  Summers Decl., Exs. A - L.

By about 2003, Fierce also started using the domain name <fierceinc.com> and

adopted a distinctive shade of orange (the "Fierce Orange") to be used with its marks to further

distinguish its brand.  Scott Decl., ¶ 9; Summers Decl., Ex. P.  Fierce's training toolkits—which

include a series of workbooks with titles such as FIERCE CONVERSATIONS®, FIERCE

ACCOUNTABILITY®, FIERCE FEEDBACK®, FIERCE GENERATIONS®, and FIERCE

NEGOTIATIONS®—display the those FIERCE marks on a Fierce Orange background.  Scott

Decl., ¶ 10, Exs. 3–8.  Fierce has now grown to become one of the top business training services

companies in the United States, and its FIERCE family of marks (especially when used with the

Fierce Orange) are well-known.  Scott Decl., ¶ 12.

Defendant Franklin Covey is one of Fierce's largest competitors in the business

training and education space.  Like Fierce, Franklin Covey built its success in part on a best-

selling book—Steven Covey's THE 7 HABITS OF HIGHLY EFFECTIVE PEOPLE.  Summers

Decl., Exs. T, V.  Fierce and Franklin Covey use the same marketing channels to go after and

service the same types of customers.

Until about August of this year, Franklin Covey and Fierce used very different

marks, and very different color schemes, for their competing business educational services.  But

in approximately August of this year, Franklin Covey started promoting a new brand for its old

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   training services—FIERCE LOYALTY.  Summers Decl., Ex. S.  About that time, Franklin

2   Covey started advertising those services at a separate domain it had acquired:

3   <fierceloyalty.com>.  Summers Decl., Ex. S; Dkt. No. 10-18.  At that domain, Franklin Covey

4   started advertising and promoting a new book—FIERCE LOYALTY—along with associated

5   webinars, trainings and keynote speaker opportunities.  Summers Decl., Ex. S; Dkt. No. 10-18.

6   Unlike its other books, Franklin Covey does not offer FIERCE LOYALTY for sale through the

7   Franklin Covey website's bookstore.  Scott Decl., ¶ 18; Summers Decl., Ex. Q.  Unlike Franklin

8   Covey's other books, FIERCE LOYALTY features a bright orange cover that is a nearly

9   identical hue to the Fierce Orange, with a nearly identical typeface.  Dkt. No. 10-17, 10-18;

10   Summers Decl., Ex. Q.  Franklin Covey has also rebranded its competing training seminar

11   (offered at $2,095 per person) from "Ultimate Loyalty" to "Fierce Customer Loyalty."  Scott

12   Decl., ¶ 18; Summers Decl., Ex. R.  FIERCE LOYALTY appears to be the new brand that

13   Franklin Covey intentionally adopted for its old customer loyalty programs to trade off of Fierce,

14   Inc.'s two decades of goodwill and customer recognition built up around its FIERCE family of

15   marks.  Scott Decl., ¶¶ 15, 18.

16          Fierce now moves for a preliminary injunction to stop Franklin Covey, and all

17   those acting in concert with it, from offering competing goods or services under the FIERCE

18   brand, including (1) stopping any use of FIERCE (with or without the color orange) as part of the

19   title or mark for a book, webinar, keynote address, training, or on any other goods or services in

20   the field of corporate educational and training services, and (2) shutting down the website

21   <www.fierceloyalty.com>.[1]

22

23   _____

24   [1] As of the filing of this motion, it appears Franklin Covey has shipped review copies of its *Fierce Loyalty* book, has given a series of free webinars under that brand to promote its paid offerings (which finished on November 8, 2018),

25   may have taken orders for the book, but has not yet published the book and is not yet offering its paid training programs under that brand, which training programs do not appear to begin until January 2019.  Dkt. No. 10-18; Summers Decl., Exs. R, CC.  Although Amazon.com listed the book as available on November 6, 2018 (Dkt.

26   No. 10-17), that website now says the book will not be available until February 2019.

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

## II. <u>FACTS</u>

Plaintiff Fierce, Inc. is a privately-held Washington corporation headquartered in Seattle.  Scott Decl., ¶ 6.  Defendant Franklin Covey Co. ("Franklin Covey") is a publicly-traded corporation, headquartered in Utah.  Summers Decl., Ex. F.

**A.      FIERCE HAS BEEN USING ITS FIERCE® FAMILY OF MARKS WITH A DISTINCTIVE SHADE OF ORANGE FOR OVER A DECADE.**

Fierce is a national provider of top-tier corporate training through its various programs, including FIERCE CONVERSATIONS®, FIERCE LEADERSHIP®, FIERCE GENERATIONS®, FIERCE ACCOUNTABILITY®, FIERCE COACHING®, FIERCE TEAM®, FIERCE CONFRONTATION®, FIERCE FEEDBACK®, FIERCE DELEGATION®, and FIERCE NEGOTATIONS®.  Scott Decl., ¶ 7; Summers Decl., Exs. A - L.  Fierce has been using the trademark FIERCE (along with a distinctive orange color) in the United States in connection with its training products and services since at least 2003.  Scott Decl., ¶¶ 8-12; Summers Decl., Ex. P.

1.      <u>Susan Scott started Fierce almost 20 years ago, and built a top corporate training company with a recognized brand</u>.

Fierce's CEO Susan Scott started Fierce, Inc. while in her mid-50's after 13 years of leading think tanks for CEOs, over 10,000 hours of conversations with them and her second divorce.  Scott Decl., ¶ 2.  She had been reading Hemingway's *The Sun Also Rises*, in which a character is asked, "How did you go bankrupt?"  And he replies, "Gradually, then suddenly."  At that moment, she had an epiphany—careers, companies, relationships and our very lives succeed or fail, gradually then suddenly, one conversation at a time.  This was followed by a second epiphany.  The conversation *is* the relationship.  Scott Decl., ¶ 2.

