1

Honorable Marsha J. Pechman

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10
FIERCE, INC., a Washington corporation,

11
               Plaintiff,

Case No. 2:18-cv-01449-MJP

12
    v.

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

13
FRANKLIN COVEY CO., a Utah
corporation,

NOTED FOR CONSIDERATION:
NOVEMBER 16, 2018

14

15
               Defendant.

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1

# TABLE OF CONTENTS

2

**Page**

3 I.    OVERVIEW OF OPPOSITION ................................................................. 1

4 II.    FACTS PLEADED .............................................................................. 3

5     A.    THE HISTORY OF THE FIERCE MARKS, BOOKS, AND TRADE DRESS ....................................................................... 3

6     B.    DEFENDANT FRANKLIN COVEY'S DECISION TO START A NEW BRAND CONFUSINGLY SIMILAR TO THAT OF FIERCE ........................... 8

7 III.    ARGUMENT ....................................................................................... 11

8     A.    LEGAL STANDARD ON MOTION TO DISMISS ............................. 11

9     B.    THE COURT SHOULD STRIKE EXHIBITS 1-9 FROM FRANKLIN COVEY'S MOTION BECAUSE THEY ARE IMPROPER ON A MOTION TO DISMISS .................................................. 12

10

11     C.    FIERCE HAS STATED SUFFICIENT FACTS TO ALLEGE CLAIMS OF TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION IN CONNECTION WITH DEFENDANT'S GOODS AND SERVICES ......... 13

12         1.    FIERCE operates as a source identifier in connection with Fierce's series of books and in connection with its competing services, and Franklin Covey itself is trying to create such goodwill in its new FIERCE LOYALTY brand ......................... 13

13

14         2.    Defendant's use of FIERCE LOYALTY is not a fair use and determination on the merits of this defense is inappropriate on a motion to dismiss ...................................... 15

15

16         3.    Defendant cannot show that its use of FIERCE LOYALTY is protected by the First Amendment ............................. 17

17     D.    FIERCE HAS STATED SUFFICIENT FACTS TO ALLEGE CLAIMS RELATED TO THE USE THE COLOR ORANGE AS AN ELEMENT OF FIERCE'S DISTINCTIVE TRADE DRESS .......................... 21

18

19 IV.    CONCLUSION ..................................................................................... 23

20

21

22

23

24

25

26

PAGE - i    PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 $$ F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**Cases**

5

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937 (2009)......................................................................11

6

*Branch v. Tunnell,*
14 F.3d 449 (9th Cir. 1994), *overruled on other grounds* by *Galbraith v. Cnty.
of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002)......................................................12

7

8

*Brown v. Electronic Arts, Inc.,*
724 F.3d 1235 (9th Cir. 2013) ................................................................................19

9

*Cairns v. Franklin Mint Co.,*
292 F.3d 1139 (9th Cir. 2002) ............................................................................2, 16

10

11

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.,*
447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)..........................................18

12

13

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
251 F.3d 1252 (9th Cir. 2001) ................................................................................21

14

*Cliff Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc.,*
886 F.2d 490 (2nd Cir. 1989)..................................................................................18

15

16

*In re Cooper,*
254 F.2d 611, 45 C.C.P.A. 923 (C.C.P.A. 1958).....................................................13

17

18

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.,*
158 F.3d 1002 (9th Cir. 1998) ................................................................................21

19

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC,*
300 F.Supp.3d 1073, 1084 (S.D. Cal. 2017)...........................................................14

20

21

*EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.,*
228 F.3d 56 (2d Cir. 2000)......................................................................................14

22

23

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003) ............................................................................3, 11

24

*Erickson v. Pardus,*
551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)...........................................3

25

26

PAGE - i    PLAINTIFF'S OPPOSITION TO DEFENDANT'S
            MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 $$ F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

**TABLE OF AUTHORITIES**
(continued)

Page

*Facebook, Inc. v. Teachbook.com LLC*,
   819 F.Supp.2d 764 (N.D. Ill. 2011) .................................................12

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management*,
   618 F.3d 1025 (9th Cir. 2010) ...............................................16, 17

*Friedman v. AARP, Inc.*,
   855 F.3d 1047 (9th Cir. 2017) ....................................................11

*Gilligan v. Jamco Development Co.*,
   108 F.3d 246 (9th Cir. 1997) ......................................................12

*Gordon v. Drape Creative, Inc.*,
   897 F.3d 1184 (9th Cir. 2018) ...........................................2, 16, 17, 18

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .....................................................12

*Harris v. Orange Cnty.*,
   682 F.3d 1126 (9th Cir. 2012) .....................................................12

*Herbko Int'l, Inc. v. Kappa Books, Inc.*,
   308 F.3d 1156 (Fed. Cir. 2002) ....................................................13

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   408 F.3d 596 (9th Cir. 2005) ......................................................16

*Lepton Labs, LLC v. Walker*,
   55 F.Supp.3d 1230, 1239 (C.D. Cal. 2014) ..........................................22

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ......................................................18

*McAllister Olivarius v. Mermel*,
   298 F.Supp.3d 661, 670 (S.D.N.Y. 2018)........................................17, 20

*Moroccanoil, Inc. v. Zotos Int'l, Inc.*,
   230 F.Supp.3d 1161, 1171 (C.D. Cal. 2017) ........................................21

*Navajo Nation v. Urban Outfitters, Inc.*,
   935 F.Supp.2d 1147 (D. N.M. 2013) .................................................12

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 $$ F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Parks v. LaFace Records,*
    329 F.3d 437 (6th Cir. 2003) ................................................................19

4

5

*Rogers v. Grimaldi,*
    875 F.2d 994 (2d Cir. 1989).................................................2, 14, 17, 18

6

*In re Scholastic, Inc.,*
    23 U.S.P.Q.2d 1774 (TTAB 1992) .......................................................14

7

8

*Simon & Schuster, Inc. v. Dove Audio, Inc.,*
    970 F.Supp. 279 (S.D.N.Y 1997).........................................................18

9

*Spin Master, Ltd. v. Zobmondo Entm't, LLC,*
    944 F.Supp.2d 830 (C.D. Cal. 2012) ....................................................13

10

11

*Twentieth Century Fox Television v. Empire Distribution Inc.,*
    875 F.3d 1192 (9th Cir. 2017) ..............................................................19

12

13

*Warner Bros. Ent. v. Asylum, Inc.,*
    2013 WL 12114836 (C.D. Cal. Jan. 29, 2013) ....................................18

14

*Wild v. HarperCollins, LLC,*
    2012 WL 12887690 (C.D. Cal. 2012)...................................................14

15

16

**Statutes**

17

15 U.S.C. § 1115(b)(4) ...............................................................................16

18

**Other Authorities**

19

Fed. R. Civ. P. 8(a) .....................................................................................11

