HONORABLE MARSHA J. PECHMAN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FIERCE, INC., a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FRANKLIN COVEY CO., a Utah corporation,<br><br>Defendant. | CIVIL ACTION NO. 2:18-CV-01449-MJP<br><br>**DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>**NOTE ON MOTION CALENDAR: NOVEMBER 30, 2018** |

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................1

II. LAW AND ARGUMENT .................................................................................4

    A.  LEGAL STANDARD FOR PRELIMINARY INJUNCTIONS IN TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CASES. .................................................................................4

    B.  PLAINTIFF'S COMPLAINT AND PRELIMINARY INJUNCTION MOTION FAILED TO ESTABLISH VALIDTY OF ITS PURPORTED (1) "FIERCE BOOK SERIES" TRADEMARK, (2) "FIERCE FAMILY" TRADEMARK, AND (3) "FIERCE ORANGE" TRADE DRESS. .......................5

        1.  The "Fierce Book Series" is Invalid and Unenforceable. ...........................5

        2.  Plaintiff's "Family" of Fierce Marks is Invalid and Unenforceable. ...........6

        3.  Plaintiff's "Fierce Orange" Trade Dress is Invalid and Unenforceable. .....................................................................7

    C.  PLAINTIFF'S MOTION RELIES ON THE WRONG LEGAL STANDARD FOR ASSESSING LIKELIHOOD OF CONFUSION UNDER THE LANHAM ACT. ........................................................8

        1.  The Fierce Book Series, the "Family" of Fierce Marks for Training Seminars, and the Orange Trade Dress are Conceptually and Commercially Weak. .....................................................9

            a.  Plaintiff's Word Marks and "Fierce Orange" Trade Dress are Conceptually Weak. .........................................9

            b.  Plaintiff's Word Marks and "Fierce Orange" Trade Dress are Also Commercially Weak. ......................................12

        2.  Plaintiff's Purported Marks and Dress are Dissimilar in Sight, Sound, and Meaning to Franklin Covey's Book and Training Services. ......................................................14

            a.  Sight ...........................................................15

            b.  Sound .........................................................15

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

c. Meaning ...................................................................16

3. Plaintiff Failed to Present Competent Evidence That the Parties' Goods and Services are Related.............................................16

4. There is Insufficient Evidence to Show That the Parties' Marketing Channels Substantially Overlap.................................................17

5. Plaintiff Failed to Present Any Admissible Evidence of Actual Confusion. .................................................................................19

6. Franklin Covey Had Zero Intent to "Copy" Plaintiff or Any of the Numerous Other Companies That Use the Adjective "Fierce" in Their Respective Book Titles........................................................20

7. Customers That Purchase Corporate Trainings are Presumed to Exercise a High Degree of Care.................................................21

8. Plaintiff Offers Only Vague Evidence of Product Expansion. ..................21

D. FIERCE DOES NOT POINT TO ANY EVIDENCE TO ESTABLISH THAT IRREPARABLE HARM IS LIKELY.............................................22

E. ON BALANCE, THE HARDSHIPS TIP IN FRANKLIN COVEY'S FAVOR. ..............................................................................................24

F. GRANTING THE REQUESTED RELIEF ACTUALLY HARMS THE PUBLIC INTEREST. ...........................................................................24

G. FRANKLIN COVEY HAS STRONG DEFENSES............................................24

III. CONCLUSION..............................................................................................24

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - ii
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
   537 F.2d 4 (2d Cir. 1976) ...................................................................................10

*Adidas Am., Inc. v. Skechers USA, Inc.*,
   149 F. Supp. 3d 1222 (D. Or. 2016) ....................................................................8

*Adidas Am., Inc. v. Skechers USA, Inc.*,
   890 F. 3d. 747 (9th Cir. 2018) ...........................................................................23

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) .............................................................................4

*Allstate Ins. Co. v. Kia Motors Am., Inc.*,
   No. CV 16-6108 SJO, 2017 U.S. Dist. LEXIS 211399 (C.D. Cal. Dec. 22,
   2017) ...............................................................................................................12, 13

*Alpha Indus. v. Alpha Steel Tube & Shapes, Inc.*,
   616 F.2d 440 (9th Cir. 1980) ...............................................................................3

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ....................................................................... *passim*

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
   581 F.3d 1138 (9th Cir. 2009) ......................................................................7, 8, 4

*Autodesk, Inc. v. Dassault Systemes Solidworks Corp.*,
   685 F. Supp. 2d 1001 (N.D. Cal. 2009) ...............................................................3

*Bellagio Jewelry, Inc. v. Croton Watch Co.*,
   No. CV 06-6672ODWRZX, 2008 WL 3905895 (C.D. Cal. Aug. 20, 2008) .........19

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ...........................................................................18

*Cairns v. Franklin Mint Co.*,
   24 F. Supp. 2d 1013 (C.D. Cal. 1998.) .........................................................19, 20

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - iii
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

*In re Cooper*,
   45 C.C.P.A. 923 (C.C.P.A. 1958) ............................................................................6

*The Deal, LLC v. Korangy Pub., Inc.*,
   309 F. Supp. 2d 512 (S.D. N.Y. 2004) ...................................................................21

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992) ..........................................................................15, 21

*Entrepreneur Media v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) ..........................................................................10, 12

*Feldman v. Ariz. Sec'y of State's Office*,
   843 F.3d 366 (9th Cir. 2016) ..................................................................................4

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
   654 F.3d 958 (9th Cir. 2011) .............................................................................. 7-8

*FTC v. CCC Holdings, Inc.*,
   2009 U.S. Dist. LEXIS 134316, 2009 WL 10631282 (D.D.C. Jan. 30, 2009) ......................19

*Glow Indus. v. Lopez*,
   273 F. Supp. 2d 1095 (C.D. Cal. 2003) ..........................................................15, 16, 17

*Harlem Wizards Entm't Basketball, Inc. v. NBA Properties, Inc.*,
   952 F. Supp. 1084 (D.N.J. 1997.) ..........................................................................17

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*,
   736 F.3d 1239 (9th Cir. 2013) .........................................................................4-5, 22

*Herbko Int'l, Inc. v. Kappa Books, Inc.*,
   308 F.3d 1156 (Fed. Cir. 2002) ..............................................................................6

*iCall, Inc. v. Tribair, Inc.*,
   No. C-12-2406 EMC, 2012 U.S. Dist. LEXIS 166695 (N.D. Cal. Nov. 21,
   2012) ........................................................................................................15, 18

*Interstellar Starship Servs. v. Epix, Inc.*,
   304 F.3d 936 (9th Cir. 2002) ..................................................................................9

*Inwood Labs, Inc. v. Ives Labs, Inc.*,
   456 U.S. 844 (1982) ..............................................................................................7

*J & J Snack Foods Corp. v. McDonalds Corp.*,
   932 F.2d 1460 (Fed. Cir. 1991) ..............................................................................6

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - iv
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
    150 F.3d 1042 (9th Cir. 1998) ..................................................................................6

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
    762 F.3d 867 (9th Cir. 2014) ................................................................................17

*M2 Software, Inc. v. Madacy Entm't*,
    421 F.3d 1073 (9th Cir. 2005) ..........................................................................9, 20

*Mach. Head v. Dewey Global Holdings, Inc.*,
    61 U.S.P.Q.2d 1313 (N.D. Cal. 2001) ..................................................................17

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
    290 F. Supp. 2d 1083 (N.D. Cal. 2003) ..........................................................15, 20

*Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*,
    856 F.2d 1445 (9th Cir. 1988) ..............................................................................10

*Mytee Prods. v. Shop Vac Corp.*,
    Case No. 13-cv-1610, 2013 U.S. Dist. LEXIS 158539 (S.D. Cal. Nov. 4,
    2013) ......................................................................................................................24

*Network Automation, Inc. v. Advanced Sys. Concepts Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ...................................................................... *passim*

*Nordstrom, Inc. v. 7525419 Canada, Inc.*,
    No. C12-1387 TSZ, 2012 U.S. Dist. LEXIS 187261 (W.D. Wash. Dec. 27,
    2012) ......................................................................................................................13

