Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FIERCE, INC., a Washington corporation,

Plaintiff,

v.

FRANKLIN COVEY CO., a Utah corporation,

Defendant.

Case No. 2:18-cv-01449-MJP

PLAINTIFF'S REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

NOTED FOR CONSIDERATION: NOVEMBER 30, 2018



**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

## TABLE OF CONTENTS

**Page**

I. OVERVIEW OF REPLY ........ 1
II. ARGUMENT ........ 2
A. THE FIERCE MARKS AND TRADE DRESS ARE VALID AND ENFORCEABLE. ........ 3
1. Fierce has valid and enforceable trademark rights in its book titles. ........ 3
2. Fierce has a valid family of FIERCE marks. ........ 4
3. Fierce has valid and enforceable rights in its trade dress. ........ 5
B. DEFENDANT'S USE OF FIERCE LOYALTY IS LIKELY TO CAUSE CONFUSION AMONG THE CONSUMERS. ........ 6
1. The marks are virtually identical. ........ 7
2. The products and services are virtually identical. ........ 7
3. The marketing channels are identical. ........ 8
4. Fierce's marks are strong. ........ 9
5. Franklin Covey appears to have intentionally copied Fierce. ........ 9
6. There is already evidence of confusion. ........ 10
7. The likelihood of expansion into other markets. ........ 101
8. Purchasers are likely to exercise less care in picking the book or webinar, and are then more likely to buy Franklin Covey's more expensive offerings. ........ 11
C. FIERCE WILL SUFFER IRREPARABLE HARM. ........ 11
D. THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST WEIGH IN FIERCE'S FAVOR. ........ 11
III. CONCLUSION ........ 12



**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 $$ F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adidas America, Inc. v. Sketchers USA, Inc.*,
890 F.3d 747 (9th Cir. 2018) ....................................................6

*AMF, Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ....................................................6, 7, 10

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*,
457 F.3d 1062 (9th Cir. 2006) ....................................................10

*Borinquen Biscuit Corp. v. M.V. Trading Corp.*,
443 F.3d 112 (1st Cir. 2006)....................................................4, 7, 9

*Brookfield Communications, Inc. v. West Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999) ....................................................6, 11

*Brooklyn Brewery Corporation v. Black Ops Brewing, Inc.*,
156 F.Supp.3d 1173 (E.D. Cal. 2016)....................................................10

*Chalk v. U.S. Dist. Court*,
840 F.2d 701 (9th Cir. 1988) ....................................................2

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
251 F.3d 1252 (9th Cir. 2001) ....................................................5

*CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*,
617 F.Supp.2d 1051 (E.D. Cal. 2009)....................................................7, 9

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
158 F.3d 1002 (9th Cir. 1998) ....................................................5

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
300 F.Supp.3d 1073 (S.D. Cal. 2017)....................................................3

*EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*,
228 F.3d 56 ....................................................3

*Everett Labs, Inc. v. Breckenridge Pharm., Inc.*,
573 F. Supp. 2d 855 (D.N.J. 2008) ....................................................2

*Herbko Int'l v. Kappa Books, Inc.*,
308 F.3d 1156 (2002)....................................................3



**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 $$ F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*,
304 F.3d 936 (9th Cir. 2002) ....................6

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ....................2, 10

*Moroccanoil, Inc. v. Zotos Int'l, Inc.*,
230 F.Supp.3d 1161 (C.D. Cal. 2017) ....................5

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011) ....................6

*Official Airline Guides, Inc. v. Goss*,
6 F.3d 1385 (9th Cir. 1993) ....................9

*In re Scholastic, Inc.*,
23 U.S.P.Q.2d 1774 (TTAB 1992) ....................3

*Treemo, Inc. v. Flipboard, Inc.*,
53 F.Supp.3d 1342 (W.D. Wash. 2014)....................8, 9, 10, 11

*Usrey v. Chen*,
2014 WL 12570232 (C.D. Cal. May 29, 2014) ....................11

*Wild v. HarperCollins, LLC*,
2012 WL 12887690 (C.D. Cal. 2012)....................3