She founded Fierce to turn those epiphanies into action, and provide companies with a better type of consulting, training and education services than she had been able to find previously in the marketplace.  Scott Decl., ¶ 3.  At first, Ms. Scott operated out of her living

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  room, with some help from her daughter.  Scott Decl., ¶ 3.  But Fierce has now grown to one of

2  the top corporate training companies in the United States.  Scott Decl., ¶ 6.

3         Ms. Scott intentionally chose the name FIERCE to build a recognizable brand.

4  Scott Decl., ¶ 8.  That word was not common in corporate trainings or education at the time and

5  she wanted a name that would stand out and become instantly recognizable in customers' minds.

6  Scott Decl., ¶ 8.  At age 73, Ms. Scott remains at the helm of Fierce because she is passionate

7  about what it does and how it can change the conversation.  Scott Decl., ¶ 21.

8         On May 15, 2000, Fierce filed its first trademark application to register the mark

9  FIERCE CONVERSATIONS for "educational services, namely, conducting classes, seminars,

10  conferences and workshops in the field of business management and interpersonal

11  communications," which registration thereafter issued.  Summers Decl., Ex. A.  Fierce

12  subsequently obtained federal registrations for the following marks for use with the same

13  described services:  FIERCE; FIERCE CONVERSATIONS, FIERCE LEADERSHIP, FIERCE

14  NEGOTIATIONS; FIERCE ACCOUNTABILITY; FIERCE GENERATIONS; FIERCE

15  FEEDBACK.  Summers Decl., Exs. B - H.  All of these registrations are now incontestable.

16         In addition to those eight incontestable marks, Fierce has also obtained

17  registrations for the FIERCE COACHING, FIERCE TEAM, FIERCE CONFRONTATION, and

18  FIERCE DELEGATION.  Summers Decl., Exs. I-L.  All of those registrations are also for

19  "educational services, namely, conducting classes, seminars, conferences and workshops in the

20  field of business management and interpersonal communications."

21         In about 2003, Fierce established its website at <www.fierceinc.com>.  Scott

22  Decl., ¶ 9; Summers Decl., Ex. P.  Since about 2003, Fierce has also used the Fierce Orange in

23  connection with almost everything it does, including its workbooks (Toolkits), website,

24  marketing materials, books, white papers and other publications.  Scott Decl., ¶ 9; Exs. 3 - 8.

25  Below are examples of Fierce's use of the Fierce Orange in conjunction with its registered marks

26  for its products and services on Fierce's workbooks and at its website (www.fierceinc.com):

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1

2

3

4

5

6



7

8

9

10

11

12

13

14

15



16

17 *See*, *e.g.,* Scott Decl., Exs. 3-8; *see also* Dkt. No. 10-19.  In the last five years alone, Fierce has

18 provided its trainings to over 1000 organizations and, in doing so, distributed over 190,000 of its

19 Toolkits, all with workbooks having a Fierce Orange cover (as shown above) and the FIERCE

20 marks.  Scott Decl., ¶ 10, Exs. 3-8.

21          Through almost two decades of use and promotion, Fierce has created a

22 cognizable family of marks using FIERCE, which family is especially recognizable to consumers

23 of training services when used in conjunction with the distinctive orange color.  Consumers,

24 especially business organizations, now associate use of FIERCE along with another word and the

25 distinctive orange color as denoting goods and services originating from or associated with

26 Fierce.  Scott Decl., ¶ 12; Schmidt Decl., ¶¶ 6-8.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 5

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1       2.    <u>Ms. Scott has also authored a series of best-selling books that have furthered the</u>
2 <u>FIERCE brand</u>.

      In addition, Plaintiff Fierce's Founder and CEO, Susan Scott, has authored two
3 best-selling books that have further built the goodwill of the FIERCE brand.  Ms. Scott's first
4 book, *Fierce Conversations:  Achieving Success at Work & in Life, One Conversation at a Time,*
5 debuted on the business best-seller lists in 2001, and remains a best-seller today.  Indeed,
6 Ms. Scott's *Fierce Conversations* edged out Franklin Covey's *7 Habits* book on the Wall Street
7 Journal's best-seller list when Ms. Scott's book debuted in 2001.  Scott Decl., ¶ 4, Ex. 1.  Her
8 book has sold over 500,000 copies, and Fierce has given away many more as part of its corporate
9 trainings.  Scott Decl., ¶ 4.

10       In 2009, Ms. Scott published the second book in the FIERCE series, *Fierce*
11 *Leadership: a Bold Alternative to the Worst "Best" Practices of Business Today*.  That book also
12 went on to become a business best-seller.  Scott Decl., ¶ 5, Ex. 2.  That book had two chapters on
13 developing customer and employee loyalty, and Fierce plans to offer further trainings on those
14 subjects.  Scott Decl., ¶ 5.  The current front covers of the books are as shown below:

15

16  

17

18

19

20

21

22

23

24

25

26

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   Fierce has pending trademark applications for the titles of both of those books.[2]  Fierce has also

2   published an e-book in this series, entitled "*Fierce Insights Into 6 Leading Problems Businesses*

3   *Face Today.*"  Scott Decl., ¶ 6.

4           Those books also helped drive the success of Fierce as a company.  Scott Decl.,

5   ¶ 6; Schmidt Decl., ¶ 5.  As explained by the head of a major training services trade association,

6   "[i]t is not unusual for companies in the training industry to be built around a best-selling

7   business book or series of business books, which books then help drive sales of the company's

8   training services."  Schmidt Decl., ¶ 5.

9           Fierce also provides and further markets its services through webinars, in-person

10  workshops, virtual workshops, customized training programs, executive sessions and keynote

11  addresses.  Scott Decl., ¶ 7.  Ms. Scott regularly gives keynote presentations, which are a

12  common means of marketing for training services providers.  Scott Decl., ¶ 7.  Since opening its

13  doors, Fierce has spent over $10 million to grow its brand, to sustain and cement its relationships

14  with clients, and to make sure that when clients and potential clients see FIERCE—especially in

15  association with Fierce Orange—they know they are getting authentic Fierce training products

16  and services.  Scott Decl., ¶ 12.  Fierce expects to spend over $1 million in marketing for 2018

17  alone.  Scott Decl., ¶ 12.  Based on Fierce's marketing efforts, the distributions of its trainings

18  and Toolkits, and the success of the FIERCE line of books, the FIERCE family of marks—

19  especially when paired with the Fierce Orange—has become well-recognized in the business

20  community for training products and services, and customers or potential customers who see the

21  word FIERCE with a similar tone of orange will believe that the products or services so labelled

22  originated with or are affiliated with Fierce, Inc.  Scott Decl., ¶ 12; Schmidt Decl., ¶ 6.