20

Fed. R. Civ. P. 9(b) .....................................................................................17

21

Federal Rule of Evidence 201 .....................................................................11

22

Rule 12(b)(6)...........................................................................................3, 12

23

24

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS - iii

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 $$ F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

# I. <u>OVERVIEW OF OPPOSITION</u>

Plaintiff Fierce, Inc., and defendant Franklin Covey are competitors in the field of training and educational services for business management and corporate communications. Compl., ¶ 28.[1]  Franklin Covey and Fierce both built their businesses in part around a series of best-selling books—the 7 HABITS series in the case of Franklin Covey; the FIERCE series in the case of Fierce.  Compl., ¶ 29.  Fierce has a dozen registered trademarks under which it provides its competing services, most of which are incontestable as a matter of law, and all of which start with the word and mark FIERCE.  Compl., ¶¶ 7-18; Exs. A-L.  For over a decade, Fierce has been using its FIERCE family of marks in conjunction with a distinctive shade of orange (the "Fierce Orange."  Compl., ¶¶ 19-20.

Franklin Covey now argues that its recent decision to rebrand its competing services using the mark FIERCE LOYALTY, combining it with a similar hue of orange, is somehow exempt from trademark liability.  When the situation is reversed, and Franklin Covey finds even non-competitors using Franklin Covey's 7 HABITS mark, it has correctly alleged that its trademarks were infringed—and usually with a complaint much less detailed than Fierce's complaint against Franklin Covey.  *E.g.*, Dkt. No. 12, Exs. T-W.

Franklin Covey's motion to dismiss starts with a misanalysis of the protection given to book titles.  As even the cases Franklin Covey cites recognize, book titles can be "source identifiers," and Franklin Covey is seeking to use this book title (and the website and the titles of its seminars) as such source identifiers.  *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F.Supp.2d 830, 853 n.2 (C.D. Cal. 2012).  That conclusion is only confirmed by examining Franklin Covey's allegations in other litigation regarding how it uses its book titles, of which the Court can take judicial notice pursuant to FRE 201.  Dkt. No. 12, Exs. T-W.  Fierce has alleged

---

[1] Fierce's Complaint is Document No. 1, and will be referred to as "Compl." Throughout.

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    its use of Fierce's own titles are similarly source-identifying, and that Franklin Covey infringes.

2    Complaint, ¶ 29.

3                  Similarly, Franklin Covey's fair use defense is unlikely to succeed.  In the Ninth

4    Circuit, "the classic fair use defense is not available if there is a likelihood of customer confusion

5    as to the origin of the product." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir.

6    2002); *accord KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608

7    (9th Cir. 2005)(degree of confusion remains factor in deciding fair use).  Fierce's Complaint

8    pleads more than enough facts to show that there is a likelihood of consumer confusion,

9    especially given Fierce's allegation that Franklin Covey has just rebranded its previous offerings

10   under the new brand FIERCE LOYALTY.

11                 Contrary to Franklin Covey's claims, book titles do not enjoy absolute First

12   Amendment immunity, especially when a competitor is accused of trading on the goodwill built

13   up in another's book title.  "The purchaser of a book, like the purchaser of a can of peas, has a

14   right not to be misled as to the source of the product." *Rogers v. Grimaldi*, 875 F.2d 994, 997-98

15   (2d Cir. 1989).  The *Rogers* test, upon which Defendant relies to excuse its confusingly-similar

16   book title, does not stand for the proposition that the First Amendment automatically trumps

17   trademark rights.  *Gordon v. Drape Creative, Inc.*, 897 F.3d 1184, 1190 (9th Cir. 2018).  As

18   *Rogers* itself noted, its test would not limit the ability of a mark holder to prevent a competitor

19   from using a confusingly similar book title:

20         Thus, it is well-established that where the title of a movie or a book has acquired
           secondary meaning—that is, where the title is sufficiently well-known that
21         consumers associate it with a particular author's work—the holder of the rights to
           that title may prevent the use of the same or confusingly similar titles by other
22         authors.  Indeed, it would be ironic if, in the name of the First Amendment, courts
           did not recognize the rights of authors to protect titles of their creative works
23         against infringement by other authors.

24   *Rogers*, 875 F.2d at 998 (internal citations omitted).  Fierce has alleged sufficient facts to show

25   that its FIERCE book titles do function as source identifiers (much like Franklin Covey's own

26   7 HABITS titles), which is all it needs to do at the pleading stage.

PAGE - 2      PLAINTIFF'S OPPOSITION TO DEFENDANT'S
                    MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    Similarly, Franklin Covey's "auxiliary works" are neither auxiliary nor immune.

2    Rather, Franklin Covey established a separate domain name incorporating Fierce's marks, is

3    offering webinars under Fierce's marks not just to promote the book but rather to promote its

4    competing paid services, and under no reading of the law are such competitive commercial

5    activities immune from trademark infringement liability.  Finally, Fierce has alleged sufficient

6    facts about its use of the color orange with its marks to survive the pleadings stage; Franklin

7    Covey's complaints about the allegedly ambiguous nature of Fierce's use of the color orange are

8    better suited to discovery than a motion to dismiss.

9    As explained below, Fierce has pleaded these claims sufficiently; however, were

10   the Court to harbor any doubt about the sufficiency of Fierce's Complaint, the proper approach is

11   to order Fierce to amend the Complaint, not to dismiss the claims.  *Eminence Capital, LLC v.*

12   *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

13                              **II. <u>FACTS PLEADED</u>**

14   For a Rule 12(b)(6) motion, the court must accept Fierce's factual allegations as

15   true, and draw all reasonable inferences in Fierce's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94,

16   127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).  Fierce's Complaint is Document No. 1 in the docket,

17   and will be referred to as "Compl." throughout.