*One Indus., LLC v. Jim O'Neal Distrib. Inc.*,
    578 F.3d 1154 (9th Cir. 2009.) ..............................................................................15

*Oreck Corp. v. U.S. Floor Sys., Inc.*,
    803 F.2d 166 (5th Cir. 1986) ................................................................................10

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ..............................................................................22

*Pinterest, Inc. v. Pintrips, Inc.*,
    140 F. Supp. 3d 997 (N.D. Cal. 2015) ............................................................19, 20

*Playboy Enters. v. Netscape Commc'n Corp.*,
    55 F. Supp. 2d 1070 (C.D. Cal. 1999), *aff'd*, 202 F.3d 278 (9th Cir. 1999)..........19

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ..............................................................................10

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - v
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012) ........................................................................14

*RIPL Corp. v. Google Inc.*,
    No. 2:12-CV-02050-RSM, 2014 WL 1350810 (W.D. Wash. Apr. 3, 2014)...........13

*San Miguel Pure Foods Co. v. Ramar Int'l Corp.*,
    625 F. App'x 322 (9th Cir. 2015) ....................................................................22

*Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.*,
    568 F.2d 1342 (C.C.P.A. 1977) ...............................................................7, 12, 14

*Servpro Indus. v. Zerorez of Phx. LLC*,
    No. CV-17-00862-PHX-ROS, 2018 U.S. Dist. LEXIS 153554 (D. Ariz. Sept.
    7, 2018) ...........................................................................................................9

*Sharper Image Corp. v. Target Corp.*,
    425 F. Supp. 2d 1056 (N.D. Cal. 2006) ...........................................................14

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
    944 F. Supp. 2d 830 (C.D. Cal. 2012) ...............................................................6

*Starbucks Corp. v. Glass*,
    No. 2:16-CV-03937-ODW(PJW), 2016 U.S. Dist. LEXIS 145694 (C.D. Cal.
    Oct. 20, 2016) ................................................................................................23

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
    987 F. Supp. 2d 1023 (C.D. Cal. 2013) ...........................................................16

*Surfvivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005) ......................................................................21-22

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
    610 F.3d 1171 (9th Cir. 2010) ........................................................................21

*Treemo, Inc. v. Flipboard, Inc.*,
    53 F. Supp. 3d 1342 (W.D. Wash. 2014)...........................................................23

*UL LLC v. Space Chariot, Inc.*,
    250 F. Supp. 3d 596 (C.D. Cal. 2017) .............................................................18

*Usrey v. Chen*,
    No. CV 14-1134-GW(AJWX), 2014 WL 12570232 (C.D. Cal. May 29, 2014)...................24

*Vision Sports, Inc v Melville Corp*,
    888 F.2d 609 (9th Cir 1989) ........................................................................6, 14

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - vi
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Wal-Mart Stores, Inc. v. Samara Bros.*,
   529 U.S. 205 (2000)................................................................................7, 11

*Walter v. Mattel, Inc.*,
   31 F. Supp. 2d 751 (C.D. Cal. 1998) ...........................................................15

*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7 (2008)..................................................................................4-5, 22

**Statutes**

15 U.S.C. § 1114.............................................................................................5

15 U.S.C. § 1125.............................................................................................5

Lanham Act.................................................................................................1, 8

**Other Authorities**

37 C.F.R. § 2.71(d) .........................................................................................5

2 McCarthy on Trademarks and Unfair Competition § 15:47 (5th ed.) .........................14

4 McCarthy on Trademarks and Unfair Competition § 24:39 (5th ed.) ..........................9

Fed. R. Civ. P. 65...........................................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

This Court should reject Plaintiff's Preliminary Injunction Motion for at least three, independent reasons.

**<u>Trademark and Trade Dress Invalidity</u>**.   First, Plaintiff's motion ignores the fundamental legal issue that *every* Plaintiff must establish in *every* Lanham Act case: validity of the claimed trademark or trade dress.  Plaintiff has no federal registrations for either its supposed "Fierce" book series or its "Fierce Orange" trade dress.   Thus, it must plead and prove facts to establish those alleged "source identifiers" are valid.  Plaintiff utterly failed to do so, both in its Complaint (*See* Dkt. 9 (Defendant's Motion to Dismiss) p. 23; Dkt. 17 (Reply) p. 1) and its present motion.  "Fierce" is commonly used by scores of individuals and companies in their respective book titles:

       

(Kolter Decl. Exs. 11, 22, 24-28.)[1]  Plaintiff cannot use the Lanham Act to coopt that descriptive term for its exclusive use.  That is not how our trademark laws work.

Likewise, Plaintiff does not have protectable rights in the basic color orange (its self-proclaimed "Fierce Orange").  Plaintiff relies on three pieces of evidence: (1) it alleges it has been using orange for almost "everything it does" dating back to 2003; (2) vague, non-specific, and wholly undocumented claims regarding millions spent on "growing its brand" and product distribution; and (3) testimony of a single individual about how she associates "fierce" and an "orange hue" with Plaintiff.  (*See* Scott Decl. ¶¶ 9-11; Schmidt Decl. ¶ 6.)   The Lanham Act

---

[1]      References to "Kolter Decl. Ex. __" are to the Declaration of Erin Kolter in Support of Defendant's Opposition, filed concurrently herewith.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

requires much more than that.  Among other things, Plaintiff must establish that its supposed trade dress (consisting of orange notebook covers, a multi-colored beach ball, and a book with orange font) is unique and recognized by consumers as a source identifier.  Plaintiff's submission comes nowhere close.  All of these orange-colored items are in abundance in the marketplace.  Plaintiff's vague and unsubstantiated references to advertising expenditures are of no help either. Finally, the self-serving testimony of Plaintiff's "disinterested" witness (who does not appear to be a potential purchaser of Plaintiff's services) is meaningless in terms of *actual* recognition by *actual* consumers.  In short, the orange trade dress claims go down in flames.

**No Confusion; Likely or Otherwise.**  Second, even *assuming* Plaintiff owns valid and enforceable trademark and trade dress rights, Plaintiff utterly failed to establish that consumers are likely to be confused.  For starters, Plaintiff itself is confused as to the correct legal standard.  The so-called "Internet troika" infringement analysis espoused by Plaintiff only applies in domain name disputes, not in a case like this involving alleged infringement of book titles, educational services, and trade dress.  *All* of the *Sleekcraft* factors apply; they all tip decidedly in Franklin Covey's favor.  There is simply a total and complete failure of evidence to support entry of an injunction.  For example, Plaintiff's trademarks and trade dress are weak, both conceptually and commercially.  Plaintiff's conceptual strength analysis—claiming that the adjective "fierce" is "fanciful" and, therefore, inherently strong—is demonstrably wrong.  Plaintiff does not even bother to provide any discussion about commercial strength, but the facts set forth in Plaintiff's declarations lay bare the anemic nature of Plaintiff's word marks and trade dress.  Plaintiff's commercial strength is especially dubious when considered alongside other federally-registered fierce trademarks in the same class as Plaintiff's registered marks:

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 2
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

| Mark | Trademark Reg. No. | Marketplace Use |
|---|---|---|
| FIERCE WITH AGE | 4,286,723 | <br>(For Book, *see* Kolter Decl. Ex. 46; for website, *see Id.*, Ex. 5.) |
| FIERCE LADY OF FINANCE | 4,828,683 |  (*Id.* Ex. 6.) |
| FIND YOUR FIERCE | 4,993,908 | <br>(*Id.* Ex. 7.) |
| Fierce Loving | 5,252,161 |  (*Id.* Exs. 8-9.) |
| SO FIERCE | 4,759,989 | Active Trademark. |
| fierce love and wisdom | 4,878,589 | (*Id.* Ex. 10.) |
| let loose your fierce love and wisdom now | 4,878,590 | (*Id.*) |

Further, when the parties' marks are viewed *as they appear in the marketplace* (and not "cherry picked" like Plaintiff does in its motion), it is clear the marks are dissimilar in sight, sound, and meaning.   Additionally, the Court should reject the inadmissible double hearsay statements attributed to an unidentified handful of "confused" individuals.   Courts routinely reject such evidence, and this Court should follow suit here.   In any event, these statements do not show actual confusion.   The remaining *Sleekcraft* factors showcase a complete lack of evidence as further detailed *herein.*   Plaintiff's motion has no business being before this Court.   There is no confusion, likely or otherwise.   No confusion; no injunction.