**Statutes**

15 U.S.C. § 1115(a) ....................4

15 U.S.C. § 1115(b) ....................7

15 U.S.C. §§ 1115(b), 1065 ....................4



**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 $$ F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

## I. OVERVIEW OF REPLY

Actions speak louder than words. Since Fierce filed its preliminary injunction motion, Franklin Covey has taken all the content off of its infringing domain at www.fierceloyalty.com, removed the Book from Amazon.com (although the audiobook still appears there), removed any mention of a publication date, and seems to have removed any mention of the book on its own website. Supp. Summers Decl., Exs. HH, II. Franklin Covey's only witness Mr. Miller admits he had "knowledge of Ms. Scott's company at the time" that Franklin Covey chose the infringing title for its book (and its website and new training offerings). Dkt. No. 20, at 3:22. That he claims to have stayed silent in the face of that knowledge is not a defense to trademark infringement. Franklin Covey offers no testimony from the Book's authors or anyone else involved, the absence of which speaks volumes. FIERCE LOYALTY is just a rebranded Franklin Covey training curriculum masquerading as a book. Franklin Covey's actions are those of a company aware of the likelihood of confusion, and of liability, who hoped that its smaller competitor would not protect its brand.

Fierce has a dozen registered marks starting with the word FIERCE, which marks are used for the same products and services as Franklin Covey offers – educational training services (commonly known as "business coaching") for business enterprises, which are routinely marketed and promoted through ancillary books. As Franklin Covey explains, it has had a loyalty training curriculum for years that did just fine without using FIERCE. Franklin Covey's attempt to downplay its knowledge of Fierce when it decided to rebrand and refresh that curriculum using a new brand that looks and sounds like Fierce's brand is, literally, incredible (as in "not credible"). For instance, last year, Franklin Covey was named one of TrainingIndustry.com's top 20 Sales Training companies and sent out a press release with a link to the site where the award appears (Supp. Summers Decl., Ex. MM); TrainingIndustry.com named Fierce as one of its "Companies to Watch" just below Franklin Covey on that exact same website that same year. Engle Decl., Ex. 1, Supp. Summers Decl., Ex. LL. Mr. Miller reached



MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

out to Fierce's president Stacey Engle to connect on social media earlier this year before the lawsuit was filed. Engle Decl., Ex. 3. Discovery will reveal the extent of Franklin Covey's knowledge; but as Mr. Miller admits, Franklin Covey knew about Fierce during its rebranding efforts.

The likelihood of confusion will just increase the longer Franklin Covey is allowed to promote its training services under the FIERCE brand. By way of example, Fierce just discovered that Franklin Covey will be promoting its FIERCE LOYALTY training services at a major conference next year in the very same session at which a Fierce trainer is speaking. Wheeler Decl., Ex. 1. Confusion is inevitable. It is difficult to quantify harm to a brand, especially when it is a much larger competitor who is sowing the confusion, but because such harm is difficult to quantify, it should also be considered irreparable. *Everett Labs, Inc. v. Breckenridge Pharm., Inc*., 573 F.Supp.2d 855, 868 (D.N.J. 2008). Given that Franklin Covey has already removed the content from the website and seems to be rapidly removing references to the Book, granting an injunction now will just preserve the current status quo pending a determination on the merits. *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988). Fierce's motion should be granted.

## II. ARGUMENT

For a preliminary injunction motion, especially one that is brought before any discovery occurs, the Court has discretion to consider even otherwise inadmissible evidence, including hearsay. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Defendant argues repeatedly that Fierce has not provided enough specifics on its business and marketing expenditures. But Fierce has been seeking Defendant's agreement to the Western District's standard protective order for almost a month now without any meaningful response. Supp. Summers Decl., Ex. QQ. Defendant's complaint that Fierce has not publicly divulged proprietary and confidential business information rings hollow given Defendant's failure to cooperate on even this most commonplace practice. Even without discovery, Fierce has shown



MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

that it is likely to succeed on the merits of its claims or has at least raised serious questions concerning the merits, that the balance of hardships tips in Fierce's favor, that it will suffer irreparable harm if Defendant is allowed to trade on Fierce's valuable brand, and that the public interest therefore favors an injunction.

## A. THE FIERCE MARKS AND TRADE DRESS ARE VALID AND ENFORCEABLE.

Fierce has valid and enforceable rights to the FIERCE marks in connection with its book titles, to the federally-registered FIERCE family of marks, and to the Fierce trade dress. (i.e., Fierce Orange used in conjunction with the FIERCE marks).