23

24  ────────────────

25  [2] Because of a mistake in the initial filings, the applications were filed under Ms. Scott's name rather than in Fierce's name.  To rectify that error, and clarify that Fierce owns those marks, Ms. Scott executed an assignment of those marks and pending applications in June of this year, notice of which assignment was recorded with the United States

26  Patent and Trademark Office.  Summers Decl., Exs. M-O.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

**B.    FRANKLIN COVEY IS A COMPETITOR WHO RECENTLY DECIDED TO START A CONFUSINGLY SIMILAR BRAND TO THAT OF FIERCE.**

Defendant Franklin Covey is one of Fierce's largest competitors and a publicly traded company.  Summers Decl., Ex. Y.  But it has been operating at a loss for at least the last year, and recently "restructured the operations of the Sales Performance and Winning Customer Loyalty Practices. . . ."  Summers Decl., Ex. Y at 19.

1.    <u>Like Fierce, Franklin Covey built its brand on the success of a book series.</u>

Franklin Covey is well-known for its 7 HABITS series of books, starting with the book *The 7 Habits of Highly Effective People*, by its founder, Steven R. Covey, which came out in 1989, and appears to have been a best-seller ever since.  *E.g.*, Scott Decl., Ex. 1.  However, when FIERCE CONVERSATIONS came out in 2001, it edged out Covey's title in the Wall Street Journal business best-sellers list.  Scott Decl., Ex. 1.

Like Fierce, Franklin Covey has followed up that book's success with other titles incorporating the term and mark 7 HABITS.  Summers Decl., Ex. Z.  Those books are all available at the store on Franklin Covey's website.  Summers Decl., Ex. Z (https://store.franklincovey.com/books-and-audio-360?p=2.)  Conspicuously absent from that store is its latest book FIERCE LOYALTY.  Scott Decl., ¶ 18; Summers Decl., Ex. Q.

Franklin Covey has not hesitated to go after others for trademark infringement when they publish books or other expressive works that incorporate Franklin Covey's 7 HABITS in the title.  When Franklin Covey is suing to protect its own brand, it takes the position that book titles are protectable trademarks, and create the foundation for its brand:

> Franklin Covey is the owner of numerous trademarks that have been used to protect, signify, and distinguish its book, THE 7 HABITS OF HIGHLY EFFECTIVE PEOPLE, and many other books, products, and services that carry the term "7 Habits" or terms similar to it, in their titles, such as THE 7 HABITS OF HIGHLY EFFECTIVE TEENS, THE 7 HABITS OF HIGHLY EFFECTIVE FAMILIES, and THE 8TH HABIT.  Collectively, these products and services make up Franklin Covey's 7 HABITS brand.  Franklin Covey has invested immense resources in creating, adapting, and promoting the 7 HABITS brand, which has become one of its core product lines.

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  Summers Decl., Exs. T, V.

2           Hence, Franklin Covey obtained a permanent injunction against a Washington

3  physician and his company prohibiting those defendants from:

4           Publishing, distributing, marketing, advertising, or promoting their audio program
           *The 7 Habits of Highly Energized Physicians* and their work titled the *8th Habit*
5           and from publishing, distributing, marketing, advertising, or promoting any other
           product or service incorporating Franklin Covey's trademarks THE 7 HABITS
6           OF HIGHLY EFFECTIVE PEOPLE, THE 7 HABITS OF HIGHLY EFFECTIVE
           TEENS, THE 7 HABITS OF HIGHLY EFFECTIVE FAMILIES, and/or THE
7           8TH HABIT, in whole or in part, in any medium whatsoever, including, but not
           limited to, the internet.

8

9  Summers Decl., Ex. U.  Franklin Covey obtained a similarly-worded permanent injunction

10 against a video producer that utilized the term "The 7½ Habits."  Summers Decl., Ex. W.

11          Just as consumers for training services have come to associate domain names,

12 books, webinars, training materials and training or consulting services whose title includes the

13 term 7 HABITS as originating with or associated with Franklin Covey, those same consumers

14 have come to associate domain names, books, webinars, training materials and training or

15 consulting services whose title includes the term FIERCE (especially when combined with the

16 Fierce Orange) as originating or associated with plaintiff Fierce.  Scott Decl., ¶ 12; Schmidt

17 Decl., ¶ 6.

18      2.      Franklin Covey appears to have recently rebranded one of its traditional trainings
                as FIERCE LOYALTY in order to trade on plaintiff's goodwill.

19
                Until about August of this year, Franklin Covey and Fierce used very different
20
   marks, and very different color schemes, for their competing business educational services.
21
   Franklin Covey has traditionally used a shade of blue as its predominant color scheme.  Scott
22
   Decl., ¶ 16; Summers Decl., Ex. AA.  Franklin Covey has traditionally offered its "customer
23
   loyalty solutions" at its website <www.franklincovey.com> under brand names such LEADING
24
   CUSTOMER LOYALTY and NET PROMOTER SYSTEM.  Scott Decl., ¶ 16; Summers Decl.
25
   Ex. AA.  Franklin Covey also formerly offered through that website a training program called
26

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 9

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   "Ultimate Loyalty:  Building Teams that Wow Customers."  Scott Decl., ¶ 16; Summers Decl.,

2   Ex. R.  Franklin Covey's offerings, as previously branded, would never cause confusion with

3   Fierce's offerings.

4             But in approximately August of this year, Franklin Covey started promoting a

5   new brand for its goods and services—FIERCE LOYALTY.  Summers Decl., Ex. S.  About that

6   time, Franklin Covey started advertising those goods and services at a separate domain it had

7   acquired: <fierceloyalty.com>. Summers Decl., Ex. S; Dkt. No. 10-18.  At that domain,

8   Franklin Covey started advertising and promoting a new book—FIERCE LOYALTY—along

9   with associated webinars, trainings and keynote speaker opportunities.  Esler Decl., Ex. S; Dkt.