18   **A.    THE HISTORY OF THE FIERCE MARKS, BOOKS, AND TRADE DRESS.**

19   Fierce is a Washington corporation headquartered in Seattle, Washington.

20   Compl., ¶ 1.  Fierce is a national provider of top-tier corporate training through its various

21   programs, including FIERCE CONVERSATIONS®, FIERCE LEADERSHIP®, FIERCE

22   GENERATIONS®, FIERCE ACCOUNTABILITY®, FIERCE COACHING®, FIERCE

23   TEAM®, FIERCE CONFRONTATION®, FIERCE FEEDBACK®, FIERCE DELEGATION®,

24   and FIERCE NEGOTIATIONS®.  Compl., ¶ 6.  Fierce has been using the trademark FIERCE,

25   along with a distinctive orange color scheme (usually in conjunction with gray or white) specific

26   typefaces, in the United States in connection with its training products and services for over a

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  decade (the "FIERCE Marks").  Compl., ¶¶ 6, 19.  Between 2000 and 2015, Fierce registered the

2  following marks with the United States Patent and Trademark Office (the "USPTO") in

3  connection with "educational services, namely, conducting classes, seminars, conferences and

4  workshops in the field of business management and interpersonal communications:"

| Mark/Reg. No. | Filing Date | Registration Date | Incontestable Status? |
|---|---|---|---|
| FIERCE CONVERSATIONS 2467684 | May 15, 2000 | July 10, 2001 | YES |
| FIERCE 2804226 | July 30, 2002 | January 13, 2004 | YES |
| FIERCE CONVERSATIONS 3005908 | August 24, 2004 | October 11, 2005 | YES |
| FIERCE LEADERSHIP 3144879 | August 2, 2005 | September 19, 2006 | YES |
| FIERCE ACCOUNTABILITY 3578915 | January 24, 2008 | February 24, 2009 | YES |
| FIERCE NEGOTIATIONS 3578914 | January 24, 2008 | February 24, 2009 | YES |
| FIERCE GENERATIONS 3728157 | May 27, 2009 | December 22, 2009 | YES |
| FIERCE FEEDBACK 4775925 | October 23, 2014 | July 21, 2015 | NO |
| FIERCE COACHING 4923768 | October 28, 2014 | March 22, 2016 | NO |
| FIERCE TEAM 5007198 | November 25, 2015 | July 26, 2016 | NO |
| FIERCE CONFRONTATION | November 25, 2015 | August 2, 2016 | NO |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

| | | | |
|---|---|---|---|
| 5011973 | | | |
| FIERCE DELEGATION 5011974 | November 25, 2015 | August 2, 2016 | NO |

Compl., ¶¶ 7-18; Exs. A-L.

Since shortly after its founding, Fierce has also used the color orange, usually in conjunction with gray or white, in connection with almost everything it does, including its workbooks (Toolkits), website, marketing materials, books, white papers and other publications. Compl., ¶ 19.  Fierce's use of the color orange color schemes and designs in conjunction with its registered marks for its products and services can be seen in the examples below, showing pages from Fierce's website, https://fierceinc.com, and Fierce's workbooks:

 

 

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   Compl., ¶¶ 19-20.  Fierce has been using its website continuously since about 2003, where it

2   markets its goods and services, prominently displaying the FIERCE mark and orange color

3   scheme.  Compl., ¶ 20.

4          As explained above, through almost two decades of use and promotion, Fierce has

5   created a cognizable family of marks using FIERCE, which family is especially recognizable to

6   consumers when used in conjunction with the distinctive orange color schemes, which are seen

7   in substantially similar form to the images above for its website and workbooks.  Compl., ¶ 21.

8   Consumers, especially business organizations, now associate any use of FIERCE along with

9   another word and the distinctive orange color schemes and designs as denoting goods and

10  services originating from or associated with Fierce.  Compl., ¶ 21.  Fierce's registered marks,

11  pending applications, unregistered trade dress and other common laws rights and goodwill

12  (including its use of the color orange in conjunction with gray and/or white in designs similar to

13  those shown above) are referred to collectively as the "FIERCE Marks."

14         Through Fierce's continuous and consistent use of its FIERCE Marks, including

15  use of most of them for well over a decade, consumers, especially business organizations, have

16  come to recognize and associate the FIERCE Marks with products and services originating with

17  Fierce.  Compl., ¶ 22.  Through such use, consumers, and especially business organizations, have

18  also come to recognize and associate any use of the word "Fierce" in conjunction with a bright

19  orange color scheme (as shown in the images herein) as denoting products and services

20  originating with Fierce.  Compl., ¶ 22.

21         Fierce markets its goods and services especially to business organizations to help

22  them increase engagement and loyalty from both employees and customers, at considerable

23  expense.  Compl., ¶¶ 23-24.  Fierce expends considerable time to market its corporate training

24  products and services under the FIERCE Marks through social media, television, broadcast

25  radio, print publications, and web streaming services, in the United States and elsewhere.

26

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    Compl., ¶ 24.  Through over a decade of such use and promotion, the FIERCE Marks have

2    become well-known and recognized, especially by business organizations.  Compl., ¶ 24.

3            As a result of Fierce's expenditure of considerable time and expense in

4    continuously and aggressively marketing its corporate training products and services in

5    connection with its distinctive FIERCE Marks, the consuming public has come to recognize

6    services and goods sold under FIERCE Marks and/or trade dress as originating from, approved

7    or sponsored by, or otherwise associated with Fierce.  Compl., ¶ 25.  Through its marketing,

8    diligence, and commitment to excellence, Fierce has established a celebrated and highly-

9    distinguished brand.  Compl., ¶ 26.

10           In addition, Plaintiff Fierce's Founder and CEO, Susan Scott, has authored two

11    best-selling books that have further built the goodwill of the FIERCE brand:  *Fierce*

12    *Conversations:  Achieving Success at Work & in Life, One Conversation at a Time* (3d ed. 2017);

13    and *Fierce Leadership:  a Bold Alternative to the Worst "Best" Practices of Business Today*

14    (2009) (together, the "Fierce Books").  The front covers of the books are as shown below:

15

16

17

18

19

20

21

22

23    Compl., ¶ 27.

24

25

26

PAGE - 7    PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS    **MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

## B. DEFENDANT FRANKLIN COVEY'S DECISION TO START A NEW BRAND CONFUSINGLY SIMILAR TO THAT OF FIERCE.

Franklin Covey advertises itself as a "world leader in helping organizations achieve results that require lasting changes in human behavior."  Compl., ¶ 28.  Like Fierce, Franklin Covey targets its efforts at business organizations that want to improve their performance.  Compl., ¶ 28.  Like Fierce, Franklin Covey regularly provides its products and services to consumers in Washington State.  Compl., ¶ 28.  Like Fierce, Franklin Covey's books are on sale in various bookstores throughout Washington, including at SeaTac airport.  Compl., ¶ 28.  Franklin Covey appears to have or has had retail offices or outlets in Washington State, including a store in Southcenter Mall in Tukwila, Washington.  Compl., ¶ 28.  Franklin Covey is currently advertising in Washington State to fill positions as "Sales Executive" to be based in Seattle, Washington, in order to target many of the same Washington customers as Fierce.  Compl., ¶ 28.