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 3
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

**No Irreparable Harm.** Third, Plaintiff devotes *two sentences* as to how it will supposedly suffer irreparable harm without an injunction. That is not good enough. Far from it. The Ninth Circuit has made it abundantly clear that a trademark Plaintiff must show that the threat of commercial harm is real and imminent. Plaintiff's conclusory and unsupported allegations of harm simply do not cut it. Plaintiff's motion fails on every level. The Court should deny it forthwith, and this case should proceed in the normal course.

**Factual Misstatements**. Before addressing the substance of Plaintiff's tenuous claims, though, there are two glaring factual misstatements that need to be put to bed. Plaintiff falsely states that Franklin Covey has "been operating at a loss" then insinuates it needed to "rebrand" its Leading Customer Loyalty offerings to right the ship. (PI pp. 1-2, 8, 9.) Both claims are absurd and easily debunked. The 10-Q SEC filing referenced by Plaintiff states, in pertinent part, that "[f]or the quarter ended May 31, 2018, our gross profit was $34.9 million compared with $27.3 million in the prior year." (Summers Decl. Ex. Y.) This 20%+ increase in gross profits is hardly a "loss." Moreover, Franklin Covey has not "rebranded" anything. (Miller Decl. ¶ 7.)[2] Defendant's new book is simply a small part of the well-established customer loyalty trainings and offerings that Franklin Covey has offered for years. Plaintiff's claim to the contrary is dead wrong.

## II.     LAW AND ARGUMENT

### A.     LEGAL STANDARD FOR PRELIMINARY INJUNCTIONS IN TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CASES.

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 375 (9th Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008)). A plaintiff seeking a preliminary injunction must show: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Herb Reed*

---

[2]        References to "Miller Decl." are to the Declaration of Scott Miller, filed concurrently herewith.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Enters., LLC v. Fla. Entm't Mgmt.,* 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting *Winter,* 555 U.S. at 20); Fed. R. Civ. P. 65; *see also All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1132, 1135 (9th Cir. 2011) (explaining "serious questions to the merits" may be an alternative to "likelihood of success on the merits" factor if the "balance of hardships tips sharply in plaintiff's favor" and plaintiff "satisfy[s] the other *Winter* factors".)  Plaintiff's motion fails on all counts.

**B.    PLAINTIFF'S COMPLAINT AND PRELIMINARY INJUNCTION MOTION FAILED TO ESTABLISH VALIDTY OF ITS PURPORTED (1) "FIERCE BOOK SERIES" TRADEMARK, (2) "FIERCE FAMILY" TRADEMARK, AND (3) "FIERCE ORANGE" TRADE DRESS.**

In order to prevail on a claim for trademark infringement and unfair competition, a Plaintiff must establish that it: (1) owns valid and enforceable trademarks or trade dress; and (2) that consumers are likely to be confused.  *Network Automation, Inc. v. Advanced Sys. Concepts Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011); 15 U.S.C. §§ 1114, 1125.  Plaintiff claims ownership of the following three types of marks: (1) an unregistered trademark in a book series with the name "Fierce" (Dkt. 11 (Plaintiff's Motion for Preliminary Injunction, "PI") p. 15); (2) a Fierce "family of marks" individually registered with the United States Patent & Trademark Office ("USPTO") in Class 41 for "educational services, namely conducting classes, seminars, conferences, and workshops" (PI  pp. 16-17); and (3) an unregistered trademark in the color orange (a.k.a. "Fierce Orange") "in connection with almost everything it does" (Compl. ¶ 19; PI p. 17.)

### 1.    The "Fierce Book Series" is Invalid and Unenforceable.

Plaintiff has no registration in a book series (or even a valid USPTO application). [3] Plaintiff's asserted trademarks are all registered in Class 41 for "educational services, namely conducting classes, seminars, conferences, and workshops" not for Class 16 covering "Publications, namely; books".  (*See* Compl. Exs. A-L.)  An unregistered book series is only

---

[3]    Regarding supposed "ownership" of the series, Plaintiff points to the recent trademark applications filed in the name of Ms. Susan Scott by "mistake" but later "assign[ed]" to Fierce, Inc. (*See* PI p. 7, n.2.) Those applications are meaningless and do not establish ownership (much less validity).  Trademark applications filed in the name of the wrong party (whether innocently or otherwise) are void *ab initio*.  37 C.F.R. § 2.71(d).  Those invalid applications are not a proxy for establishing ownership.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

protectable if it is: (1) inherently distinctive or (2) has secondary meaning. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.7 (9th Cir. 1998). Plaintiff has failed to show that the "Fierce Series" is either.

First, "Fierce" as used in Plaintiff's book titles is not inherently distinctive because it is descriptive of the qualities espoused in the books. *See infra* section C(1)(a); *In re Cooper*, 45 C.C.P.A. 923, 928-29 (C.C.P.A. 1958). Moreover, the marketplace is awash with scores of books that prominently use "fierce" in the title. (Kolter Decl. Exs. 11, 20-22, 24-28, 47.) Plaintiff has not even attempted to explain how its purported series is distinctive in light of this overcrowded population of similar literary works. Plaintiff's series is not distinctive, inherently or otherwise. Second, Plaintiff failed to establish its series has attained secondary meaning. Instead, Plaintiff attempts an end run around this legal requirement. It cites *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830 (C.D. Cal. 2012) to prop up the claim that "given that the titles are part of a series, the titles should be ***presumed*** source-signifying." (PI p. 15) (emphasis supplied.) *Spin Master* stands for no such proposition and did not even analyze secondary meaning at all. 944 F. Supp. 2d at 853-54 ("for the purposes here . . . the Court assumes that under *Herbko* and *Cooper* Plaintiffs' publication . . . created sufficient source identification"). *See Herbko Int'l v. Kappa Books*, 308 F.3d 1156, 1163 (Fed. Cir. 2002) (stating that book series *may* become source identifiers but only if the series creates "a requisite association in the public mind".) Secondary meaning is best shown through competent survey evidence. *Cf. Vision Sports, Inc v Melville Corp,* 888 F2d 609, 615 (9th Cir 1989). Plaintiff has offered none. Because Plaintiff failed to establish inherent distinctiveness or secondary meaning, its alleged book series is not protectable as a trademark.

## 2.   **Plaintiff's "Family" of Fierce Marks is Invalid and Unenforceable.**

Plaintiff's ***individual*** incontestable registrations entitle it to a presumption of validity with respect to those individual registrations. (PI p. 14.) But that does not establish that ***collectively***

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 6
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Plaintiff has a "family" of marks.  (*See* PI p. 16-17 describing family as "FIERCE plus a following word (usually a noun)".)  "Simply using a series of similar marks does not of itself establish the existence of a family.  There must be a recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods."  *J & J Snack Foods Corp. v. McDonalds Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991).  *J & J Snack Foods* sets the bar high for family status (*i.e.*, Mc + (food) is McDonalds) and requires Plaintiff prove public recognition by use, advertising, and distinctiveness.  *Id.* at 1462-63.  Plaintiff offered no evidence of advertising of this supposed "family" (beyond the vague claim that it has spent $10,000,000 "to grow its brand") (PI p. 7.)  Moreover, this "family" is weak as discussed herein.  There is no family.

### 3.    Plaintiff's "Fierce Orange" Trade Dress is Invalid and Unenforceable.

"Trade dress protection applies to 'a combination of any elements in which a product is presented to a buyer,' including the shape and design of a product."  *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (citation omitted).  Because Plaintiff has no trade dress registration, it must establish two elements to prove it has a protectable trade dress: (1) it must plead and prove the trade dress is "nonfunctional;"[4] and (2) the trade dress must be either "inherently distinctive"[5] or have acquired "secondary meaning."  *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000).  Plaintiff has done neither.  It did not even mention "non-functionality" in its Complaint, much less allege any facts to support this necessary element.  (*See* Dkt. 9 p. 23.)   Additionally, Plaintiff has not established secondary meaning because mere use of orange does not sufficiently establish if and how consumers associate the color with its source.  *See Art Attacks Ink, LLC,* 581 F.3d at 1145 ("To show secondary meaning, a plaintiff must demonstrate 'a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source.'");  *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,

---

[4]      A product feature is functional if it "is essential to the [product's] use or purpose . . . or if it affects the cost or quality of the article." *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 850 n.10 (1982).