### 1. Fierce has valid and enforceable trademark rights in its book titles.

Fierce's use of FIERCE in connection with its books is protectable. *E.g., Herbko Int'l*, 308 F.3d at 1162 n.2; *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 63 (2d Cir. 2000; *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 300 F.Supp.3d 1073, 1084 (S.D. Cal. 2017) (all recognizing the protectibility of book titles). More importantly, the titles of books in a series are protectable and registrable, without any showing of secondary meaning, because they act as a source identifier. *Wild v. HarperCollins, LLC*, 2012 WL 12887690, *3-4 (C.D. Cal. 2012); *In re Scholastic, Inc.*, 23 U.S.P.Q.2d 1774 (TTAB 1992).

Defendant is well aware that Fierce's rights are protectable as it has argued the same itself for its book titles:

> Franklin Covey is the owner of numerous trademarks that have been used to protect, signify, and distinguish its book, THE 7 HABITS OF HIGHLY EFFECTIVE PEOPLE, and many other books, products, and services that carry the term "7 Habits" or terms similar to it, in their titles, such as THE 7 HABITS OF HIGHLY EFFECTIVE TEENS, THE 7 HABITS OF HIGHLY EFFECTIVE FAMILIES, and THE 8TH HABIT. Collectively, these products and services make up Defendant's 7 HABITS brand. Franklin Covey has invested immense resources in creating, adapting, and promoting the 7 HABITS brand, which has become one of its core product lines.

Summers Decl., Exs. T, V (Dkt. No. 12). Defendant's arguments that somehow Fierce's books operate differently (after a decade of continuous publication and association with Fierce) are



MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

disingenuous. Defendant repeatedly refers to the wide range of other books that include "Fierce" in the title, but does not show that any of those books are related to providing services in the corporate training industry where Fierce and Franklin Covey compete. At this stage of the proceedings, Fierce has provided sufficient evidence to show that its books are a series and serve a source-identifying function for business customers.

Franklin Covey cannot dispute that such books are a means of promoting Fierce's competing training services, as it uses its books in the same way. Training services providers (such as Fierce and Franklin Covey) often build their brands for their services around such a "series of business books, which books then help drive sales of the company's training services." Schmidt Decl., ¶ 5. Fierce's book titles are valid source identifiers of Fierce's goods and services, in the very same manner as Defendant's 7 HABITS book titles.

2. <u>Fierce has a valid family of FIERCE marks.</u>

Fierce has obtained a dozen FIERCE-related federal registrations for essentially the same described services, i.e., "educational services, namely, conducting classes, seminars, conferences and workshops in the field of business management and interpersonal communications." Fierce's registrations are "evidence and shall be prima facie evidence" of the validity of the registered marks, Fierce's ownership of those marks and of its "exclusive right to use the registered mark in commerce on or in connection with the goods and services specified in the registration. . . ." 15 U.S.C. § 1115(a). Most of those registered trademarks are now incontestable. 15 U.S.C. §§ 1115(b), 1065. Those incontestable registrations are conclusive proof that those marks are inherently distinctive for those services. *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006).

Franklin Covey's argument that Fierce has no family of marks almost ignores these central tenets of trademark law. Franklin Covey's own complaints recognize that its own family of marks in the same field "conveys the common source and origin of all [the mark holder's] products and services." Summers Decl., Exs. T, ¶12; V, ¶16 (Dkt. No. 12). Franklin Covey's



MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

other arguments about book titles and use of orange are an attempt to distract from the inescapable conclusion that Fierce has the "exclusive right to use" the FIERCE marks in connection with training services – and Franklin Covey is now trying to use a confusingly similar mark in exactly the same field.

3. <u>Fierce has valid and enforceable rights in its trade dress.</u>

Trade dress "refers to the 'total image of a product' and may include features such as size, shape, color, color combinations, texture or graphics." *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F.Supp.3d 1161, 1171 (C.D. Cal. 2017), quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). A product feature is only considered functional if it is necessary to the product or affects the cost and/or quality of the product such that it would put competitors at a non-brand-related disadvantage not to use it. *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998). Individual elements that are functional separately can still be protected together as part of a whole, as the focus of a trade dress claim is on the "overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001). Where the individual elements of trade dress appear to serve a "purely aesthetic purpose comprised of specific colors, fonts and styles," the trade dress as a whole will be considered non-functional. *Moroccanoil, Inc.*, 230 F.Supp.3d at 1171. Similarly, where trade dress "is based on packaging which does not appear to have any inherent meaning and does not describe the product," such that its primary purpose is identification, the trade dress is considered distinctive and does not require a showing of secondary meaning. *Id*. at 1172.