10  No. 10-18.  Unlike its other books, Franklin Covey did not offer FIERCE LOYALTY for sale

11  through the Franklin Covey website's bookstore.[3]  Scott Decl., ¶ 18; Summers Decl., Ex. Q.

12  Unlike Franklin Covey's other books, FIERCE LOYALTY features a bright orange cover that is

13  a nearly identical hue to the Fierce Orange, with a nearly identical typeface to the current

14  editions of Fierce's book series.  Scott Decl., ¶ 5; Dkt. No. 10-18.  Franklin Covey also

15  rebranded its competing training seminar (offered at $2,095 per person) from "Ultimate Loyalty"

16  to "Fierce Customer Loyalty."  Scott Decl., ¶ 18; Summers Decl., Ex. R.  FIERCE LOYALTY

17  appears to be the new brand that Franklin Covey intentionally adopted for its old customer

18  loyalty programs to trade off of Fierce, Inc.'s two-decades of customer recognition built up

19  around its FIERCE® family of marks.  Scott Decl., ¶¶ 15, 18; Schmidt Decl., ¶ 8.

20            Other than the small print on the cover of the Defendant's book (barely readable

21  on a website), a reader would have to scroll all the way to the bottom of the website

22  <fierceloyalty.com> before seeing Franklin Covey's marks used at all.  Dkt. No. 10-18, at p. 10.

23

24

25

26  [3] But Franklin Covey does advertise the *Fierce Loyalty* book and associated webinars and services below the fold on its landing page at <franklincovey.com>.  Summers Decl., Ex. Z.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 10

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    According to its website (Dkt. No. 10-18), Defendant's book will be released sometime soon[4]

2    with the following cover (set in comparison to the current covers of the Fierce Books):

3



14            Defendant's book already appears on Amazon.com (which also carries Fierce's

15    books), and is described there as teaching principles similar to those contained in plaintiff

16    Fierce's trainings, books, and programs, including making authentic connections, asking the

17    right questions, listening to learn, discovering the real job to be done and strengthening

18    relationships.  Dkt. No. 10-17.  The book's authors are advertising Franklin Covey's new

19    offering on their LinkedIn pages, which pages also feature the color orange splashed across the

20    top, further creating the impression that the books, trainings, and programs are somehow

21    associated with or authorized by plaintiff Fierce.  Summers Decl., Ex. X.

22

23

24

---

[4] Franklin Covey announced that the book would be released in November (Dkt. No. 10-17), but that appears to have just been pushed back to February on the amazon.com site.  https://www.amazon.com/Fierce-Loyalty-Cracking-Customer-Devotion/dp/081443939X/ref=sr_1_2?ie=UTF8&qid=1541638472&sr=8-2&keywords=fierce+loyalty.

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    3.    <u>Franklin Covey's use is likely to cause confusion</u>.

2    Fierce first learned of Franklin Covey's book and website, *Fierce Loyalty*, in

3    about mid-September when a Fierce client who had received an advance copy of the book

4    contacted one of Fierce's (now former) employees to ask about that book and its association with

5    Fierce.  Scott Decl., ¶ 14.  But that confusion is only the tip of the iceberg; if the defendant's

6    book launches into general publication, and is used to promote Franklin Covey's competing and

7    rebranded offerings, the confusion will only increase.  As explained by Pam Schmidt, the

8    executive director of the ISA, one of the leading trade associations for companies that are in the

9    training industry (of which Fierce is a current member, and Franklin Covey a former member),

10   "[i]n the training industry, Fierce has a well-established brand, which is instantly recognizable

11   when the word 'Fierce' is prominently displayed with that orange hue."  Schmidt Decl., ¶ 6.

12   When Ms. Schmidt first saw Franklin Covey's <fierceloyalty.com> site and the book offered

13   there, she assumed it was associated with Fierce:  "I initially thought it was a website advertising

14   the latest book from Fierce, as the book had the word "fierce" in the title, uses a typeface similar

15   to what I have seen in other Fierce books and had a color orange as the background that looks the

16   same as the orange I associate with Fierce."  Schmidt Decl., ¶ 8.

17   Defendant's use of the FIERCE Marks is likely to cause confusion among

18   consumers.  Scott Decl., ¶ 20; Schmidt Decl., ¶ 9.  Defendants' use of those marks, especially its

19   use of FIERCE with an orange hue nearly identical to the Fierce Orange, appears deliberately

20   designed to trade off Fierce's goodwill and reputation.  Such confusion irreparably harms Fierce

21   and Fierce's business reputation, particularly where, as here, Fierce is in direct competition with

22   Franklin Covey.  Fierce now asks the Court's assistance to protect against further erosion of its

23   brand and goodwill.

24                                    **III. <u>ARGUMENT</u>**

25   A party seeking a preliminary injunction must "establish that [it] is likely to

26   succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  relief, that the balance of the equities tips in [its] favor, and that an injunction is in the public

2  interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

3  　　　　　The first *Winter* factor—likelihood of success—is often considered the most

4  important. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). But a plaintiff

5  can still obtain a preliminary injunction even when success on the merits is uncertain if there are

6  "serious questions going to the merits," "the 'balance of hardships tips sharply in the plaintiff's

7  favor,' and the other two *Winter* factors are satisfied." *Alliance for the Wild Rockies v. Pena*,

8  865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d

9  1281, 1291 (9th Cir. 2013)). As shown by the limited evidence available even without discovery,

10  Fierce is likely to succeed on the merits of its claims or has at least raised serious questions

11  concerning the merits, and the balance of hardships tips in Fierce's favor.