Like Fierce, Franklin Covey is well-known for its 7 HABITS series of books, starting with the book "The 7 Habits of Highly Effective People," by its founder, Steven R. Covey.  Compl., ¶ 29.  Just as consumers who see FIERCE plus another word in a book title, training materials and training or consulting services (especially when combined with the Fierce Orange) will associate those goods or services with Fierce, consumers, especially business organizations, have over the years come to associate books, training materials and training or consulting services whose title includes the term "7 Habits" as originating with or associated with Franklin Covey.  Compl., ¶ 29.  Those same consumers have come to associate books, training materials and training or consulting services whose title includes the FIERCE Mark (when combined with the orange color schemes and designs discussed above) as originating or associated with Fierce.  Compl., ¶ 29.

Fierce very recently became aware that Defendant (through publisher HarperCollins) will be releasing a book authored by several employees of FranklinCovey, which

PAGE - 8     PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    is entitled *Fierce Loyalty* (the "Defendant's Book"), that uses a nearly-identical typeface to that

2    used on the Fierce Books, and a similar orange color scheme and design to those described

3    above.  Compl., ¶ 30.  Defendant is also now promoting, marketing and selling webinars and

4    other training services, again entitled *Fierce Loyalty*, in conjunction with an orange color scheme

5    similar to the orange color used by Fierce.  Compl., ¶ 30.  Franklin Covey appears to already be

6    taking orders (including, on information and belief, from Washington customers) for

7    Defendant's Book and associated webinars, videos, podcasts and training services.  Compl., ¶ 31.

8              In part, Franklin Covey is undertaking those efforts through a separate website it

9    established at https://fierceloyalty.com, where it offers the book for sale along with a seven-week

10   webcast series.  Compl., ¶ 32.  Defendant's website prominently features similar look and feel to

11   Fierce's website and Fierce brand, including a similar orange color and aesthetic design, as is

12   used in connection with the FIERCE Marks, further creating the impression that its books,

13   trainings, and programs are somehow associated with or authorized by plaintiff Fierce.  Compl.,

14   ¶ 32.

15             In addition, the cover and/or packaging of Defendant's Book uses a very similar

16   trade dress to that of the Fierce Books, including a typeface and contrasting colors (including

17   prominently the color orange in conjunction with black and white) in a manner meant to be

18   confusingly-similar to the Fierce Books and FIERCE Marks.  Compl., ¶ 33.  On information and

19   belief, Defendant's Book will be released sometime in November 2018 with the following cover

20   (set in comparison to the covers of the Fierce Books):

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121




Compl., ¶ 33.  Defendant's Book already appears on Amazon.com, and is described there as teaching principles similar to those contained in plaintiff Fierce's trainings, books, and programs, including making authentic connections, asking the right questions, listening to learn, discovering the real job to be done and strengthening relationships.  Compl., ¶ 34.

The book's authors (Sandy Rogers, Leena Rinne, and Shawn Moon) are all employees of Franklin Covey.  Compl., ¶ 35.  The book's authors are advertising Defendants' Book and Franklin Covey's other services via several other outlets, including their LinkedIn pages, which pages also feature the color orange splashed across the top, further creating the impression that the books, trainings, and programs are somehow associated with or authorized by Fierce.  Compl., ¶ 35.

Fierce has priority in its FIERCE Marks by virtue of its long-standing use of the marks and the filing dates of its federal trademark applications, which predate (by nearly two decades in some instances) Franklin Covey's first use of FIERCE or the trade dress that includes the orange color schemes, typefaces, and designs discussed above, in commerce or any other date upon which Defendant can rely for priority purposes.  Compl., ¶ 36.  In fact, Franklin Covey

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    appears to have only begun promoting its competing *Fierce Loyalty* books, seminars and training

2    this year.  Compl., ¶ 36.

3            Defendant's use of those marks, especially its use of FIERCE with the color

4    orange, appears deliberately designed to trade off Fierce's goodwill and reputation.  Compl.,

5    ¶ 37.  Furthermore, Defendant's use of the FIERCE Marks is therefore likely to cause confusion

6    among consumers.  Compl., ¶ 37.  Such confusion is likely already occurring, as Franklin Covey

7    is already sending out advanced copies of their book and marketing the book and associated

8    seminars and services.  Compl., ¶ 38.  Indeed, Fierce only discovered Franklin Covey's

9    confusingly similar use recently as a result of a customer who contacted Fierce regarding the

10   advance copy the customer received, and then inquired about the relationship between Defendant

11   and Fierce.  Compl., ¶ 38.

12           Such confusion irreparably harms Fierce and Fierce's business reputation,

13   particularly where, as here, Fierce is in direct competition with Franklin Covey.  As a result,

14   Fierce filed its Complaint in this action to protect its intellectual property rights and commercial

15   interests.

16                              **III. <u>ARGUMENT</u>**

17   **A.    LEGAL STANDARD ON MOTION TO DISMISS.**

18           Fierce only needs to provide "a short plain statement of the claim showing that the

19   pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  On a motion to dismiss, a Court determines

20   only whether the complaint "contains 'sufficient factual matter, accepted as true, to state a claim

21   of relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937

22   (2009).  The court is necessarily limited to consideration of the facts on the face of the complaint

23   and any materials attached thereto or incorporate thereby.  *Friedman v. AARP, Inc.*, 855 F.3d

24   1047, 1051 (9th Cir. 2017).

25           The role of the court on a motion to dismiss is not to determine whether a plaintiff

26   will prevail, but rather whether the plaintiff is entitled to offer evidence to support its claims.

PAGE - 11        PLAINTIFF'S OPPOSITION TO DEFENDANT'S                **MILLER NASH GRAHAM & DUNN LLP**
                 MOTION TO DISMISS                                         ATTORNEYS AT LAW
                                                                    T: 206.624.8300 | F: 206.340.9599
                                                                              PIER 70
                                                                    2801 ALASKAN WAY, SUITE 300
                                                                    SEATTLE, WASHINGTON  98121

1   *Gilligan v. Jamco Development Co.*, 108 F.3d 246, 249 (9th Cir. 1997).  The court may find a

2   plausible claim even where a plaintiff only provides facts sufficient for a reasonable inference of

3   misconduct.  *Iqbal*, 556 U.S. at 678.  The burden on the movant is high, the allegations of the

4   complaint are entitled to a presumption of truth, and so long as the allegations "give fair notice

5   and [] enable the opposing party to defend itself effectively," the complaint should not be

6   dismissed.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Dismissal with prejudice and

7   without leave to amend is not appropriate unless it is clear" that "the complaint could not be

8   saved by amendment."  *Eminence Capital*, 316 F.3d at 1052.

9   **B.     THE COURT SHOULD STRIKE EXHIBITS 1-9 FROM FRANKLIN COVEY'S**
        **MOTION BECAUSE THEY ARE IMPROPER ON A MOTION TO DISMISS.**
10

11          As a general rule, a court may not consider material beyond the complaint in ruling on a

12  motion to dismiss.  *See* Fed. R. Civ. P. 12(b)(6); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.