[5]      If the trade dress is inherently distinctive, *see* application of *Seabrook infra* section C(1).

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 7
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

654 F.3d 958, 967 (9th Cir. 2011).   Whether a particular trade dress has acquired secondary meaning is based on the following factors:  (1) whether actual purchasers associate the dress with the source, which can be shown through customer surveys; (2) degree and manner of advertising of the dress; (3) length and manner of use of the dress; (4) exclusively of the dress; (5) sales success of the dress; and (6) attempts by others to imitate.  *Adidas Am., Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222, 1235 (D. Or. 2016).  Plaintiff's motion simply concludes it has trade dress rights in "Fierce Orange" because it: (a) has been using it since 2003; (b) received a third place award in 2008; (c) over the last 5 years distributed over 190,000 of its orange toolkits to more than 1000 companies across the globe; and (d) one person supposedly associates the "Fierce Orange" trade dress with Plaintiff.  (Scott Decl. ¶¶ 9-11; Schmidt Decl. ¶ 6.)  Even if these allegations are true, they come nowhere close to establishing secondary meaning. *Art Attacks Ink, LLC*, 581 F.3d at 1145-47. Without distinctiveness, Plaintiff cannot establish protectable trade dress.

Thus, Plaintiff's only valid marks are its registered marks for their registered purpose. Plaintiff has not established validity in its book series, its family, or for its purported trade dress.[6]

### C. PLAINTIFF'S MOTION RELIES ON THE WRONG LEGAL STANDARD FOR ASSESSING LIKELIHOOD OF CONFUSION UNDER THE LANHAM ACT.

In assessing claims for infringement and unfair competition under the Lanham Act, the Court applies the eight-factor test articulated in *AMF Inc. v. Sleekcraft Boats ("Sleekcraft")*, 599 F.2d 341, 348-49 (9th Cir. 1979). The "*Sleekcraft* factors" are: (1) the strength of the allegedly infringed mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' goods; (4) the marketing channels used by the parties; (5) the extent to which there is evidence of actual confusion; (6) the degree of care likely to be exercised by the purchasers of the parties' products; (7) the alleged infringer's intent in selecting its marks; and (8) the likelihood of

---

[6]    Franklin Covey is not conceding Plaintiff's actual registrations are valid and reserves all rights to claim otherwise as this case proceeds.  However, for the purpose of analyzing likelihood of confusion in this motion, Franklin Covey assumes the registrations are valid.

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 8
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    expansion of the parties' product lines.  *Id.*

2         As an initial matter, Plaintiff cites the Ninth Circuit decision of *Interstellar Starship* and

3    then incorrectly states that "[w]hen the infringement occurs on the Internet, the most important

4    factors are the first three (*i.e.*, similarity of marks, services and marketing channels)."  (PI pp. 15-

5    16.)  Plaintiff is wrong.  A decade after *Interstellar Starship*, the Ninth Circuit clarified that the

6    *Interstellar Starship* three factor test (the "internet trinity" or "troika") was limited to domain name

7    disputes.    *Network Automation, Inc.*, 638 F.3d at 1148-49 ("However, we did not

8    intend *Brookfield* to be read so expansively as to forever enshrine these three . . . the 'troika'

9    analysis 'is appropriate for domain name disputes.'") (citing 4 McCarthy at § 24:39 (5th ed.))

10        Other than in that limited domain name context, the standard *Sleekcraft* test applies.  Here,

11   when all of the *Sleekcraft* factors are properly analyzed, it is obvious that Plaintiff failed to

12   establish it will likely prevail on any of its claims.

13        1.    **The Fierce Book Series, the "Family" of Fierce Marks for Training
14              Seminars, and the Orange Trade Dress are Conceptually and
              Commercially Weak.**

15        The first factor is the strength of the Plaintiff's trademarks and trade dress.  *Servpro Indus.*

16   *v. Zerorez of Phx. LLC*, No. CV-17-00862-PHX-ROS, 2018 U.S. Dist. LEXIS 153554, at *7 (D.

17   Ariz. Sept. 7, 2018).  Trademark strength is evaluated in terms of a mark's "conceptual strength"

18   and its "commercial strength."  *Network Automation, Inc.,* 638 F.3d at 1149.  Plaintiff's

19   "conceptual strength" analysis is just plain wrong, and Plaintiff flatly ignores the commercial

20   strength requirement altogether.  (PI p. 19.)

21        a.    **Plaintiff's Word Marks and "Fierce Orange" Trade Dress are
              Conceptually Weak.**

22        Assessing "conceptual strength" of a word mark requires locating it on the "spectrum of

23   increasing inherent distinctiveness."  *Network Automation, Inc.,* 638 F.3d at 1149.  The spectrum

24   includes five categories.   Arbitrary and fanciful trademarks are on one end of the spectrum.

25   *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005).   They are inherently

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 9
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

strong and receive the greatest protection.  *Id.*  Generic marks are on the other end.  *Id.*  They receive no protection.  *Id.*  In the middle are "suggestive" and "descriptive" marks.  They are considered "presumptively weak."  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1126 (9th Cir. 2014).  Descriptive marks require an additional showing of secondary meaning, as they are not inherently distinctive.  *Sleekcraft*, 599 F.2d at 349.  Despite Plaintiff's claims to the contrary, (PI p. 19), "incontestable status does not alone establish a strong mark."  *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988); *see also Entrepreneur Media v. Smith*, 279 F.3d 1135, 1143 n.3 (9th Cir. 2002) (same); *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 171 (5th Cir. 1986) ("Incontestable status does not make a weak mark strong").

**The word mark "Fierce" is descriptive or, at most, suggestive**.  "A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976).  "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods." *Id.; Sleekcraft*, 599 F.2d at 349.

Here, as used on the book "series," "fierce" is descriptive of the qualities or characteristics espoused in the books.  For example, take Plaintiff's book "*Fierce Conversations Achieving Success at Work & in Life, One Conversation at a Time*."  The cover has recited a definition of fierce: "robust, intense, strong, powerful, passionate, eager, unbridled." (Kolter Decl. Ex. 33).  It mirrors the dictionary definition of fierce.  (*See* Dkt. 10-16.)  That definition is simply short hand for the entire premise of Plaintiff's book.  Chapter One underscores this exact point when it encourages readers to engage in conversations with these "fierce" qualities:

But What Is a "Fierce" Conversation?

Most people would agree that conversations are important, that, if some conversations fail, it's a big fail!  But why "fierce"?  Doesn't "fierce" suggest menacing, cruel, barbarous, threatening?  Sounds like raised voices, frowns, blood on the floor, no fun at all. ***In Roget's Thesaurus, however, the word "fierce" has the following synonyms: robust, intense, strong, powerful, passionate, eager, unbridled, uncurbed, untamed.  In***

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 10
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

*__its simplest form, a fierce conversation is one in which we come out from behind__*
*__ourselves into the conversation and make it real.__*

(*See* Kolter Decl. Ex 32.) The chapters that follow make repeated references to these same qualities
and characteristics of a "fierce conversation." (*Id.* Ex. 34.)   Plaintiff's next book, *Fierce*
*Leadership A Bold Alternative To The Worst "Best" Practices of Business Today*, is a sequel that
espouses these same "fierce" qualities and characteristics for organizational leaders. (*Id.* Ex. 35.)
Further, Plaintiff's "fierce" seminars and training materials[7] (not surprisingly) encourage the same.
(*E.g., id.* Ex. 3 p. 2, Ex. 1 p. 7, Ex. 4 pp. 2, 5, 7-8, Ex. 2 pp. 1-2, 3.)  Plaintiff is wrong that its use
of "fierce" is "fanciful." (PI p. 19.)  "Fierce" is descriptive or, at best, suggestive.  Either way, it
is an inherently weak mark.