Franklin Covey's arguments ignore Fierce's actual claims regarding its trade dress. Fierce does not claim trademark rights in its Fierce Orange standing alone. Scott Decl., ¶ 19 (Dkt. No. 13). Rather, it is the combination of the FIERCE marks with that color orange that consumers associate with Fierce. Scott Decl., ¶ 19 (Dkt. No. 13). Defendant's arguments ignore that central assertion. Franklin Covey offers no evidence to suggest that the color orange is



**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

necessary for training services and related products (such as books) or that Franklin Covey would be at a non-brand-related disadvantage if it could not use FIERCE with a similar orange. Orange is not "functional" for training services, and Franklin Covey can point to no example of training services providers using FIERCE with a similar Fierce Orange (other than its own recent use).

**B. DEFENDANT'S USE OF FIERCE LOYALTY IS LIKELY TO CAUSE CONFUSION AMONG THE CONSUMERS.**

Fierce explained in its opening brief how each of the eight factor *Sleekcraft* factors[1] favors Fierce. The relative importance of each factor is case-specific, and "only a subset of the *Sleekcraft* factors are needed to reach a conclusion as to whether there is a likelihood of confusion." *Adidas America, Inc. v. Sketchers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000)); *see also*, *Brookfield Communications, Inc. v. West Coast Ent. Corp*., 174 F.3d 1036, 1054 (9th Cir. 1999). When the infringement occurs on the Internet and especially if it involves domain names, the most important factors are the first three (*i.e.*, similarity of marks, services and marketing channels). *Interstellar Starship Servs., Ltd. v. Epix, Inc*., 304 F.3d 936, 942 (9th Cir. 2002). Contrary to Defendant's assertion, *Network Automation, Inc. v. Advanced Systems Concepts, Inc.* does not foreclose the "troika" analysis here. There, the Ninth Circuit noted that the focus on the first three *Sleekcraft* factors was appropriate in certain disputes, such as those involving websites with similar names or appearances. *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1148-49 (9th Cir. 2011). It only held that in the specific context where the alleged infringement arose from use of search engine keywords (where the trademark was not otherwise used or even visible to consumers), the "troika" analysis was not appropriate. *Network Automation*, 638 F.3d at 1142, 1148-49. Such is not the case here.

---

[1] (1) similarity of the marks; (2) relatedness of the two companies' services; (3) marketing channels used; (4) strength of the plaintiff's marks; (5) defendants intent in selecting its marks; (6) evidence of actual confusion; (7) likelihood of expansion into other markets; and (8) degree of care likely to be exercised by the purchasers. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).



MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1. The marks are virtually identical.

The marks should be viewed in their entireties, including their commercial presentation in the marketplace, and where the marks consist of a two-word composite beginning with the same word and creating an overall similar commercial impression, consumer confusion is more likely. *See CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*, 617 F.Supp.2d 1051, 1066 (E.D. Cal. 2009) (finding that even where house marks were used, MUSCLE MILK and MUSCLE POWER were similar enough in sight, sound and meaning to create consumer confusion, particularly where the basic packaging of the product was similar). Furthermore, similarities in the marks weigh more heavily than differences. *Sleekcraft*, 599 F.2d at 351. Even the use of house marks (such as Franklin Covey's small print "From the loyalty experts at Franklin Covey") is not enough to overcome the likelihood of confusion where the primary focus is on the infringing mark. *CytoSport*, 617 F.Supp.2d at 1066.

Fierce is conclusively presumed to have the "exclusive right to use" its FIERCE marks for educational services in the field of business management. 15 U.S.C. § 1115(b); *Borinquen Biscuit*, 443 F.3d at 117. Defendant attempts to negate the similarities by emphasizing the taglines for the books; however, Defendant's relevant products and services are known by FIERCE LOYALTY, not FIERCE LOYALTY CRACKING THE CODE TO CUSTOMER DEVOTION. *See*, e.g. Summers Decl., Ex. S. FIERCE LOYALTY creates too similar of a commercial impression, particularly where it is used on a website with an infringing domain name and in conjunction with packaging and presentation similar to that of Fierce.