12  **A.   FIERCE IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.**

13  　　　　　To prevail on its trademark infringement claim, Fierce must show that it has valid

14  marks that have been used in commerce, and that the defendant's use is likely to cause

15  confusion, to cause mistake or to deceive as to sponsorship, affiliation, or the origin of the goods

16  or services in question. 15 U.S.C. § 1114; *Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d

17  966, 969 (9th Cir. 2007). Fierce can prove all those elements.

18  　　　　1.   <u>Fierce has valid marks</u>.

19  　　　　　Fierce started using its FIERCE® family of marks by 2001, and has continuously

20  used those marks for its business educational services, so its common law rights in most of these

21  marks dates back at least a decade. Scott Decl., ¶¶ 9-13. A trademark holder can also

22  demonstrate ownership, validity and use in commerce by showing "it has a federally registered

23  mark in goods or services." *Pom Wonderful, LLC v. Hubbard*, 775 F.3d 118, 1124 (9th Cir.

24  2014). As shown by Exhibits A - L of the Summers Declaration, summarized in the chart below,

25  Fierce has obtained the following federal registrations for essentially the same described

26

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   services, i.e., "educational services, namely, conducting classes, seminars, conferences and

2   workshops in the field of business management and interpersonal communications."

| Mark/Reg. No. | Date of First Use | Registration Date | Incontestable Status? |
|---|---|---|---|
| FIERCE CONVERSATIONS 2467684 | January 1999 | July 10, 2001 | YES |
| FIERCE 2804226 | January 1999 | January 13, 2004 | YES |
| FIERCE CONVERSATIONS 3005908 | January 1999 | October 11, 2005 | YES |
| FIERCE LEADERSHIP 3144879 | January 31, 2001 | September 19, 2006 | YES |
| FIERCE ACCOUNTABILITY 3578915 | June 11, 2007 | February 24, 2009 | YES |
| FIERCE NEGOTIATIONS 3578914 | May 14, 2007 | February 24, 2009 | YES |
| FIERCE GENERATIONS 3728157 | December 2006 | December 22, 2009 | YES |
| FIERCE FEEDBACK 4775925 | May 15, 2013 | July 21, 2015 | NO |
| FIERCE COACHING 4923768 | June 15, 2015 | March 22, 2016 | NO |
| FIERCE TEAM 5007198 | June 15, 2015 | July 26, 2016 | NO |
| FIERCE CONFRONTATION 5011973 | June 15, 2015 | August 2, 2016 | NO |
| FIERCE DELEGATION 5011974 | June 15, 2015 | August 2, 2016 | NO |

19          For most of Fierce's above marks, the Patent and Trademark Office never asked

20   Fierce to prove secondary meaning (Summers Decl., ¶ 3), which means those marks are

21   presumed to be inherently distinctive in that field of services.  *Borinquen Biscuit Corp. v. M.V.*

22   *Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006).  Fierce's registrations are "evidence and shall

23   be prima facie evidence" of the validity of the registered marks, Fierce's ownership of those

24   marks and of its "exclusive right to use the registered mark in commerce on or in connection

25   with the goods and services specified in the registration. . . ."  15 U.S.C. § 1115(a).

26

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1        As shown above, most of those registered trademarks are now incontestable.

2   15 U.S.C. § 1065.  For those marks, Fierce's registrations "shall be conclusive evidence" that

3   Fierce owns the marks, that they are valid, and that it has the "exclusive right to use the mark on

4   or in connection with" the services identified in the registration (i.e., educational services in the

5   field of business management and interpersonal communications).  15 U.S.C. § 1115(b).  Those

6   incontestable registrations are conclusive proof that those marks are inherently distinctive for

7   those services.  *Borinquen Biscuit*, 443 F.3d at 117.

8        While Fierce's trademark applications for registration of its book titles are still

9   pending, Fierce nonetheless has common-law rights in those titles even without registration.

10   Fierce's almost two decades of using the book title *Fierce Conversations*, along with its almost

11   decade of using of *Fierce Leadership*, as source-signifiers is enough to show secondary meaning

12   (i.e., acquired distinctiveness) to the extent such showing would be necessary.  But given that the

13   titles are part of a series, the titles should be presumed to be source-signifying.  *Spin Master,*

14   *Ltd. v. Zobmondo Entm't, LLC*, 944 F.Supp.2d. 830, 853 (C.D. Cal. 2012).

15        2.    Defendant Franklin Covey's use of FIERCE LOYALTY is likely to cause
                confusion, to cause mistake or to deceive potential customers into believing there
16              is an affiliation between Fierce and Franklin Covey.

17        Courts look to the eight non-exclusive *Sleekcraft* factors to determine likelihood

18   of confusion:  (1) similarity of the marks; (2) relatedness of the two companies' services;

19   (3) marketing channels used; (4) strength of the plaintiff's marks; (5) defendants intent in

20   selecting its marks; (6) evidence of actual confusion; (7) likelihood of expansion into other

21   markets; and (8) degree of care likely to be exercised by the purchasers.  *AMF, Inc. v. Sleekcraft*

22   *Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  The relative importance of each factor is case-

23   specific, based on the facts and the alleged infringement.  *Brookfield Communications, Inc. v.*

24   *West Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).  When the infringement occurs on

25   the Internet, the most important factors are the first three (*i.e.*, similarity of marks, services and

26   marketing channels).  *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 15

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   2002).  If those three factors suggest confusion is likely, a finding of infringement will almost

2   always follow unless the other *Sleekcraft* factors "weigh strongly" against a likelihood of

3   confusion.  *Interstellar Starship*, 304 F.3d at 942.