13  1994), *overruled on other grounds* by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir.

14  2002).  Under Federal Rule of Evidence 201, a court may only take judicial notice of facts that

15  are (1) not subject to reasonable dispute, (2) generally known within the court's jurisdiction, and

16  (3) can be accurately and readily determined from reliable sources.  *See Harris v. Orange Cnty.*,

17  682 F.3d 1126, 1131-32 (9th Cir. 2012).  A court may not take judicial notice of extra-pleading

18  materials on a motion to dismiss, including records from the United States Patent and Trademark

19  Office, where they are cherry-picked by a defendant, were not referenced or incorporated into the

20  plaintiff's pleadings, and are not central to the plaintiff's complaint.  *See Navajo Nation v. Urban

21  Outfitters, Inc.*, 935 F.Supp.2d 1147, 1157 (D. N.M. 2013); *Facebook, Inc. v. Teachbook.com

22  LLC*, 819 F.Supp.2d 764, 771-73 (N.D. Ill. 2011).

23          On its motion to dismiss, Defendant improperly submitted various records that were not

24  referenced or incorporated in Fierce's complaint nor are they in any way relevant to it.  These

25  documents, namely Exhibits 1-9 to the Declaration of Erin C. Kolter, consist of trademark

26  registrations for entities unrelated to this action, and they serve no valid purpose on the motion to

PAGE - 12     PLAINTIFF'S OPPOSITION TO DEFENDANT'S
                         MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    dismiss.  Any arguments that Defendant believes it has related to the alleged "overcrowding" in

2    the educational services marketplace are not appropriate for a motion to dismiss, and the Court at

3    this stage needs to take Fierce's allegation that its marks are strong at face value.  The only

4    question before the Court is whether Fierce has pleaded sufficient facts in its complaint, all of

5    which must be taken as true, to allege its claims; the existence of other marks in the market place

6    that Defendant has tried to put in the record has no bearing on that question.  Because the

7    materials submitted are improper, this Court should not consider them at this stage and should

8    strike them from Defendant's motion.

9    **C.    FIERCE HAS STATED SUFFICIENT FACTS TO ALLEGE CLAIMS OF
TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION IN
10    CONNECTION WITH DEFENDANT'S GOODS AND SERVICES.**

11          The Court should deny Defendant's motion to dismiss.  Franklin Covey itself has

12    pleaded in other litigation that its own book titles are because it ignores the relevant case law

13    related to the use of trademarks within book titles, it would be inappropriate to determine

14    questions of fair use on a motion to dismiss, and its book title and marketing materials are not

15    shielded from trademark infringement claims based on the First Amendment.  For all the reasons

16    below, Fierce has pleaded sufficient facts to allege claims for trademark infringement and unfair

17    competition in connection with Defendant's Book and its related promotional activities.

18          1.    <u>FIERCE operates as a source identifier in connection with Fierce's series of books
and in connection with its competing services, and Franklin Covey itself is trying
19    to create such goodwill in its new FIERCE LOYALTY brand.</u>

20          Much of Franklin Covey's motion to dismiss is based on the misleading argument

21    that the title of a single book can never be a source identifier.  Defendant relies on several cases

22    in which courts and the United States Patent and Trademark Office ("USPTO") have stated that a

23    single book title alone generally cannot act as a source identifier for the publisher or author of

24    that book.  *See Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F.Supp.2d 830, 853 (C.D. Cal.

25    2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162-63 (Fed. Cir. 2002); *In re*

26

PAGE - 13    PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  *Cooper*, 254 F.2d 611, 614-15, 45 C.C.P.A. 923 (C.C.P.A. 1958).  However, Defendant's cases,

2  its actions and its arguments actually reinforce the bases for Fierce's claims.

3          Defendant ignores that the case law it cites also holds that even single book titles

4  may be registrable upon a showing of secondary meaning.  *E.g.*, *Herbko Int'l*, 308 F.3d at 1162

5  n.2 ("While a titles of single works are not registerable, they may be protected under

6  section 43(a) of the Lanham Act upon a showing of secondary meaning."); *see also Rogers*,

7  875 F.2d at 998 (". . . the holder of rights to [a single] title may prevent the use of the same or

8  confusingly similar titles by other authors."); *EMI Catalogue Partnership v. Hill, Holliday,*

9  *Connors, Cosmopulos Inc.*, 228 F.3d 56, 63 (2d Cir. 2000) ("Titles of works of artistic

10  expression, including films, plays, books, and songs, that have acquired secondary meaning are

11  protected from unfair competition under §43(a)."); *Dr. Seuss Enterprises, L.P. v. ComicMix*

12  *LLC*, 300 F.Supp.3d 1073, 1084 (S.D. Cal. 2017) ("The USPTO will not register the title of a

13  single creative work, such as a book, move or play, unless it has acquired distinctiveness.").

14  More importantly, the titles of books in a series are protectable and registrable, without any

15  showing of secondary meaning, because they act as a source identifier.  *See Spin Master*,

16  944 F.Supp.2d at 853 ("The name of a book series, however, may sever a trademark function, 'at

17  least while [the series] is still being published,' because the name 'indicat[es] that each book of

18  the series comes from the same source as the others.'") (quoting *In re Cooper*, 254 F.2d at 615);

19  *Wild v. HarperCollins, LLC*, 2012 WL 12887690, *3-4 (C.D. Cal. 2012); *In re Scholastic, Inc.*,

20  23 U.S.P.Q.2d 1774 (TTAB 1992).

21          Defendant also ignores its own allegations in other litigation in which it has taken

22  the exact opposite position and argued that its own book titles constituted protectable

23  trademarks:

24          Franklin Covey is the owner of numerous trademarks that have been used to
           protect, signify, and distinguish its book, THE 7 HABITS OF HIGHLY
25          EFFECTIVE PEOPLE, and many other books, products, and services that carry
           the term "7 Habits" or terms similar to it, in their titles, such as THE 7 HABITS
26          OF HIGHLY EFFECTIVE TEENS, THE 7 HABITS OF HIGHLY EFFECTIVE

PAGE - 14   PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  FAMILIES, and THE 8TH HABIT.  Collectively, these products and services

2  make up Franklin Covey's 7 HABITS brand.  Franklin Covey has invested
   immense resources in creating, adapting, and promoting the 7 HABITS brand,
   which has become one of its core product lines.

3

4  Summers Decl., Exs. T, V (Dkt. No. 12).[2]  Franklin Covey went on to get injunctions based on

5  the "source identifying" function of its own titles.  Summers Decl., Exs. U, W (Dkt. No. 12).