**The "Fierce Orange" trade dress is a common place, unoriginal design.**  Plaintiff's
motion only mentions the conceptual strength of the "fierce" word mark (and gets it wrong, in any
event). (PI p. 19.)  Plaintiff's motion contains **no discussion or analysis** regarding the strength of
its supposed "Fierce Orange" trade dress.

The "conceptual strength" of Plaintiff's "Fierce Orange" trade dress is not analyzed using
the traditional distinctiveness spectrum discussed *supra*.  *Wal-Mart Stores, Inc.*, 529 U.S. at
210 (noting that the distinctiveness spectrum is properly applied to word marks).  Assuming the
Fierce Orange trade dress is product packaging, not product design,[8] the *Seabrook* factors apply to
assess conceptual strength.  *See* TMEP 1202.02(B) Distinctiveness of Trade Dress (explaining
when *Seabrook* or *Wal-Mart* applies)).  Plaintiff does not bother to cite *Seabrook*, much less
provide any of the required analysis.  Two of the *Seabrook* factors are particularly instructive as
to the anemic nature of Plaintiff's trade dress claim.  *Seabrook Foods, Inc. v. Bar-Well Foods,*

---

[7]        Many of these materials lack the purported consistent format: "Fierce + noun" (PI p. 17) and some of these
materials are boldly branded with FIERCE in light grey font. (*See e.g.*, Kolter Decl. Ex. 3.)
[8]        If the trade dress is "product design," not packaging, it can never be inherently distinctive and requires
secondary meaning. *Wal-Mart Stores,* 529 U.S. at 212. Plaintiff has not even attempted to establish secondary
meaning.  *See* discussion *supra*, section B(3).  In close cases where it's difficult to determine whether the dress is
product packaging or design, "courts should err on the side of caution and classify ambiguous trade dress as product
design, thereby requiring secondary meaning."  *Wal-Mart Stores,* 529 U.S. at 215.

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 11
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A. 1977).

The first *Seabrook* factor asks whether the claimed trade dress is a "common, basic shape or design[?]" *Id.* The answer here is a resounding "yes." Plaintiff's trade dress consists of its training "workbooks" that have orange covers, (Scott Decl. Exs. 3-7), a book with an orange font and spine (*Id.* Ex. 8), and a mini multi-colored beach ball with one of the colors being orange. (*Id.*) These are basic, common design elements. For example, an amazon.com search for "orange notebooks" yields literally *hundreds* of results featuring notebooks with solid orange covers. (Kolter Decl. Ex. 43.) An amazon.com search for "beach balls" results in scores of multi-colored beach balls with one of the colors being orange. (*Id.* Ex. 44.) Finally, four of the "Top 20 Most Sold & Most Read Books of the Week" on amazon.com and two of the Top 5 "New York Times Best Sellers" use an orange-type font on the covers. (*Id.* Exs. 42, 45.)

The second *Seabrook* factor asks whether the claimed trade dress is "unique or unexpected in a particular field[?]" *Seabrook Foods, Inc.*, 568 F.2d at 1344. To that inquiry, the answer is a resounding "no." Orange permeates the corporate training industry. Books, websites, notebooks, and other like items are found in abundance. (Kolter Decl. Exs. 6, 8-9, 12-19, 29-31, 36-39.) The claimed trade dress is conceptually weak, if it is even protectable in the first instance.

### b. Plaintiff's Word Marks and "Fierce Orange" Trade Dress are Also Commercially Weak.

The second piece of strength analysis is commercial strength. *Network Automation*, 638 F.3d at 1149. "Commercial strength is based on 'actual marketplace recognition.'" *Id.* (quoting *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999)). To assess commercial strength courts look to: (1) advertising; (2) length of time of exclusive use; and (3) public recognition. *Entrepreneur Media*, 279 F.3d at 1144. Under all three criteria, Plaintiff's marks are commercially weak.

**Advertising.** Plaintiff provided no competent evidence of advertising. For example, in *Allstate*, Plaintiff attempted to prove its "Drivewise" trademark enjoyed secondary meaning due

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 12
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

1   to $400 million spent in developing and operating the program and $47 million spent on

2   advertising. *Allstate Ins. Co. v. Kia Motors Am., Inc.*, No. CV 16-6108 SJO (AGRx), 2017 U.S.

3   Dist. LEXIS 211399, at *27-28 (C.D. Cal. Dec. 22, 2017). The Court rejected this evidence:

4   "Allstate's testimony concerning development and operation expenditures, proffered without

5   supporting documentation, does not persuade the Court." *Id.* at *28. This Court should not be

6   persuaded here either. Plaintiff provides a vague statement that it has "spent over $10 million to

7   grow its brand," (PI p. 7), but fails to provide a single document supporting this assertion. *See

8   Allstate Ins. Co.,* 2017 U.S. Dist. LEXIS 211399, at *28. That Plaintiff "provided its trainings to

9   over 1000 organizations and, in doing so, distributed over 190,000 of its Toolkits," (PI p. 5), is

10  also too vague and non-specific to mean anything in terms of marketplace recognition. *Autodesk,

11  Inc. v. Dassault Systemes Solidworks Corp.*, 685 F. Supp. 2d 1001, 1015 (N.D. Cal. 2009) (granting

12  summary judgement where plaintiff provided "no data on how extensive the advertising was . . .

13  Plaintiff merely cite[d] to various examples of advertising without explaining how often these

14  advertisements were used or explaining the context in which they were presented to the consuming

15  market.")

16      **Exclusive use**. Common words that are frequently used in trademarks, like fierce, result

17  in weak marks. *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 445-46 (9th

18  Cir. 1980) (affirming no likelihood of confusion where both parties used "ALPHA" in their

19  marks); *e.g.*, *Nordstrom, Inc. v. 7525419 Canada, Inc.*, Case No. C12-1387 TSZ, 2012 U.S. Dist.

20  LEXIS 187261 (W.D. Wash. Dec. 27, 2012) (denying injunction where marks "RACK" and "THE

21  RACK" "occupy a crowded field of similar marks"); *RIPL Corp. v. Google Inc.,* No. 2:12-CV-

22  02050-RSM, 2014 WL 1350810, at *9 (W.D. Wash. Apr. 3, 2014) ("Because RIPL and Ripples

23  operate in a relatively crowded field of ripple-associated trademarks, their market strength is

24  weakened".) Here, the marketplace is littered with similar marks. There are loads of books using

25  "fierce" as part of the title. (Kolter Decl. Exs. 11, 20, 22, 24-28.) There are loads of other

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 13
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

companies that use fierce in the titles of their educational materials, including seminars.  (*Id.* Exs. 5-10, 48-51; *see* chart pp. 2-3.) There are loads of leadership books and seminars that use the color orange. (*Id.* Exs. 12-19, 29-31, 36-39.) Plaintiff's use of fierce and orange are far from exclusive.

**Public recognition.**  Plaintiff has no evidence of actual recognition by the relevant portion of the consuming public.  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012).  Consumer surveys provide the best evidence of actual recognition.  *Vision Sports, Inc v Melville Corp,* 888 F.2d 609, 615 (9th Cir 1989); *Allstate Ins. Co.,* 2017 U.S. Dist. LEXIS 211399, at *28 (denying injunction where "Allstate offered no expert testimony and conducted no consumer research or survey".)  Plaintiff offered none.[9]  The sole piece of supposed "marketplace recognition" comes from Ms. Schmidt.  She claims when she sees books on business management that contain the word "fierce" coupled with an "orange hue," she "assumes" the materials are associated with Fierce, Inc.  (Decl. Schmidt ¶ 6.)   This "sample of one" is meaningless in terms of marketplace recognition.   *Art Attacks Ink, LLC*, 581 F.3d at 1146 ("Testimony from a single source is insufficient to demonstrate secondary meaning.")  Moreover, Ms. Schmidt is not exactly a disinterested marketplace consumer.  *Cf. Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012); *Sharper Image Corp. v. Target Corp.,* 425 F. Supp. 2d 1056, 1073 (N.D. Cal. 2006).  Her statement (on behalf of her member, Fierce, Inc.) is not probative of actual marketplace recognition.  In sum, Plaintiff's marks and dress are commercially weak.  This factor strongly favors Franklin Covey.