2. The products and services are virtually identical.

Defendant acknowledges that it provides corporate training programs to clients ranging from small companies to Fortune 100 companies, as Fierce does, and that it serves "organizations of all kinds." Summers Decl., Ex. U, ¶ 18. Defendant's focus on the fact that it does not serve start-ups is misplaced, and Defendant provides no support for its argument that Fierce must apportion the percentage of its business that serves start-ups before Fierce can claim



MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

similarity of goods and services. Fierce has provided plenty of evidence that Defendant is one of Fierce's largest competitors in the business training and education space. See also Engle Decl., ¶ 5. Ex. 3; Supp. Summers Decl., Ex. LL, Wheeler Decl., Ex. 1.

Defendant has acknowledged in previous court filings that it provides products and services similar to those of Fierce, noting that its 7 HABITS book and related materials, planning tools, and training courses form a core service offered by Franklin Covey to business organizations of all kinds. Summers Decl., Exs. T, V (Dkt. No. 12). It is disingenuous for Defendant to even suggest that this factor does not tip heavily in favor of Fierce.

3. <u>The marketing channels are identical.</u>

The concurrent use of the internet as a marketing tool is still a factor that exacerbates likelihood of confusion where both parties use the internet as a significant marketing and advertising channel, the parties' marks are used in conjunction with web-based products, and/or the parties' marketing channels overlap in any other way. *Treemo, Inc. v. Flipboard, Inc.*, 53 F.Supp.3d 1342, 1363 (W.D. Wash. 2014).

Both parties use other similar marketing channels as well. Indeed, as explained in Franklin Covey's own complaints, and confirmed by an industry expert (Ms. Schmidt), book publishing is a primary means of marketing training services. Although Franklin Covey disputes that the term "net loss" in its securities filings means just that, it does not dispute that it explained to its shareholders that book publishing is a loss-leader for promoting its more valuable and lucrative training services. Summers Decl., Ex. Y. Most training companies (including Fierce) use their books in the same way. Schmidt Decl., ¶ 5. Franklin Covey's singular focus on book titles separate from their marketing function ignores how this industry operates. *The Book* ***is*** *the marketing channel*.

And that is not the only similarity. Franklin Covey also uses keynotes and free webinars to promote its services, just like Fierce. Indeed, a search of the word "fierce" on the website of a major training services clearinghouse shows an offer for Frankin Covey's rebranded FIERCE



MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

LOYALTY trainings immediately above an offer for a FIERCE CONVERSATIONS webinar. Supp. Summers Decl., Ex. KK. One of the Book's authors is speaking at an industry conference next year to promote Franklin Covey's rebranded FIERCE LOYALTY trainings immediately before a Fierce trainer presents on Fierce's competing trainings. Wheeler Decl., Ex. 1. The marketing channels are identical.

4. Fierce's marks are strong.

Trademarks are only considered "descriptive" if they directly describe an aspect of the product or service. *CytoSport*, 617 F.Supp.2d at 1070; *Treemo, Inc.*, 53 F.Supp.3d at 1353. Where any imagination is required at all to determine the nature of the product, the mark is either suggestive, arbitrary, or fanciful, all of which are afforded trademark protections. *Treemo, Inc.*, 53 F.Supp.3d at 1353. The PTO did not ask Fierce to prove secondary meaning, which also shows that Fierce's marks are not descriptive (and is conclusive proof of non-descriptiveness for its incontestable marks). *Borinquen*, 443 F.3d at 117.

Not only can the term FIERCE mean any number of different things when used to describe various nouns, as Franklin Covey recognizes, but none of Fierce's uses of the terms describes directly educational and training services in the business management industry. Fierce's marks are at least suggestive, and as described in greater detail in the motion, Fierce has established a well-recognized and acclaimed brand within its industry. The strength of Fierce's marks weighs in favor of a finding of infringement, especially given its family of marks. *See also* Engle Decl., Ex. 4 (media mentions of Fierce in 2018).

5. Franklin Covey appears to have intentionally copied Fierce.

When a competitor knowingly adopts a mark similar to another's mark for similar goods and services, "courts will presume an intent to deceive the public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993). The defendant does not have to act with specific intent to deceive; rather, this factor favors a finding of a likelihood of confusion "when the



MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

alleged infringer knowingly adopts a mark similar to another's" mark. *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006).

Franklin Covey admits that one of its top marketing executives knew of Fierce during the sessions at which Franklin Covey undertook its rebranding efforts. Dkt. No. 20, ¶ 9. There has been no discovery but Franklin Covey's failure to produce any other testimony from anyone else involved in its rebranding efforts speaks volumes. Franklin Covey knew about Fierce before it began rebranding. Supp. Summers Decl., Exs. LL, MM. That is enough for intent at this stage.