4           a.     *The marks are virtually identical.*

5           Similarities weigh more heavily than differences.  *Sleekcraft*, 599 F.2d at 351.

6   "Obviously, the greater the similarity between the two marks at issue, the greater the likelihood

7   of confusion."  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).  When

8   examining the marks, the Court should consider not just the similarity, but also associated

9   elements (including trade dress) to determine whether the marks as used project confusingly

10  similar commercial impressions.  *Specialty Brands v. Coffee Bean Distributors, Inc.*, 748 F.2d

11  669, 674 (Fed. Cir. 1984).  Consumers are generally more likely to focus on the first word in any

12  mark.  *Palm Bay Imps. Inc. v. Vueve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d

13  1369, 1372 (Fed. Cir. 2005).  FIERCE is the first word in all of Fierce's marks, and the first

14  word customers see when visiting Franklin Covey's <fierceloyalty.com> website.

15          The Court can also consider that Fierce has not just one mark but rather a family

16  of FIERCE marks.  "A family of marks is a group of marks having a recognizable common

17  characteristic, wherein the marks are comprised and used in such a way that the consuming

18  public associates not only the individual marks, but the common characteristic of the family,

19  with the trademark owner."  *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462

20  (Fed. Cir. 1991); *see also Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1338 (Fed.

21  Cir. 2001) (affirming finding of likelihood of confusion between TRES-prefixed family of marks

22  for hair care products and TREVIVE NUTRIENTS FOR THE LIFE OF YOUR HAIR and

23  design mark).  Especially when a mark holder has such a family of related marks, a competitor's

24  use of any mark that might be considered a member of that family is more likely to confuse

25  consumers.  *Caesars World, Inc. v. Milanian*, 247 F.Supp.2d 1171, 1197 (D. Nev. 2003).

26

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 16

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    Here, Fierce has a primary mark (FIERCE®) and eleven other registered marks

2    that all use FIERCE plus a following word (usually a noun).  Those marks constitute a family of

3    marks, and (given that most of the marks are incontestable), Fierce is conclusively presumed to

4    have the "exclusive right to use" those marks for educational services in the field of business

5    management.  15 U.S.C. § 1115(b); *Borinquen Biscuit*, 443 F.3d at 117.  Fierce also has a book

6    series that follows the same pattern.  And the materials on which those marks usually appear all

7    prominently feature the distinctive Fierce Orange and have featured that color for over a decade.

8    Scott Decl., Exs. 3-8.

9    As far as Fierce can tell from the evidence adduced so far, Franklin Covey never

10    before used the word "fierce" in a title or brand for its educational services or books.  Franklin

11    Covey's use of FIERCE LOYALTY—for a domain name, a book, webinars, keynote addresses

12    and paid trainings[5]—uses the FIERCE family name followed by a noun, in the same style as

13    most of Fierce's registered marks.  Franklin Covey has then coupled that very similar word mark

14    with a shade of orange almost indistinguishable from Fierce Orange.  This factor heavily favors

15    Fierce.

16    b.    *The products and services are virtually identical.*

17    The more closely related the products or services, the more likely that consumers

18    will mistakenly assume there is an association between the sources of those products or services.

19    *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) (recognizing that a

20    "diminished standard of similarity is therefore applied when comparing marks of closely related"

21    goods or services).  Franklin Covey is a competitor of Fierce, and is using FIERCE LOYALTY

22    for the same goods and services for which Fierce uses its FIERCE family of marks—books and

23    educational services in the field of business management and interpersonal relationships.  This

24    factor also heavily favors Fierce.

25    _____

26    [5] The paid trainings are called FIERCE CUSTOMER LOYALTY, but the addition of one more noun does not significantly distinguish that educational seminar from Fierce's marks.  Summers Decl., Ex. R.

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

          c.     *The marketing channels are virtually identical.*

The likelihood of confusion also increases when the parties use similar marketing channels.  *Sleekcraft*, 599 F.2d at 353.  As competitors, Franklin Covey and Fierce use similar marketing channels to reach similar corporate clients.  They market to the same corporate clients looking for management training services, using websites, books, webinars and keynote addresses to promote their services.  Scott Decl., ¶ 7; Summers Decl., Ex. Y; Dkt. No. 10-18.

What is particularly striking here is that—unlike all its other books and educational offerings, which are offered for sale through the "bookstore" at <franklincovey.com/books-and-audio 360>—Franklin Covey chose in this instance to establish a separate domain <fierceloyalty.com> for this new branding effort, thus creating a greater likelihood of initial interest confusion when a consumer searching for Fierce's services online instead lands on Franklin Covey's similar-looking, Fierce-branded site.  *Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036, 1058 (9th Cir. 1999).  Potential customers looking for Fierce's website who land on Franklin Covey's <fierceloyalty.com> site may simply decide to purchase Franklin Covey's offerings instead.  *Brookfield Communications*, 174 F.3d at 1062.  Given that Franklin Covey's offering at that website appears to be another in Fierce's series of management training books and services, such customers may believe that they are purchasing a product associated with Fierce even if Franklin Covey has its own marks there.  *Brookfield Communications*, 174 F.3d at 1058.  But even if such consumers actually realize that they are purchasing a book or webinar that has nothing to do with Fierce, Franklin Covey has nonetheless "improperly benefit[ed] from the goodwill that [Fierce] developed in its mark."  *Brookfield Communications*, 174 F.3d at 1062; Scott Decl., ¶ 20.  Even if no actual sale occurs, the mere fact that Franklin Covey has used Fierce's marks to drive potential Fierce customers to its website and expose them to its competing products is still an infringement.  *Brookfield Communications*, 174 F.3d at 1062; Scott Decl., ¶ 20.  This factor also heavily favors Fierce.

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1                d.     *Fierce's marks are strong.*

2            Trademarks are usually classified in one of five categories of increasing

3 distinctiveness:  (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful.

4 *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998).  A

5 registered mark is "presumed to be distinctive and should be afforded the utmost protection."

6 *Lois Sportswear USA, Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2nd Cir. 1986); *see also*

7 15 U.S.C. § 1115(a) (registration prima facie evidence of validity).