6  Fierce's complaint alleges that Fierce's titles function in exactly the same manner as Franklin

7  Covey's titles.  Compl., ¶ 29.

8       Fierce has already alleged a series of book titles (i.e., *Fierce Conversations* and

9  *Fierce Leadership*) and alleged that Fierce's continuous and consistent use of those book titles

10 for many years has created a "celebrated and highly distinguished brand" that is recognized by

11 the consuming public as associated with and originating from Fierce.  *See* Compl., ¶¶ 20-27.

12 Fierce has alleged sufficient facts to show its ownership of its marks, including in respect to its

13 book titles.  Defendant's title, *Fierce Loyalty*, may not yet be as strong a source identifier for

14 Franklin Covey (especially because the book has not yet been published), but this is exactly why

15 Fierce brought this lawsuit—as consumer confusion will only grow as Franklin Covey tries to

16 promote its competing FIERCE LOYALTY brand, which will appear to consumers to be a

17 continuation of Fierce's book series.

18       Moreover, Franklin Covey does not just have a book titled *Fierce Loyalty*, it also

19 has a website <fierceloyalty.com> and is offering competing webinars, keynote addresses and

20 training services under its new FIERCE LOYALTY brand.  Because Fierce has alleged sufficient

21 facts to establish its trademark rights and Defendant's infringement of them, Defendant's motion

22 to dismiss should be denied.

23

24

25 _____

26 [2] To the extent necessary, Fierce requests that the Court take judicial notice of such litigation pursuant to FRE 201.
   However, in this instance, these complaints and the injunctions that Franklin Covey obtained based on these
   allegations are also just additional legal authority, the same as any other case citation.

PAGE - 15     PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

2.     Defendant's use of FIERCE LOYALTY is not a fair use and determination on the merits of this defense is inappropriate on a motion to dismiss.

The classic fair use defense allows a junior user to use a descriptive term in "good faith in its primary, descriptive sense other than as a trademark," if a defendant can prove that the use is: (1) not as a trademark or a service mark, (2) fair and in good faith, and (3) only to describe defendant's goods and services. *Cairns*, 292 F.3d at 1150-51; *see also* 15 U.S.C. § 1115(b)(4) (a fair use must be a use other than as a trademark).  To determine whether a term is being used as a mark, the Court needs to undertake a fact-based inquiry as to whether, among other things, "the term is being used to associate it with" Franklin Covey, and "whether the term is used as a symbol to attract public attention." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management*, 618 F.3d 1025, 1040 (9th Cir. 2010).  Here, Fierce's own registrations for its competing services are evidence themselves that FIERCE LOYALTY can function as a mark in this field, and Fierce has alleged that Franklin Covey is using FIERCE LOYALTY as just such a competing and confusingly-similar mark.  Complaint, ¶¶ 30-38.

In the Ninth Circuit, "degree of customer confusion remains a factor in evaluating fair use." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005) (finding that likelihood of confusion was such a fact-based issue that its resolution was disfavored even at the summary judgment stage).  Fierce has already pleaded that customers are confused, and are likely to be confused, which is enough at the pleading stage to overcome any fair use defense.  Complaint, ¶¶ 37-39.  In deciding whether a use is "fair," the Court will also have to consider other factors, such as the strength of the FIERCE family of marks, the descriptiveness of the word "fierce" for the products and services being offered by Franklin Covey, the availability of alternate terms Franklin Covey could have used, and the extent (if any) of Franklin Covey's use of the term "fierce" at prior times. *KP Permanent Make-Up*, 408 F.3d at 609.  Even where a defendant uses a mark in a descriptive sense, however, the "fair use" issue usually goes to the jury, as a defendant must do more than just show use of a mark in a

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    descriptive sense—it must also show that its use is "purely descriptive" for the goods or services

2    at issue (which conclusion here is negated and offset by Fierce's incontestable registrations), it

3    must show it took "precautionary measures" to avoid confusion, and it must show that there are a

4    lack of alternatives to the mark at issue for the descriptive use. *Fortune Dynamic*, 618 F.3d

5    at 1041-42; *accord*, *McAllister Olivarius v. Mermel*, 298 F.Supp.3d 661, 670 (S.D.N.Y. 2018)

6    (recognizing fact-intensive nature of fair use inquiry).

7            To succeed on a fair use defense, Franklin Covey would also have to show that it

8    chose FIERCE LOYALTY (as a book title, as a domain name and for its rebranded competing

9    services) in "good faith"—which inquiry will look at whether Franklin Covey did any

10   investigation before choosing this new mark, and whether it intended to capitalize on Fierce's

11   goodwill. *Fortune Dynamic*, 618 F.3d at 1043.  "Malice, intent, knowledge, and other conditions

12   of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  At this stage, it is enough

13   that Fierce has alleged that Franklin Covey's "use of those marks, especially its use of FIERCE

14   with the color orange, appears deliberately designed to trade off Plaintiff's goodwill and

15   reputation."  Compl., ¶ 37.  In short, Fierce has alleged enough facts regarding why Franklin

16   Covey's use is not fair, which is all that needs to be done right now.

17        3.    <u>Defendant cannot show that its use of FIERCE LOYALTY is protected by the
             First Amendment</u>.
18
             "The purchaser of a book, like the purchaser of a can of peas, has a right not to be
19
     misled as to the source of the product."  *Rogers*, 875 F.2d at 997-98.  The *Rogers* test, upon
20
     which all Defendant's cases rely, does not stand for the proposition that the First Amendment
21
     automatically trumps trademark rights; rather it is meant to embody a balancing act between the
22
     public interest in artistic work and the public interest in avoiding consumer confusion. *Gordon*,
23
     897 F.3d at 1190.  As *Rogers* itself noted, its test would not limit the ability of a mark holder to
24
     prevent a competitor from using a confusingly similar book title:
25
             Thus, it is well-established that where the title of a movie or a book has acquired
26           secondary meaning—that is, where the title is sufficiently well-known that

PAGE - 17    PLAINTIFF'S OPPOSITION TO DEFENDANT'S
             MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    consumers associate it with a particular author's work—the holder of the rights to
     that title may prevent the use of the same or confusingly similar titles by other
2    authors.  Indeed, it would be ironic if, in the name of the First Amendment, courts
     did not recognize the rights of authors to protect titles of their creative works
3    against infringement by other authors.

4    *Rogers*, 875 F.2d at 998 (internal citations omitted); *accord Simon & Schuster, Inc. v. Dove*

5    *Audio, Inc.*, 970 F.Supp. 279, 296 (S.D.N.Y 1997) (enjoining defendant's book when the book

6    title was confusingly similar to plaintiff's series of books); *see also Warner Bros. Ent. v. Asylum,*

7    *Inc.*, 2013 WL 12114836, *12-13 (C.D. Cal. Jan. 29, 2013) (enjoining defendant from releasing

8    movie with title confusingly similar to title of plaintiff's movie).