## 2.   Plaintiff's Purported Marks and Dress are Dissimilar in Sight, Sound, and Meaning to Franklin Covey's Book and Training Services.

The next *Sleekcraft* factor, "[s]imilarity of the marks[,] is tested on three levels: sight, sound, and meaning." *Sleekcraft*, 599 F.2d at 351.  "In analyzing the similarity of the marks, the

---

[9]        The fact that Plaintiff's two books are "best sellers" and that one book sold over 500,000 copies (during an unspecified time period) is largely irrelevant because sales are not indicative of consumer source association.  (Scott Decl. ¶¶ 4-5.) *See Seabrook Foods, Inc.,* 568 F.2d at 1345 (noting that sales is "not necessarily indicative of recognition of the mark by purchasers as an indication of source of the goods."); 2 McCarthy § 15:47 ("Popularity of a product is not synonymous with secondary meaning. Large sales of the product may be due to dozens of factors, only one of which may be the drawing power of the trademark.")

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 14
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

court is to view the marks as a whole, as they appear in the marketplace." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992); *iCall, Inc. v. Tribair, Inc.*, No. C-12-2406 EMC, 2012 U.S. Dist. LEXIS 166695, at *21 (N.D. Cal. Nov. 21, 2012).  Plaintiff's motion improperly analyzes the sight factor, and ignores sound and meaning altogether.  (PI pp. 16-17.) When the facts are analyzed properly, this factor tips sharply in favor of Franklin Covey.

### a.      Sight

To properly analyze sight, courts look to the visual appearance of the marks ***as they appear in the marketplace***.  *E.g.*, *One Indus., LLC v. Jim O'Neal Distrib. Inc.*, 578 F.3d 1154, 1163 (9th Cir. 2009.)  Here, all Plaintiff does is conclude Franklin Covey's book is "virtually identical" due to its use of the color orange and the word fierce.  (PI pp. 16-17.)  Plaintiff's analysis is exactly the type of "cherry picking" exercise that courts routinely reject.  *Glow Indus. v. Lopez*, 273 F. Supp. 2d 1095, 1122 (C.D. Cal. 2003) ("The marks must nevertheless be compared in their entirety, rather than in dissected form").

The visual appearance of Franklin Covey's book looks nothing like Plaintiff's training materials.  Although both have a solid orange cover, the similarities end there.  (*Compare* Compl. ¶ 33 *with* Scott Decl. Exs. 3-8.)  Likewise, the visual appearance of Franklin Covey's book is distinct from Plaintiff's cherry picked versions (let alone its older editions, *see* Dkts. 10-10–10-15.)  Franklin Covey's book uses an orange background, whereas Plaintiff's books use white backgrounds.  (Compl. ¶ 33.)  Franklin Covey's book uses only black and white font with no images, whereas Plaintiff's books use images and orange, gray, red, and blue font. (*Id.*) The arrangement of subtitles differs on each book in size, location, and typeface.  (*Id.*)  Moreover, the parties use their house marks, which further reduces the similarities.  *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1093 (N.D. Cal. 2003); *Walter v. Mattel, Inc.*, 31 F. Supp. 2d 751, 760 (C.D. Cal. 1998); (PI p. 10; Dkt. 10-17; Scott Decl. Exs. 3-8.)

### b.      Sound

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 15
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    "Sound is also important because reputation is often conveyed word-of-mouth." *Sleekcraft*,

2    599 F.2d at 351.  Below is a comparison of the Plaintiff's marks, (Scott Decl. Exs. 3-8), against

3    Franklin Covey's book title, as they appear in the marketplace.

| Plaintiff's marks used on its books: | Franklin Covey's book title: |
|---|---|
| • *Fierce Leadership: A Bold Alternative to the Worst 'Best' Practices of Business*<br>• *Fierce Conversations: Achieving Success at Work and in Life, One Conversation at a Time* | *Fierce Loyalty: Cracking the Code to Customer Devotion* |
| Plaintiff's marks used on its training materials: | Franklin Covey's book title: |
| FIERCE<br>FIERCE CONVERSATIONS<br>FIERCE LEADERSHIP<br>FIERCE NEGOTIATIONS<br>FIERCE ACCOUNTABILITY<br>FIERCE GENERATIONS<br>FIERCE FEEDBACK<br>FIERCE COACHING<br>FIERCE TEAM<br>FIERCE CONFRONTATION<br>FIERCE DELEGATION | *Fierce Loyalty: Cracking the Code to Customer Devotion* |

14    They sound nothing alike, other than sharing the word "fierce."  That's not enough.  *Stonefire*

15    *Grill, Inc.*, 987 F. Supp. 2d at 1052 ("Multiple courts have found that the presence of a common

16    word does not render two marks similar where additional words make the marks distinctive.");

17    *Glow Indus.*, 273 F. Supp. 2d at 1122 (finding that "Glow" and "Glow Kit" did not sound alike.)

18                             **c.      Meaning**

19    As to meaning, Franklin Covey's book title is conveying how a company can create

20    customer loyalty.  Plaintiff does not even try to articulate how its "Fierce" word marks or its trade

21    dress convey the same or similar meaning.  This factor also tips sharply in Franklin Covey's favor.

22           **3.      Plaintiff Failed to Present Competent Evidence That the Parties' Goods and Services are Related.**

23           "Related goods are those 'products which would be reasonably thought by the buying

24    public to come from the same source if sold under the same mark.'" *Sleekcraft*, 599 F.2d at 348

25    n.10.  The mere fact that "two products or services fall within the same general field does not mean

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

that they are sufficiently similar to create a likelihood of confusion." *Glow Indus.*, 273 F. Supp. 2d at 1121; *Harlem Wizards Entm't Basketball, Inc. v. NBA Properties, Inc.,* 952 F. Supp. 1084, 1095 (D.N.J. 1997.)  Instead, it is necessary for the Plaintiff to provide evidence that the parties' goods and services are related.

Here, for at least two reasons there is insufficient evidence to find the parties' goods and services are related.  First, Plaintiff vaguely asserts that its clients range from "small startups to Global Fortune 100 organizations" without providing any detail as to who these clients are, where they are located, or how much of Plaintiff's revenue (or marketing) is attributable to "small startups" vs. "Fortune 100 Organizations." (Scott Decl. ¶ 6.)  By contrast, Franklin Covey does not market its customer loyalty programs to "startup" companies.  (Miller Decl. ¶ 4.) Thus, it is unclear how much overlap—if any—exists between the parties respective customer bases. Second, Plaintiff provides no explanation as to how its "Fierce" corporate trainings are "similar in use or function" to the Franklin Covey's Customer Loyalty trainings.  *Mach. Head v. Dewey Global Holdings, Inc.*, 61 U.S.P.Q.2d 1313, 1318 (N.D. Cal. 2001).  In fact, the evidence produced by Plaintiff at this stage suggests they are not similar.  Plaintiff's CEO states that Plaintiff "has *plans* to offer customized trainings" on the subjects of "customer and employee loyalty." (Scott Decl. ¶ 4) (emphasis supplied.)  Thus, Plaintiff's current suite of corporate trainings do not overlap with Franklin Covey's loyalty offerings.  Based on the record, this factor favors Franklin Covey.

### 4.   There is Insufficient Evidence to Show That the Parties' Marketing Channels Substantially Overlap.

When examining the marketing channels, the Court considers "where the goods or services are sold, the sales and marketing methods employed, and the class of purchasers exposed to the marketing efforts." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 876-77 (9th Cir. 2014) (citation omitted); *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1018 (N.D. Cal. 2015).  Plaintiff argues that it is "striking" that Franklin Covey is using the internet (a separate domain name, fierceloyalty.com) to market its new book.  (PI p. 18.)  Plaintiff claims this will

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 17
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

create a "greater likelihood of initial interest confusion when a consumer searching for Fierce's services online instead lands on Franklin Covey's similar-looking, Fierce-branded cite." (*Id.*) (citing *Brookfield*, 174 F.3d at 1058.)  The Court should reject Plaintiff's assertion and heavy reliance on *Brookfield* for at least three reasons.