6. There is already evidence of confusion.

While actual consumer confusion is always probative of the likelihood of confusion, it is difficult to prove, and therefore "the absence of such evidence is generally not noteworthy." *Treemo, Inc.*, 53 F.Supp.3d at 1360. Where it exists at all, evidence of actual confusion is "persuasive proof that future confusion is likely. *Sleekcraft*, 599 F.2d at 352. This factor is weighed heavily only "when the particular circumstances indicated such evidence should have been available." *Brooklyn Brewery Corporation v. Black Ops Brewing, Inc.*, 156 F.Supp.3d 1173, 1182 (E.D. Cal. 2016).

Fierce has provided the Court with the only evidence of actual confusion so far.[2] Courts are allowed to consider hearsay at the preliminary injunction stage. *Johnson*, 572 F.3d at 1083 (9th Cir. 2009). As the Book has not yet been published and Franklin Covey is just starting to promote its brand, any instance of even possible confusion is probative.

7. The likelihood of expansion into other markets.

Franklin Covey does not really dispute that both companies already operate in the same field; to the extent this factor matters at all, it favors Fierce as senior mark holder.

---

[2] Franklin Covey suggests that Fierce needs to present survey evidence, but Fierce does not even have a copy of the Book yet as no discovery has occurred. There is no requirement for survey evidence, especially at this early date.



MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

8. <u>Purchasers are likely to exercise less care in picking the book or webinar, and are then more likely to buy Franklin Covey's more expensive offerings.</u>

When purchasing inexpensive products (such as books or free webinars), customers are likely to exercise less care, thus making confusion more likely. *Brookfield*, 174 F.3d at 1060. Franklin Covey points to the cost of its seminar to suggest that consumers will be more discerning, but as Fierce has pointed out, there is a significant risk of initial confusion regarding the FIERCE LOYALTY Book itself. The book costs less than twenty dollars, and consumers are therefore less likely to exercise case in selecting the book and then being steered toward Franklin Covey's other offerings. The low cost of the FIERCE LOYALTY Book, in conjunction with the similarities between it and those of Fierce, weigh in favor of a finding of infringement.

## C. FIERCE WILL SUFFER IRREPARABLE HARM.

Although Franklin Covey appears to have disabled its website, it is still promoting its educational offerings under the FIERCE LOYALTY brand. If the Court does not enjoin such use, Fierce will be further harmed by its largest competitor using a mark so similar to Fierce's own marks. In the training services industry, "[r]eputation is an important factor" for attracting customers, Engle Decl., Ex. 4. Harm to goodwill and reputation, and loss of control over goods and services provided under a mark, are harms that are inherently irreparable, because although those harms are very real, they are also very hard to measure as damages. *Usrey v. Chen*, 2014 WL 12570232, at *7 (C.D. Cal. May 29, 2014) (citing cases), *Treemo, Inc. v. Flipboard, Inc*., 53 F.Supp.3d 1342, 1367 (W.D. Wash. 2014).

## D. THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST WEIGH IN FIERCE'S FAVOR.

Since the filing of Fierce's motion, Franklin Covey has disabled its website and removed some instances of the Book's advertising, thus acknowledging the strength of Fierce's marks, and of its case. By entering a preliminary injunction now, the Court will largely be preserving the status quo for trial. Franklin Covey can offer the same goods and services under the trademarks it has always used in the meantime.



MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

## III. CONCLUSION

For all the foregoing reasons, this Court should grant Fierce's motion for a preliminary injunction to preserve the status quo pending trial.

DATED this 30th day of November, 2018.

MILLER NASH GRAHAM & DUNN LLP

*s/ Brian W. Esler*
Brian W. Esler, WSB No. 22168
brian.esler@millernash.com
*s/ Vanessa L. Wheeler*
Vanessa L. Wheeler, WSB No. 48205
vanessa.wheeler@millernash.com
Pier 70 ~ 2801 Alaskan Way, Suite 300
Seattle, Washington 98121
Tel: 206-624-8300 / Fax: 206-340-9599

Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on November 30th, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. Michael Keyes - keyes.mike@dorsey.com

Erin C. Kolter - kolter.erin@dorsey.com

DATED this 30th day of November, 2018.

*s/ Gillian Fadaie*
Gillian Fadaie, Legal Assistant

4850-4187-6865.3



**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121