8            The Patent and Trademark Office did not ask Fierce for proof of secondary

9 meaning for most of these applications, which means that the marks should be presumed to be

10 inherently distinctive (i.e., suggestive, arbitrary or fanciful) in the field of educational training

11 services for business management and interpersonal communications.  *Borinquen Biscuit Corp.*,

12 443 F.3d at 117.  For Fierce's incontestable FIERCE-related marks, those registrations are

13 "conclusive evidence of the validity of the registered mark and of the registration of the mark, of

14 the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered

15 mark in commerce."  15 U.S.C. § 1115(b).  Those registrations are conclusive proof that those

16 marks are inherently distinctive for the described services.  *Borinquen Biscuit*, 443 F.3d at 117.

17            With regard to the primary mark FIERCE® (as used for educational services for

18 business management), such mark should be considered to be a fanciful mark.  *Caesars World*,

19 247 F.Supp. at 1199 (EMPIRE as used with hotels and casinos is fanciful).  Arbitrary marks can

20 be common English words, but as used with the goods or services at issue, neither suggest nor

21 describe any characteristic of the goods or service.  *Caesars World,* 247 F.Supp.2d at 1199.

22 Fierce's other marks should also be considered to be arbitrary for Fierce's educational services,

23 but at a minimum they are at least suggestive.

24            Moreover, because Fierce has a family of FIERCE marks, when combined and

25 considered along with its best-selling book titles and as used with its distinctive Fierce Orange,

26 Fierce's marks overall should be considered to be especially strong in the training services field.

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1          e.       *Franklin Covey appears to have intentionally copied Fierce.*

2                   When a competitor knowingly adopts a mark similar to another's mark for similar

3    goods and services, "courts will presume an intent to deceive the public." *Official Airline*

4    *Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993).  The defendant does not have to act with

5    specific intent to deceive; rather, this factor favors a finding of a likelihood of confusion "when

6    the alleged infringer knowingly adopts a mark similar to another's" mark.  *Au-Tomotive Gold,*

7    *Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006).

8                   In about August, Franklin Covey decided to establish a new brand and website

9    incorporating the word "fierce," to pick a color scheme for that website that is nearly identical to

10   the Fierce Orange, and then start to promoting a book that sounds like it is part of Fierce's series

11   of books and uses an nearly identical typeface and orange background.  Such similarity in

12   appearance and lettering is itself evidence of intent.  *Warner Bros. Ent. v. Asylum, Inc.*, 2013

13   WL 12114836, *8 (C.D. Cal. Jan. 29, 2013).  While no discovery has occurred yet, Franklin

14   Covey appears to have intended to mimic Fierce's offerings.

15         f.       *There is already evidence of confusion.*

16                  While actual consumer confusion is always probative of the likelihood of

17   confusion, there can still be a likelihood of confusion even absent such evidence.  *Am. Int'l Grp.,*

18   *Inc. v. Am. Int'l Bank,* 926 Fd 829, 832 (9th Cir. 1991).  Fierce first found out about Franklin

19   Covey's website and soon-to-launch book in September when a mutual customer contacted

20   Fierce to ask about the book.  Scott Decl., ¶ 14.  The potential confusion will only increase.

21   Schmidt Decl., ¶ 9.  This factor favors Fierce.

22         g.       *The likelihood of expansion into other markets.*

23                  As the parties are already marketing products and services in the same field, this

24   factor is relatively unimportant.  *Brookfield*, 174 F.3d at 1060.

25

26

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1          h.      *Purchasers are likely to exercise less care in picking the book or webinar,*
2                  *and are then more likely to buy Franklin Covey's more expensive*
                   *offerings.*

3          When purchasing inexpensive products (such as books or free webinars),

4   customers are likely to exercise less care, thus making confusion more likely.  *Brookfield*,

5   174 F.3d at 1060.  The books FIERCE CONVERSATIONS, FIERCE LEADERSHIP, and

6   FIERCE LOYALTY all generally sell for under $20.  *Compare* Dkt. No. 10-15 *with* 10-17.

7   Customers who enjoyed Susan Scott's first two books are more likely to see Franklin Covey's

8   book as just another in the series, reflexively order it and sign up for the "free" webinar (thus

9   giving Franklin Covey valuable customer leads).

10         As Franklin Covey explained to its shareholders, its margins on publishing are

11  diminishing but books drive customers to its more lucrative seminars and other services.

12  Summers Decl., Ex. Y at 19-21, 24.  Although business customers may exercise more care when

13  deciding whether to pay for Franklin Covey's upcoming "Fierce Customer Loyalty" seminars (at

14  $2,095 a person), by abandoning its previous title for those seminars (i.e., "Ultimate Customer

15  Loyalty") and instead adopting Fierce's mark, customers again will have the impression that

16  somehow Fierce authorized that seminar or is somehow associated with it.

17         In short, the *Sleekcraft* factors here all point to a likelihood of confusion.  That

18  confusion will only get worse as defendant releases its book to the general public, sends its

19  authors out to give keynote addresses under Franklin Covey's new, confusingly-similar brand,

20  and conducts more webinars and promotional efforts to drive customers for training services to

21  Franklin Covey's rebranded FIERCE LOYALTY training programs.

22      3.      <u>Franklin Covey's defenses are unlikely to succeed.</u>

23         As will be explained in greater detail in Fierce's response to Franklin Covey's

24  Motion to Dismiss, Franklin Covey's claims that it is not using Fierce's marks as a source

25  identifier, that its use is "fair" and that its actions are protected by the First Amendment, are

26  unlikely to succeed.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 21

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    Even a single book title may be a trademark if it develops secondary meaning,

2  which is what Franklin Covey is trying to create with its new FIERCE LOYALTY brand.

3  *Herbko Int'l, Inc. v. Kappa Books, Inc.,* 308 F.3d 1156, 1162-63, n.2 (Fed. Cir. 2002).  More

4  importantly, Fierce's series of books (FIERCE CONVERSATIONS and FIERCE

5  LEADERSHIP) are protectable because a series of books inherently acts as a source identifier.

6  *Spin Master*, 944 F.Supp.2d at 853.  Fierce has also widely distributed its distinctively orange

7  workbooks, bearing its registered trademarks.  Fierce has a well-known series of books in the

8  field of educational services for business management that all start with the word FIERCE and

9  utilize its Fierce Orange, and Franklin Covey is now seeking to trade on that goodwill.[6]

10    Similarly, Franklin Covey's fair use defense is unlikely to succeed.  In the Ninth

11  Circuit, "the classic fair use defense is not available if there is a likelihood of customer confusion

12  as to the origin of the product."  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir.