9                 First, as Franklin Covey's proposed book has not yet even been published (and

10   neither Fierce nor the Court has yet seen its full contents), it may be premature even to consider

11   this defense, as Franklin Covey has not yet made any showing that its book is actually a

12   protected, expressive work.[3]  Commercial speech is subject to less constitutional protection than

13   purely artistic speech.  *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,

14   447 U.S. 557, 562-63, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (noting that "there can be no

15   constitutional objection to the suppression of commercial messages that do not accurately inform

16   the public" as the government "may ban forms of communication more likely to deceive the

17   public than inform it.").  Here, it is alleged that both companies use books to promote their other

18   commercial services.  Compl., ¶¶ 28, 29.  The *Rogers* test is usually applied when a trademark

19   holder objects to a non-competitor's use of the trademark holder's marks in an expressive way

20   (such as parody or satire);[4] it is ill-suited (perhaps even inapplicable) to a competitor's use of a

21   confusingly similar mark for a competitive purpose, even if that mark is used as a book title.

22

23

---

24   [3] This issue is not "undisputed," as claimed by Franklin Covey.  Motion, at 13.

25   [4] *E.g., Cliff Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc.*, 886 F.2d 490, 495 (2nd Cir. 1989) (applying *Rogers* test to parodies of plaintiff's title); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 901 (9th Cir. 2002)

26   (applying *Rogers* test to non-competitor's song title that referenced plaintiff's mark because the "artistic work targets the original and does not merely borrow another's property to get attention").

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1        But assuming the *Rogers* test even applies here, Defendant has not shown it has

2  immunity.  Under the *Rogers* test, Fierce can prevail by showing either (1) that the mark is not

3  artistically relevant to the underlying work, or (2) that the mark explicitly misleads consumers as

4  to the source or content of the work.  The first prong—artistic relevance—requires an evaluation

5  of two separate questions:  (1) "whether a mark is relevant to the rest of the work;" and

6  (2) "whether the mark is relevant to the defendant's own *artistry*."  *Gordon*, 897 F.3d at 1194.

7  Although the bar is typically low as to the first element of the artistic relevance prong, if the

8  facts, as construed in the light most to Fierce, show that defendant "may have merely

9  appropriated the goodwill inhering in" Fierce's mark, the First Amendment cannot protect the

10  infringement.  *Gordon*, 897 F.3d at 1195; *see also Parks v. LaFace Records*, 329 F.3d 437, 453-

11  54 (6th Cir. 2003) (holding that where there was a question of fact as to whether the use of Rosa

12  Parks' name was artistically relevant as a song title or a ploy to increase marketing power

13  precluded summary judgment).  To allow otherwise "would turn trademark law on its head."

14  *Gordon*, 897 F.3d at 1195.

15        Under the second prong, a plaintiff only needs to plead sufficient facts to allege a

16  claim that the use of the title, in the context in which it is used, explicitly misleads customers as

17  to the source or content of the work.  *Twentieth Century Fox Television v. Empire Distribution

18  Inc.*, 875 F.3d 1192, 1199 (9th Cir. 2017).  The Court must ask whether the title of Defendant's

19  Book, as used, is likely to confuse consumers and whether there is any indication in the product

20  and the manner in which it is advertised and sold to cause such confusion.  *Brown v. Electronic

21  Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013).  In other words, if there is more than just the title

22  that may mislead consumers into believing that Fierce may have sponsored or may be associated

23  with it, then dismissal is also improper.  *Gordon*, 897 F.3d at 1196.

24        Here, Fierce has alleged sufficient facts to overcome Defendant's motion to

25  dismiss.  Fierce has alleged sufficient facts that a court could find Defendant's Book title has no

26  artistic relevance because it was adopted as a means to trade on Fierce's valuable trademarks and

PAGE - 19     PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   trade dress.  Fierce has alleged registration and use of the Fierce Marks dating back nearly two

2   decades in the corporate training industry.  Compl., ¶¶ 6-18.  Fierce has also alleged use of its

3   trade dress, including specific examples of the color (orange), font, and designs that constitute

4   that trade dress, for over a decade.  Compl., ¶¶ 19-20.  Fierce has further described its extensive

5   efforts to build its brand, the specific nature of its consumer base and marketing channels, the

6   recognition it has received, and the Fierce Books, a series that carries the brand in the titles and is

7   definitively associated with Fierce.  Compl., ¶¶ 20-27.  Fierce has also alleged the relevant facts

8   related to Defendant.  Fierce has identified Defendant's nearly identical goods and services and

9   customer base.  Compl., ¶ 28.  Fierce has further alleged Defendant's intentional use of the

10   infringing title and trade dress in connection with Defendant's Book, as well as the fact that

11   Defendant has taken the unusual step of creating a separate website for Defendant's Book,

12   https://fierceloyalty.com,[5] thus furthering potential confusion.  Compl., ¶¶ 30-35.  Finally, Fierce

13   specifically alleged not only the likelihood that Defendant's choices would explicitly mislead

14   consumers, but that they already had.  Compl., ¶¶ 37-38.

15         All these facts, taken in the light most favorable to Fierce, could allow a

16   reasonable fact-finder to determine that Defendant adopted the title, trade dress and website and

17   rebranded its competing services not because the term "Fierce" had an artistic relevance to

18   Defendant, whose books have previously been defined by a very different style, so much as

19   because Defendant wanted to trade off the good will of Fierce's successful brand.  For similar

20   reasons, a court could reasonably find that Defendant's intentional use not only of Fierce's

21   Marks, but of its trade dress (including color, typeface and design) and of a separate website

22   URL that contains the Fierce Mark, along with the rebranding of its other services to include the

23   word "fierce" in their title, constitutes an explicit indication of affiliation or sponsorship that is

24   misleading to consumers.

25

26   [5] It should be noted that Defendant's webpage and domain name also infringe on the Fierce Marks, an affirmative
    step that further indicates that Fierce is somehow associated with Defendant's Book.

PAGE - 20   PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    At the very least, Fierce has established sufficient factual allegations for its claims

2  to survive the very low burden placed upon it at the motion to dismiss stage.  For all these

3  reasons, the Court should deny Defendant's motion to dismiss.

4  **D.     FIERCE HAS STATED SUFFICIENT FACTS TO ALLEGE CLAIMS RELATED
          TO THE USE THE COLOR ORANGE AS AN ELEMENT OF FIERCE'S**

5  **DISTINCTIVE TRADE DRESS.**

6    Unlike a trademark, trade dress "refers to the 'total image of a product' and may

7  include features such as size, shape, color, color combinations, texture or graphics."