First, the fact that both parties use the internet is of zero consequence in today's commercial marketplace.  The Internet was a commercial baby back in 1999 when *Brookfield* was handed down.  In fact, twelve years after *Brookfield* was decided, the Ninth Circuit limited its application. *Network Automation, Inc.*, 638 F.3d at 1151.  In *Network Automation*, the Ninth Circuit observed that "[t]oday, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Id.*  As another Court succinctly observed, "[u]ltimately, the Ninth Circuit in *Network* seemed to advocate for an approach that 'look[s] beyond the medium itself [*e.g.*, the Internet] and to the nature of the particular goods and the relevant customers [instead].'" *iCall, Inc.*, 2012 U.S. Dist. LEXIS, at *35-36 (quoting *Network Automation,* 638 F.3d at 1152.)  The fact that both parties advertise online is of no moment.

Second, even if Plaintiff's *Brookfield* argument is still valid, Plaintiff ignores that there is an entirely different company called Fierce Loyalty, Inc.—unrelated to either party in this case— that markets and sells another book using the domain name "fierce-loyalty.com." (Kolter Decl. Exs. 21, 47.)  The book entitled *Fierce Loyalty Unlocking the DNA of Wildly Successful Communities* has been advertised on fierce-loyalty.com since at least December of 2013.[10]  (*Id.* Ex. 22.)  Plaintiff provides no explanation or analysis as to why that company should be able to use the Internet to market its book, but for some reason Franklin Covey should be enjoined from doing so.

---

[10]     *See UL LLC v. Space Chariot, Inc.*, 250 F. Supp. 3d 596, 604 n.2 (C.D. Cal. 2017) (collecting cases to show "[c]ourts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned".)

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Finally, Plaintiff is simply misinformed as to Franklin Covey's standard operating procedure when it comes to launching new books. When companies publish a new book, typically they use a domain name that matches the book's title or is as close to the book's title as possible for the launch of the book. (Miller Decl. ¶ 10.) Franklin Covey routinely launches new books and product offerings using separate websites. (*Id.*) This time was no different.

## 5. Plaintiff Failed to Present Any Admissible Evidence of Actual Confusion.

The "best way to show evidence of actual confusion" is through a consumer survey designed by a competent marketing expert. *Bellagio Jewelry, Inc. v. Croton Watch Co.,* No. CV 06-6672ODWRZX, 2008 WL 3905895, at *9 (C.D. Cal. Aug. 20, 2008) (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001.) Plaintiff failed to provide any expert testimony. This Court can—and should—presume the results would have been unfavorable. *Playboy Enters. v. Netscape Commc'n Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999), *aff'd*, 202 F.3d 278 (9th Cir. 1999); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041-42 (C.D. Cal. 1998.)

Instead of proffering evidence of actual confusion, Plaintiff opted to provide an inadmissible anonymous double hearsay statement of a supposedly "confused" customer. (Scott Decl. ¶ 14.) Ms. Scott asserts, "[w]e first learned of Franklin Covey's book, Fierce Loyalty, in about mid-September when a client who had received an advance copy contacted one of our (now former) employees to ask about that books and its association with us." (*Id.*) This is an inadmissible double hearsay statement and should be rejected. *FTC v. CCC Holdings, Inc.,* 2009 U.S. Dist. LEXIS 134316, at *2 (D.D.C. Jan. 30, 2009) (excluding double hearsay evidence submitted in support of preliminary injunction motion because it lacked "sufficient indicia of reliability".) Moreover, "[r]elevant confusion is that which affects purchasing decisions, not confusion generally." *Pinterest, Inc.,* 140 F. Supp. 3d at 1014. There is no indication that this unidentified individual was making any sort of purchase or that his or her purported state of

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 19
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

"confusion" would affect such a decision in the future.

Likewise, the gratuitous statements offered by Ms. Schmidt are of no moment.  She claims when she saw Franklin Covey's book she "assumed" that Plaintiff "authorized the book." (Schmidt Decl. ¶ 6.)  But there is no evidence that Ms. Schmidt is a potential purchaser of the book either, so her state of "confusion" is not probative of anything.  *Pinterest, Inc.*, 140 F. Supp. 3d at 1014.  Moreover,

> just as one tree does not constitute a forest, an isolated instance of confusion does not prove probable confusion.  To the contrary, the law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.

*Cairns,* 24 F. Supp. at 1042 (rejecting claim that three actually confused declarants showed "actual confusion" as "they do not represent an adequate sample of the relevant universe.")  Thus, Ms. Schmidt's alleged confusion is probative of nothing. [11]  This factor strongly favors Franklin Covey.

**6.**      **Franklin Covey Had Zero Intent to "Copy" Plaintiff or Any of the Numerous Other Companies That Use the Adjective "Fierce" in Their Respective Book Titles.**

Under the next *Sleekcraft* factor, courts consider the alleged infringer's intent in selecting its marks.  *Sleekcraft*, 599 F.2d at 354.  Plaintiff's argument here is simply: "similarity in appearance and lettering is itself evidence of intent." (PI p. 20.)  This deficient analysis incorrectly conflates with the similarity of marks factor.  Under a proper analysis, courts look to the intent of the defendant, not merely the appearance of the marks.  *See Sleekcraft*, 599 F.2d at 354; *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005).  Here, in selecting the name of its latest book, Franklin Covey chose *Fierce Loyalty: Cracking the Code to Customer Devotion* without any intent to copy Fierce.  (Miller Decl. ¶ 9.)  In numerous titling meetings with its publisher no one ever mentioned Fierce, Inc.  (*Id.*)  As an international content creator itself,

---

[11]      Ms. Schmidt also claims that "I heard similar reactions from others at this Forum who saw that website touting the book." (Schmidt Decl. ¶ 8.)  This is more meaningless hearsay and should be rejected by the court.  *Matrix Motor Co.*, 290 F. Supp. 2d at 1093-94 (rejecting as "unreliable and nothing more than inadmissible hearsay" allegations that several people were confused where plaintiff could not "substantiate its claims of actual confusion.").

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 20
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Franklin Covey zealously promotes independent creation, not copying.  (*Id.*)

7.     **Customers That Purchase Corporate Trainings are Presumed to Exercise a High Degree of Care.**

To analyze the degree of consumer care courts "must consider the nature and cost of the goods."  *Network Automation, Inc.*, 638 F.3d at 1152.  "[W]hen the goods are expensive, the buyer can be expected to exercise greater care in his purchases[.]" *Id.* (quoting *Sleekcraft*, 599 F.2d at 353.)  Greater care makes likelihood of confusion less likely.  *Id.*  And courts "expect consumers searching for expensive products online to be even more sophisticated."  *Id.* at 1153; *see also Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010) ("Unreasonable, imprudent and inexperienced web-shoppers are not relevant.")  As admitted by Plaintiff, Franklin Covey offers "Fierce Customer Loyalty" seminars at $2,095 a person, and therefore buyers of those materials can be expected to exercise greater care.  (PI p. 21.); *see also The Deal, LLC v. Korangy Pub., Inc.,* 309 F. Supp. 2d 512, (S.D. N.Y. 2004) (denying preliminary injunction where plaintiff's trade journal was aimed at corporate executives, lawyers, and investment brokers and defendant's trade journal targeted real estate professionals.)  This factor favors Franklin Covey.

8.     **Plaintiff Offers Only Vague Evidence of Product Expansion.**

Finally, courts consider the parties' likelihood of expansion into other markets.  *Sleekcraft*, 599 F.2d at 348-49.  There must be "a strong possibility of expansion into competing markets" for this factor to weigh "in favor of a finding of infringement."  *E. & J. Gallo Winery*, 967 F.2d at 1293.  Plaintiff claims that because "the parties are already marketing products and services in the same field, this factor is relatively unimportant."  (PI p. 20.)  Because there is no evidence that parties are marketing in the same field, *see supra* section C(3), Plaintiff is incorrect.  Here, the only evidence before the Court regarding potential expansion is that Plaintiff plans to start offering "loyalty" trainings in the future.  (Scott Decl. ¶ 6.)  But that vague, non-specific, and self-serving statement does not show "a strong possibility of expansion" and should be accorded no weight. *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) ("Although [the

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 21
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

plaintiff] expressed interest in expanding his product line, mere speculation is not evidence."). Therefore, this factor too weighs in favor of Franklin Covey.