13  2002).  As explained above, the likelihood of consumer confusion is high.  Given that Franklin

14  Covey previously offered the same services under the brand ULTIMATE LOYALTY, it is

15  unlikely to show that it needed to use the mark FIERCE for its competing services.

16    Finally, Franklin Covey's First Amendment defense is also unlikely to succeed.

17  "The purchaser of a book, like the purchaser of a can of peas, has a right not to be misled as to

18  the source of the product."  *Rogers v. Grimaldi*, 875 F.2d 994, 997-98 (1989).  The *Rogers* test,

19  upon which Defendant relies to excuse its mimicry, does not stand for the proposition that the

20  First Amendment automatically trumps trademark rights. *Gordon v. Drape Creative, Inc.*,

21  897 F.3d 1184, 1190 (9th Cir. 2018).  As *Rogers* itself noted, its test would not limit the ability

22  of a mark holder to prevent a competitor from using a confusingly similar book title:

23       Thus, it is well-established that where the title of a movie or a book has acquired
         secondary meaning—that is, where the title is sufficiently well-known that
24       consumers associate it with a particular author's work—the holder of the rights to

25  ───────────────

26  [6] As Franklin Covey itself has sued for and obtained injunctions to prevent others from infringing on the titles of its
    books, its motion to dismiss appears even more questionable.  Summers Decl., Exs. T-W.

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

that title may prevent the use of the same or confusingly similar titles by other authors.  Indeed, it would be ironic if, in the name of the First Amendment, courts did not recognize the rights of authors to protect titles of their creative works against infringement by other authors.

*Rogers*, 875 F.2d at 998 (internal citations omitted); *accord & Schuster, Inc. v. Dove Audio, Inc.*, 970 F.Supp. 279, 296 (S.D.N.Y 1997) (enjoining defendant's book when the book title was confusingly similar to plaintiff's series of books); *see also Warner Bros.*, 2013 WL 12114836, *12-13 (enjoining defendant from releasing movie with title confusingly similar to title of plaintiff's movie).

**B.    FIERCE WILL SUFFER IRREPARABLE HARM.**

Harm to goodwill and reputation, and loss of control over goods and services provided under a mark, are harms that are inherently irreparable, because although those harms are very real, they are also very hard to measure as damages.  Hence, courts repeatedly have found that, once a likelihood of confusion is shown, such reputational and control injuries are sufficient irreparable harm to support a preliminary injunction.  *Usrey v. Chen,* 2014 WL 12570232, at *7 (C.D. Cal. May 29, 2014) (citing cases), *Treemo, Inc. v. Flipboard, Inc.*, 53 F.Supp.3d 1342, 1367 (W.D. Wash. 2014).

**C.    THE BALANCE OF THE EQUITIES TIPS IN FIERCE'S FAVOR.**

Franklin Covey's book has not yet been released, although it appears to have been distributing advanced copies to customers, is taking orders, and has conducted webinars based on the book, which webinars are finished already.  Summers Decl., Ex. CC.  Franklin Covey's paid trainings under its new mark "Fierce Customer Loyalty" will not start until January 2019 at the earliest.  Summers Decl., Ex. R.  Hence, by entering a preliminary injunction now, the Court will be preserving the *status quo* for trial.

**D.    THE PUBLIC INTEREST WILL NOT BE HARMED.**

As noted in the *Rogers* decision itself, the public interest in sparing consumers confusion outweighs the slight public interest in permitting authors the right to use confusingly

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  similar titles.  *Rogers*, 875 F.2d at 999, n.5.  Here, Franklin Covey is not just offering a

2  confusingly similar book title—it is using that book release at a launching pad for rebranding its

3  offerings to look and sound like Fierce's competing offerings.  Franklin Covey can offer the

4  same goods and services under the trademarks it has always used, without having to infringe on

5  Fierce's marks and confuse customers.

6  **E.     ONLY A MINIMAL BOND IS NECESSARY**

7          Fierce's requested preliminary injunction will not prevent Franklin Covey from

8  offering its training services or materials through its <franklincovey.com> website as it always

9  has done, under the brands it has always used.  It will only be prohibited from rebranding those

10  goods and services as something confusingly-similar to the FIERCE® family of marks.  Its book

11  is not scheduled for release until February, so it will suffer little harm right now.

12                          **IV. <u>CONCLUSION</u>**

13          Fierce's likelihood of success is high, the likelihood of confusion and harm to

14  Fierce's reputation and goodwill without an injunction is also high, so Fierce requests that the

15  Court enter a preliminary injunction now.

16          DATED this 8th day of November, 2018.

17                          MILLER NASH GRAHAM & DUNN LLP

18
                            *s/ Brian W. Esler*
19                          Brian W. Esler, WSB No. 22168
                            brian.esler@millernash.com
20                          *s/ Vanessa L. Wheeler*
                            Vanessa L. Wheeler, WSB No. 48205
21                          vanessa.wheeler@millernash.com
                            Pier 70 ~ 2801 Alaskan Way, Suite 300
22                          Seattle, Washington  98121
                            Tel:  206-624-8300 / Fax:  206-340-9599
23                                  Attorneys for Plaintiff

24  4835-3691-6856.3

25

26

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1

<u>CERTIFICATE OF SERVICE</u>

2         I hereby certify that on November 8th, 2018, I electronically filed the foregoing

3 with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4 to the following:

5         J. Michael  Keyes - keyes.mike@dorsey.com

6         Erin C. Kolter - kolter.erin@dorsey.com

7

8         DATED this 8th day of November, 2018.

9

10                  <u>*s/ Gillian Fadaie*</u>

11                  Gillian Fadaie, Legal Assistant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121