8  *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F.Supp.3d 1161, 1171 (C.D. Cal. 2017), *quoting Int'l*

9  *Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993).  To state a valid claim

10  for trade dress infringement, the plaintiff must show the "alleged trade dress is (1) nonfunctional,

11  (2) distinctive, and (3) creates a likelihood of consumer confusion."  *Moroccanoil, Inc.*,

12  230 F.Supp.3d at 1171.  A product feature is only considered functional if it is necessary to the

13  product or affects the cost and/or quality of the product such that it would put competitors at a

14  non-brand-related disadvantage not to use it.  *Id.*; *see also Disc Golf Ass'n, Inc. v. Champion*

15  *Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998).  Individual elements that are functional

16  separately can still be protected together as part of a whole, as the focus of a trade dress claim is

17  on the "overall visual impression that the combination and arrangement of those elements

18  create."  *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001).  Where

19  the individual elements of trade dress appear to serve a "purely aesthetic purpose comprised of

20  specific colors, fonts and styles," the trade dress as a whole will be considered non-functional.

21  *Moroccanoil, Inc.*, 230 F.Supp.3d at 1171.[6]  Similarly, where trade dress "is based on packaging

22  which does not appear to have any inherent meaning and does not describe the product," such

23  that its primary purpose is identification, the trade dress is considered distinctive and does not

24

---

25  [6] Even the cases cited by Defendant support the sufficiency of Fierce's Complaint.  *See Lepton Labs, LLC v. Walker*,
    55 F.Supp.3d 1230, 1240 (C.D. Cal. 2014)(general description of trade dress is sufficient at pleading stage as

26  existence of actual trade dress is better tested by evidence presented at summary judgment or trial).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   require a showing of secondary meaning.  *Id.* at 1172.  Finally, the issue of whether a mark or

2   trade dress has acquired secondary meaning is inappropriate for resolution on a motion to

3   dismiss.  *McAllister Olivarius*, 298 F.Supp.3d at 670.

4          Here, contrary to Defendant's assertions, Fierce has more than met the minimal

5   pleading standards to survive a motion to dismiss.  First, Fierce has provided Defendant with

6   sufficient notice of its trade dress claims.  As is clear from the Complaint, Fierce alleges, as an

7   element of its trade dress, its extensive and coordinated use of the color orange in connection

8   with the Fierce Marks, and in particular in connection with the Fierce Books, training materials,

9   and website, as shown in more detail in the Complaint.  Compl., ¶¶ 19-27; 30-35.  Fierce has not

10  only identified elements of its book covers, workbook covers, and website that help create the

11  look and feel of the Fierce brand, including use of the color orange (particularly in conjunction

12  with gray and white, as shown in Fierce's Complaint), a specific typeface on its book covers, and

13  general design, it has even provided color photos in its Complaint, including direct comparisons

14  with Defendant's Book, to further provide Defendant with notice of the trade dress it is asserting.

15  Compl., ¶¶ 19-27; 32-35.

16         Defendant's attempt to muddy the waters by arguing that it cannot figure out what

17  trade dress is at issue is unpersuasive given the amount of information provided; regardless,

18  Defendant's concerns are better suited for discovery than a motion to dismiss.  *Lepton Labs*, 55

19  F.Supp.3d at 1240.  For instance, Defendant suggests it cannot figure out the origin for several of

20  the images in Fierce's Complaint; this appears disingenuous when on the very next page on its

21  motion, Defendant includes additional images from the Fierce's website, which features the very

22  images Defendant claims it cannot find.  Similarly, Defendant tries to convince the Court that

23  Fierce "hopscotches" all over the place on its trade dress claims by digging back and finding

24  images of earlier versions of the book from over a decade ago.  Fierce's Complaint does not

25  allege that Defendant's Book infringes on the trade dress certain earlier versions, nor does it need

26  to; Fierce includes specific images of the Fierce Books, providing a side-by-side comparison to

PAGE - 22        PLAINTIFF'S OPPOSITION TO DEFENDANT'S
                 MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    show the alleged infringement.  Defendant should not be allowed to itself "muddy the waters" by

2    relying on images that Fierce has not included in its Complaint and then claim based on its own

3    unwarranted searching that it is confused as to what Fierce's claims are.  Fierce's claims are laid

4    out in the Complaint and are sufficient to put Defendant on notice.

5         Furthermore, contrary to Defendant's claims on its motion to dismiss, Fierce's

6    Complaint includes facts that support the argument that Fierce's trade dress is non-functional and

7    distinctive.  Fierce specifically alleges that its trade dress, including the prominent use of the

8    color orange in the manner shown in the Complaint, used in conjunction with FIERCE along

9    with another word, has become a source indicator of Fierce's goods and services.  Compl., ¶¶ 19-

10   22; 27; 30-35.  Fierce has, as discussed above, also provided images to show the fonts, color

11   scheme (including orange, particularly in conjunction with gray and/or white), and designs are

12   non-function and distinctive, such that they have become source indicators of Fierce.  As a result,

13   Fierce has met the liberal pleading standard to allege trade dress infringement, and Defendant's

14   motion should be denied.  If the Court for any reason believes the pleadings are insufficient,

15   Fierce must be provided the opportunity to cure the deficiency by amending its pleading.

16                    **IV. <u>CONCLUSION</u>**

17        For all the foregoing reasons, this Court must deny Defendant's motion to

18   dismiss.  Fierce has pleaded sufficient facts to state its claims in connection with trademark

19   infringement, trade dress infringement and unfair competition under the liberal notice pleading

20   standard.  Furthermore, should this Court determine that any element of Fierce's Complaint is

21   insufficient, it should give Fierce the opportunity to amend its Complaint.

22

23

24

25

26

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1
2

DATED this 13th day of November, 2018.

MILLER NASH GRAHAM & DUNN LLP

3
4
5
6
7
8
9

_s/ Brian W. Esler_
Brian W. Esler, WSB No. 22168
brian.esler@millernash.com
_s/ Vanessa L. Wheeler_
Vanessa L. Wheeler, WSB No. 48205
vanessa.wheeler@millernash.com
Pier 70 ~ 2801 Alaskan Way, Suite 300
Seattle, Washington  98121
Tel: 206-624-8300 / Fax: 206-340-9599

Attorneys for Plaintiff

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1                                   <u>CERTIFICATE OF SERVICE</u>

2            I hereby certify that on November 13th, 2018, I electronically filed the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4  to the following:

5            J. Michael  Keyes - keyes.mike@dorsey.com

6            Erin C. Kolter - kolter.erin@dorsey.com

7

8            DATED this 13th day of November, 2018.

9

10                                                <u>*s/ Gillian Fadaie*</u>
                                            Gillian Fadaie, Legal Assistant

11  4822-2412-4026.4

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS          **MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121