In sum, all of the *Sleekcraft* factors weigh in favor of Franklin Covey.  The motion should be denied.

### D.   FIERCE DOES NOT POINT TO ANY EVIDENCE TO ESTABLISH THAT IRREPARABLE HARM IS LIKELY.

Plaintiff failed to establish irreparable harm.[12]  Its argument here is a mere two sentences devoid of concrete evidence.  (PI p. 23.)  That is nowhere close to good enough.  "Gone are the days when '[o]nce the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue.'" *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.,* 736 F.3d 1239, 1250 (9th Cir. 2013); *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 327-28 (9th Cir. 2015) ("Evidence of infringement or likelihood of confusion alone may not give rise to a presumption of irreparable harm.")  Instead, before a Court can provide extraordinary relief, Plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 8 (emphasis original.)  Irreparable harm must be based on record evidence, not "unsupported and conclusory statements regarding harm [the plaintiff] might suffer."  *Herb Reed Enters., LLC,* 736 F.3d at 1250-51; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1157 (9th Cir. 2007).

For example, in *Herb Reed Enters.*, "the district court abused its discretion" by relying on Plaintiff's insufficient evidence of consumer confusion to support its loss of brand control argument.  *Herb Reed Enters, LLC*, 736 F.3d at 1250 (reversing injunction).  Specifically, the insufficient evidence was "an email from a potential customer complaining to [defendant]'s booking agent that the customer wanted [plaintiff]'s band rather than another tribute band."  *Id.*  The Ninth Circuit distinguished this confusion evidence, explaining "[t]his evidence, however, simply underscores customer confusion, not irreparable harm."  *Id.*  Further, the district court's

---

[12]    Injury is irreparable where it cannot be "adequately remedied by money damages and is often permanent or at least of long duration."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 54 (2008).

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 22
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

"approach collapses the likelihood of success and the irreparable harm factors." *Id.* at 1251. Similarly, in *Adidas v. Skechers*, the Ninth Circuit reversed an injunction because Adidas failed to provide concrete evidence of irreparable harm to its reputation and brand. *See* 890 F.3d 747, 760-61 (9th Cir. 2018) ("even if we agree with the district court that some consumers are likely to be confused . . . we cannot simply assume that such confusion will cause adidas irreparable harm where, as here, adidas has failed to provide concrete evidence that it will".)

In *Starbucks Corp. v. Glass*, the court denied Starbucks an injunction for want of evidence of irreparable harm, even though the Defendant used a "virtually identical" Starbucks logo on glass bongs and other marijuana paraphernalia. No. 2:16-CV-03937-ODW(PJW), 2016 U.S. Dist. LEXIS 145694, at *21 (C.D. Cal. Oct. 20, 2016) ("Starbucks has failed to show how any of these harms have actually transpired as a result of [defendant's] actions. Instead, it notes that some consumers have drawn an association between the Dabuccino products and Starbucks' Marks on social media").

Just like the plaintiffs in those cases, Plaintiff in this case made no evidentiary showing of irreparable harm. Plaintiff's bare "loss of control" allegation cannot be taken seriously, especially considering the countless industry players who brand materials with fierce and orange, and even others using the exact disputed mark "Fierce Loyalty." (Kolter Decl. Exs. 5-28, 36-42, 47-51.) Plaintiff cannot say with a straight face that Franklin Covey's book or website is the actual cause of any harm because the market is already packed with multiple lookalikes.

Finally, the two cases cited by Plaintiff are no help. The first case issued a post-trial permanent injunction and is distinct in two ways. One, the defendant's "own public relations consultant testified that she has confused the names Flowboard and Flipboard based upon the similarities between the two word marks" and the "record [wa]s also replete with instances of individuals referring to Flowboard as Flipboard." *Treemo, Inc. v. Flipboard, Inc.,* 53 F. Supp. 3d 1342, 1361 (W.D. Wash. 2014). Two, the plaintiff had commercially strong marks, which is

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 23
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

not the situation here. *Id.* at 1352-53. Plaintiff's second "case"[13] involved a very distinct fact pattern: former partners in now competing businesses using the same marks. *Usrey v. Chen*, No. CV 14-1134-GW(AJWX), 2014 WL 12570232, at *1-3 (C.D. Cal. May 29, 2014). Plaintiff has not established irreparable harm. The motion should be denied for this independent reason as well.

## E.   ON BALANCE, THE HARDSHIPS TIP IN FRANKLIN COVEY'S FAVOR.

Fierce admits that Franklin Covey has begun marketing its book and related services— granting an injunction would not be "preserving the *status quo*." Allowing Franklin Covey to continue with its business plans while it defends Fierce's demonstrably weak infringement claims preserves the *status quo*, not forcing Franklin Covey to delay for months if not years.[14]

## F.   GRANTING THE REQUESTED RELIEF ACTUALLY HARMS THE PUBLIC INTEREST.

Plaintiff's argument presupposes that there will be confusion, and, as demonstrated above, that is not the case here. Moreover, the public has a compelling interest in preventing the monopolization of common adjectives, such as the very common descriptor "fierce." *See Mytee Prods. v. Shop Vac Corp.*, Case No. 13-cv-1610, 2013 U.S. Dist. LEXIS 158539, at *18 (S.D. Cal. Nov. 4, 2013) ("[T]he public has a compelling interest in preventing the monopolization of common adjectives that can be used to describe a wide range of products."). The public interest in preventing the monopolization of the use of the color orange is even more compelling.

## G.   FRANKLIN COVEY HAS STRONG DEFENSES.

Finally, as discussed in detail in Franklin Covey's motion to dismiss and related reply, Franklin Covey's defenses are likely to succeed. (*See* Dkts. 9, 17.)

## III.   CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for a preliminary injunction.

---

[13]   Plaintiff cites an unreported, tentative ruling. *Usrey v. Chen*, No. CV 14-1134-GW(AJWX), 2014 WL 12570232, at *1 (C.D. Cal. May 29, 2014) ("the Court would likely GRANT their motion.")

[14]   Fierce asserts that "only a minimal bond is necessary" if the Court grants its motion. While Franklin Covey disputes that Fierce is entitled to any relief, Franklin Covey requests that it be permitted to address an appropriate bond if and when the issue is ripe.

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION - 24
2:18-CV-01449-MJP

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

DATED this 26th day of November, 2018.

DORSEY & WHITNEY LLP

_/s J. Michael Keyes_
J. MICHAEL KEYES WSBA #29215
KEYES.MIKE@DORSEY.COM
ERIN KOLTER WSBA #53365
KOLTER.ERIN@DORSEY.COM
**Dorsey & Whitney LLP**
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
(206) 903-8800

_Attorneys for Defendant Franklin Covey Co._

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

1

<u>CERTIFICATE OF SERVICE</u>

2
    I hereby certify that on this date I caused to be served the foregoing on the following

3
counsel of record by the method indicated:

4
Brian W. Esler, WSB No. 22168            ☐ Via Messenger
brian.esler@millernash.com               ☐ Via Facsimile
5
Vanessa L. Wheeler, WSB No. 48205        ☐ Via U.S. Mail
vanessa.wheeler@millernash.com           ☐ Via Electronic Mail
6
MILLER NASH GRAHAM & DUNN LLP            ☒ Via ECF Notification
7
Pier 70 – 2801 Alaskan Way, Suite 300
Seattle, WA 98121
8
Tel:  206-624-8300
Fax:  206-340-9599
9

10
Attorneys for Plaintiff Fierce, Inc.

11
    Dated this 26th day of November 2018.

12

13
                                        /s/ J. Michael Keyes
                                        J. Michael Keyes
14

15

16

17

18

19

20

21

22

23

24

25

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820