

| | |
|---|---|
| | UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT SEATTLE |

| | |
|---|---|
| FIERCE, INC,<br><br>                     Plaintiff,<br><br>     v.<br><br>FRANKLIN COVEY CO,<br><br>                     Defendant. | CASE NO. C18-1449-MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS;<br><br>GRANTING MOTION FOR RELIEF FROM DEADLINE |

THIS MATTER comes before the Court on and Defendant's Motion to Dismiss (Dkt. No. 9.) Having reviewed the Motion, the Response (Dkt. No. 15), the Reply (Dkt. No. 17); the briefing related on the Motion for a Preliminary Injunction (Dkt. Nos. 11, 19, 23, 29, 30); the briefing on the related Motion for Relief from Deadline (Dkt. Nos. 40, 43) the Supplemental Statements (Dkt. Nos. 39, 44, 46), and the related record, and having considered the submissions of the parties at oral argument, the Court GRANTS IN PART and DENIES IN PART the Motion to Dismiss and GRANTS the Motion for Relief from Deadline.

**Background**

In October 2018, Plaintiff Fierce, Inc. ("Fierce Inc.") filed this action against Defendant Franklin Covey, Co. ("Franklin Covey") alleging trademark infringement, trade dress infringement, and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125 and Washington's Consumer Protection Act, RCW 19.86 et seq. (Dkt. No. 1 ("Complaint").)

Fierce Inc. is a provider of corporate training materials intended to help businesses "increase engagement and loyalty from both employees and customers." (Id. at ¶ 23.) Fierce Inc.'s Founder and CEO Susan Scott has written two best-selling books under the FIERCE brand: *Fierce Conversations: Achieving Success at Work & In Life, One Conversation at a Time* ("*Fierce Conversations*") and *Fierce Leadership, A Bold Alternative to the Worst "Best" Practices of Business Today* ("*Fierce Leadership*") (collectively, the "Fierce Books"). (Id. at ¶ 27.) Additionally, Fierce Inc. is the owner of registered trademarks including FIERCE, FIERCE CONVERSATIONS, FIERCE LEADERSHIP, FIERCE GENERATIONS, FIERCE ACCOUNTABILITY, FIERCE COACHING, FIERCE TEAM, FIERCE CONFRONTATION, FIERCE FEEDBACK, FIERCE DELEGATION, and FIERCE NEGOTIATIONS. (Id. at ¶ 6.)

Like Fierce Inc., Franklin Covey also provides corporate training materials, including books, trainings, workshops, and other educational services. (Id. at ¶ 28.) Franklin Covey is known for its *7 Habits* series, based on its best-selling *7 Habits of Highly Effective People*. (Id.) When Fierce Inc. initially filed its Complaint, Franklin Covey was in the process of publishing a book entitled *Fierce Loyalty: Cracking the Code to Customer Devotion* ("*Fierce Loyalty*"). (Id. at ¶ 30.) The book was set to be released in November 2018, and was made available for pre-orders on Amazon.com. (Id. at ¶¶ 33-34.) According to the Complaint, the cover of *Fierce*

*Loyalty* used a typeface and orange color scheme "nearly identical" to those of *Fierce Leadership* and *Fierce Conversations*:



(Id.)  In addition, Franklin Covey established a website (www.fierceloyalty.com), where it offered "advance praise" for the book from "today's thought leaders," and invited customers to read an excerpt, pre-order the book, and sign up for a related webcast series.  (See Dkt. No. 10, Ex. 18.)  According to the Complaint, www.fierceloyalty.com also used the same orange color scheme, "creating the impression that [Franklin Covey's] books, trainings, and programs are somehow associated with or authorized by" Fierce Inc.  (Id. at ¶ 32.)

In October 2018, Franklin Covey filed its Motion to Dismiss.  (Dkt. No. 9.)  In November 2018, Fierce Inc. filed its Motion for Preliminary Injunction, seeking to enjoin Franklin Covey from using "Fierce Loyalty" as the title of its upcoming book, and from using the word "fierce" in the title or subtitle of any work and on any page with any form of the color orange.  (See Dkt. No. 11.)  In January 2019, as the motions were pending, Franklin Covey changed the name of its upcoming book to *Leading Loyalty: Cracking the Code to Customer Devotion*; removed the listing for *Fierce Loyalty* from Amazon.com; removed all references to the book from its own

website, and removed all content from www.fierceloyalty.com. (See Dkt. No. 23; Dkt. No. 35 at ¶ 5.) Shortly thereafter, www.fierceloyalty.com began redirecting to another website, www.leadingloyaltybook.com. (Dkt. No. 35.) A listing for *Leading Loyalty* on Amazon indicates that the book will be released on April 16, 2019. See *Leading Loyalty: Cracking the Code to Customer Devotion*, Amazon, http://www.amazon.com/Leading-Loyalty-Cracking-Customer-Devotion-ebook/dp/B07C66221W/ (last visited Mar. 28, 2019).

In March 2019, Franklin Covey indicated that it would no longer use the www.fierceloyalty.com domain name. (Dkt. No. 44.) However, Franklin Covey reserves the right to use "fierce" "in a title or elsewhere for future works." (Dkt. No. 39.) Based on these representations, Fierce Inc. has withdrawn its pending Motion for Preliminary Injunction. (Id.) Nevertheless, Fierce Inc. contends that it "was still damaged (and Franklin Covey unjustly enriched) by the infringing behavior, and . . . has the right to continue to seek damages, statutory damages, disgorgement, an accounting, attorney fees and costs, corrective advertising, a permanent injunction, and any other relief appropriate." (Dkt. No. 46.) Additionally, Fierce Inc. contends that it has a claim for cybersquatting under 15 U.S.C. § 1125(d), and should be granted leave to file an amended complaint. (Id.; see also Dkt. No. 40.)

## Discussion

### I. Legal Standard

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th Cir. 2016). In ruling on a Rule 12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint in the light most favorable to the non-movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc.,

135 F.3d 658, 661 (9th Cir. 1998). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (1955)).

## II. Request for Judicial Notice

As an initial matter, Franklin Covey asks the Court to take judicial notice of: (1) records from the United States Patent and Trademark Office; (2) the multiple editions and formats of *Fierce Conversations*; (3) the listing for *Fierce Loyalty* as it initially appeared on Amazon.com; (4) www.fierceinc.com and www.fierceloyalty.com; and (5) the Merriam Webster definition of "fierce." (Dkt. No. 9, Ex. 1.) None of these records were attached to the Complaint, and Fierce Inc. opposes their consideration on its motion to dismiss.

In general, the Court may not consider materials beyond the pleadings in ruling on a motion to dismiss without converting it into a motion for summary judgment. See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). However, even where a document is not physically attached to the complaint, it may be considered on a motion to dismiss where (1) its authenticity is not contested and the plaintiff's complaint necessarily relies upon the document or (2) it is subject to judicial notice. Id. at 688; Mack v. South Bay Beer Distrib., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986). Fed. R. Evid. 201(b) provides that "the court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Civ. P. 201(c).

### A. USPTO Records

These records include (1) various U.S. Trademark Registrations for entities unrelated to Fierce Inc. (Dkt. No. 10, Exs. 1-7) and (2) U.S. Trademark/Service Mark Applications for

FIERCE LEADERSHIP and FIERCE CONVERSATIONS (Dkt. No. 10, Exs. 8-9). (See Dkt. No. 9 at 11-12.) While the Court may take judicial notice of USPTO records as materials made publicly available by a governmental entity, it may do so "only for the limited purpose of demonstrating that the filings and actions described therein occurred on certain dates." See Pinterest Inc. v. Pintrips Inc., 15 F. Supp. 3d 992, 997 (N.D. Cal. 2014). Because the dates on which the FIERCE marks were registered is not in dispute, the Court DENIES the request.

### B. Amazon Listings for Previous Editions of *Fierce Conversations*

These records include screenshots of Amazon.com listings for earlier editions of *Fierce Conversations*. (Dkt. No. 10, Exs. 10-15.) Fierce Inc. alleges that Franklin Covey has infringed its *existing* trade dress, which it has used since at least 2009. (See Dkt. No. 1 at ¶ 27.) Because the fact that Fierce Inc. has not always used the same trade dress in connection with its books is irrelevant, and because the evidentiary value of these records is subject to reasonable dispute, the Court DENIES the request.

### C. Dictionary Definition of "Fierce"

This record is a screenshot of a definition of "fierce" in the Merriam-Webster Online dictionary. (Dkt. No. 10, Ex. 16.) Because a dictionary is not a source whose accuracy reasonably can be questioned, and because the meaning of the term is not central to the litigation, the Court GRANTS the request. See, e.g., Wilshire Westwood Assocs. v. Atl. Richfield Corp., 881 F.2d 801, 803 (9th Cir. 1989) (taking judicial notice of definitions in Webster's Third New International Dictionary); Walker v. Woodford, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006) (explaining that dictionaries are "sources whose accuracy cannot reasonably be questioned" for purposes of judicial notice); Romero v. Flowers Bakeries, LLC, 2015 WL 2125004, at *2 (N.D. Cal. May 6, 2015) (explaining that dictionary definitions are "not subject to reasonable dispute").

**D. Amazon Listing for *Fierce Loyalty*; Screenshots of www.fierceloyalty.com and www.fierceinc.com**

These records include screenshots of (1) the Amazon.com listing for *Fierce Loyalty* as it appeared in October 2018 (Dkt. No. 10, Ex. 17); (2) www.fierceloyalty.com as it appeared in October 2018; and (3) www.fierceinc.com as it appeared in October 2018. Because each of these records is incorporated by reference into the Complaint, the Court GRANTS the request.

The Court will take judicial notice of Exhibits 16 and 17 to the Declaration of Erin C. Kolter.

**III. Trademark and Unfair Competition Claims**

Franklin Covey contends that Fierce Inc.'s trademark and unfair competition claims should be dismissed as a matter of law because (1) "Fierce" is descriptive and entitled to fair use; (2) "Fierce" as used in *Fierce Loyalty* does not function as a source identifier; and (3) *Fierce Loyalty* is an expressive work and does not explicitly mislead customers. (Dkt. Nos. 9, 46.) The Court considers each of these contentions in turn:

**A. Fair Use**

The "fair use" defense applies where "use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin . . . ." 15 U.S.C. § 1115(b)(4). To establish fair use, a defendant must prove that (1) it does not use the term as a trademark; (2) it uses the term "fairly and in good faith"; and (3) it uses the term "[o]nly to describe its goods or services." Cairns v. Franklin Mint Co., 292 F.3d 1139, 1151 (9th Cir. 2002) (internal quotation marks and citations omitted). In the Ninth Circuit, the fair use defense "is not available if there is a likelihood of customer confusion as to the origin of the product." Id.

1   The Court finds that that Franklin Covey is not entitled to a fair use defense as a matter of
2   law, as Fierce Inc. has alleged facts giving rise to a reasonable inference that there is a likelihood
3   of customer confusion.

**(1) Likelihood of Confusion**

Likelihood of confusion is evaluated based upon factors including: (1) strength of the mark; (2) proximity of the products or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.[1]  AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1999).  No single factor is determinative, Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1391 (9th Cir. 1993), and a "plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them."  Pom Wonderful, 775 F.3d at 1125 (citation omitted).

The Court finds that the following factors favor Fierce Inc.:

**(i)    Strength of the Mark**

Strength is evaluated in terms of its "conceptual" strength and "commercial" strength. See Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011). "Conceptual strength involves classification of a mark 'along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful.' A mark's conceptual strength depends largely on the obviousness of its connection to the good or service to which it refers." Id. (citation omitted). "Commercial strength is based on 'actual

---

[1] From the facts alleged in the Complaint, the Court cannot make any determination as to marketing channel convergence, degree of consumer care, or product expansion.  For purposes of this motion, the Court finds that these factors favor neither Fierce Inc. nor Franklin Covey.

marketplace recognition," Brookfield, 174 F.3d at 1058, and is evaluated based on advertising, length of time of exclusive use, and public recognition." Entrepreneur Media, 279 F.3d at 1144.

This factor favors Fierce Inc. With respect to conceptual strength, the Court finds that "Fierce" is, at a minimum, suggestive. In determining whether a mark is suggestive or merely descriptive, the Ninth Circuit generally considers whether "'imagination' or a 'mental leap' is required in order to reach a conclusion as to the nature of the product being referenced.'" Rudolph Intern., Inc. v. Realys, Inc., 482 F.3d 1195, 1198 (9th Cir. 2007) (citation omitted). "Fierce" does not immediately bring to mind businesses, employee or customer engagement, or the qualities and characteristics of organizational leaders. Cf. Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1142 (9th Cir. 2002) (finding ENTREPRENEUR as applied to a magazine for "small businesses and their owners" descriptive as it "describes both the subject matter and the intended audience of the magazine" and "an entirely unimaginative, literal-minded person would understand the significance of the reference."). Instead, a "mental leap" is required to reach a conclusion about the nature of the products and services offered by Fierce Inc.

Evaluating the commercial strength of "Fierce" is an "evidence-intensive inquiry," Network Automation, 638 F.3d at 1150, and cannot be undertaken at the motion to dismiss stage. In any event, the Complaint adequately alleges that "Fierce" is recognizable. (See Dkt. No. 1 at ¶¶ 21-22, 24-25.)

**(ii) Proximity of the Products or Services**

Related products or services are those that, "though not identical, are related in the minds of the consumers" and "would be reasonably thought by the buying public to come from the same source if sold under the same mark." Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1363 (9th Cir. 1985); Sleekcraft, 599 F.2d at 348 n.10. "When the goods produced by the

alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." Sleekcraft, 599 F.2d at 348. This factor favors Fierce Inc., as the Complaint alleges that Fierce Inc. and Franklin Covey are direct competitors and provide similar products and services—corporate training materials in the form of books, workshops, seminars, etc. intended for businesses and corporate audiences. (Dkt. No. 1 at ¶¶ 6, 23; see also Dkt. No. 9 at 9.)

### (iii) Similarity of the Marks

"[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." GoTo.Com, Inc. v. Walt Disney, 202 F.3d 1199, 1206 (9th Cir. 2000). In evaluating similarity, (1) marks must be considered in their entirety and as they appear in the marketplace; (2) compared on appearance, sound, and meaning; and (3) similarities weigh more heavily than differences. See Entrepreneur Media, 279 F.3d at 1144. "Comparison of the visual appearance of two marks can involve consideration of color of lettering and/or background, font or typeface, and the overall style or appearance of the marks." Playmakers, LLC v. ESPN, Inc., 297 F. Supp. 2d 1277, 1282 (W.D. Wash. 2003), aff'd, 376 F.3d 894 (9th Cir. 2004).

This factor favors Fierce Inc. Fierce Inc. alleges, and the Complaint reveals, that the similarities between *Fierce Loyalty* and the Fierce Books are unmistakable. Both feature the word "Fierce" centered at the top of the cover, with the modified noun (e.g., "Conversations," "Leadership," "Loyalty") centered below. Both prominently feature the same shade of orange. Both use a similar, if not identical, typeface for the title. (See Dkt. No. 1 at ¶ 33.) While Franklin Covey claims that "[t]he visual appearance of [its] book is distinct" from the Fierce Books because it "uses an orange background, whereas [Fierce Inc.'s] books use white backgrounds," and "[t]he arrangement of subtitles differs on each book in size, location, and

typeface" (Dkt. No. 19 at 23), "what is critical is the *overall* appearance of the mark as used in the marketplace, not a deconstructionalist view of the different components of the marks." Playmakers, 297 F. Supp. 2d at 1283. As one court has noted, because "few would be stupid enough to make exact copies of another's mark or symbol . . . the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts." Baker v. Master Printers Union, 34 F. Supp. 808, 811 (D.N.J. 1940).

### (iv) Evidence of Actual Confusion

Where "a showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion," Playboy Enters., Inc. v. Netscape Commc'ns Corp, 354 F.3d 1020, 1026 (9th Cir. 2004), evidence of "actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act." Network Automation, 638 F.3d at 1151 (citations omitted). Indeed, the Ninth Circuit has recognized that "[p]roving actual confusion is difficult." Id. (quoting Sleekcraft, 599 F.2d at 352.) This factor favors Fierce Inc., as the Complaint alleges that Fierce Inc. "only discovered [Franklin Covey]'s confusingly similar use . . . as a result of a customer who contacted [Fierce Inc.] regarding the advance copy the customer received . . . ." (Dkt. No. 1 at ¶ 38.)

### (i) Defendant's Intent

"When one party knowingly adopts a mark similar to another's, reviewing courts presume that the defendant will accomplish its purpose, and that the public will be deceived." Acad. Of Motion Picture Arts & Scis. v. Creative House Promotions, Inc., 944 F.2d 1446, 1456 (9th Cir. 1991) (citing Sleekcraft, 599 F.2d at 354). This factor favors Fierce Inc., as the Complaint alleges that Franklin Covey is "willfully and knowingly infringing," and is using the

FIERCE mark "with the intention of deceiving and misleading the consuming public and by wrongfully trading on Plaintiff's goodwill and reputation." (Dkt. No. 1 at ¶ 42.)

**B. Source Identifier**

In general, book titles are considered descriptive and are protectable only upon a showing of secondary meaning. See, e.g., Dr. Seuss Enterprises, L.P. v. ComicMix LLC, 300 F. Supp. 3d 1073, 1084-85 (S.D. Cal. 2017); Herbko Intern., Inc. v. Kappa Books, Inc., 308 F.3d 1156, 1162 (Fed. Cir. 2002) ("The title of a single book cannot serve as a source identifier."). However, "[i]t is well settled that the title to a *series* of records or books is able to function as and be registered as a trademark," if it identifies the source of the work. In re Polar Music Intern. AB, 714 F.2d 1567, 1572 (Fed. Cir. 1983); see also Spin Master, Ltd. v. Zobmondo Entertainment, LLC, 944 F. Supp. 2d 830, 853 (C.D. Cal. 2012). This is because:

> The name for a series, at least while it is still being published, has a trademark function in indicating that each book of the series comes from the same source as the others. The name of the series is not descriptive of any one book and each book has its individual name or title. A series name is comparable to the title of a periodical publication such as a magazine or newspaper. While it may be indicative, either specifically or by association in the public mind, of the general nature of the contents of the publication, it is not the name or title of anything contained in it.

In re Cooper, 254 F.2d 611, 615 (C.C.P.A. 1958)).

The Complaint alleges that Fierce Inc. has published a series of books—*Fierce Conversations* and *Fierce Leadership*, and that the "Fierce" mark is "well-known and recognized, especially by business organizations." (Complaint at ¶ 24.) Accordingly, the Court finds that Fierce Inc. has pled "sufficient source identification" and the "requisite association in the public mind." SpinMaster, 944 F. Supp. 2d at 853-54; Herbko, 308 F.3d at 1163.

**C. Expressive Work**

Where an allegedly infringing use of a mark appears in the title of an expressive work, such as a book, it does not violate the Lanham Act "unless the title has no artistic relevance to the underlying work whatsoever or if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 902 (9th Cir. 2002) (quoting Rogers v. Grimaldi, 875 F.2d 994 (2nd Cir. 1989)). The Ninth Circuit has explained that the reasons for treating expressive works differently from other covered works include (1) that "they implicate the First Amendment right of free speech, which must be balanced against the public interest in avoiding consumer confusion"; and (2) that "consumers are less likely to mistake the use of someone else's mark in an expressive work for a sign of association, authorship, or endorsement." Twentieth Century Fox TV v. Empire Distrib., Inc., 875 F.3d 1192, 1196 (citing Rogers, 875 F.2d at 997-1000; Mattel, 296 F.3d at 900, 902).

While there can be no dispute that *Fierce Loyalty* is an expressive work, the Court finds that Fierce Inc. has alleged facts giving rise to a reasonable inference that the title is explicitly misleading. The Ninth Circuit has explained that the "second prong of the Rogers test 'points directly at the purpose of trademark law, namely to avoid confusion in the marketplace by allowing a trademark owner to prevent other from duping consumers into buying a product they mistakenly believe is sponsored [or created] by the trademark owner." Brown, 724 F.3d at 1245 (citation omitted). In determining whether use of a mark explicitly misleads, the Court considers "all of the relevant facts and circumstances." Gordon v. Drape Creative, Inc., 909 F.3d 257, 269 (9th Cir. 2018) (citation omitted). "In some instances, the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself." Id. at 270. Relevant considerations include (1) "the degree to which the junior

user uses the mark in the same way as the senior user" and (2) "the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself." Id.

The Complaint indicates that Franklin Covey used "Fierce" in the same context and market in which it is used by Fierce Inc.—that is, as the title of a book identifying strategies to help businesses "increase engagement and loyalty from both employees and customers." (See Dkt. No. 1 at ¶ 23); Cf. Gordon, 909 F.3d at 270 ("In the cases in which we have applied the Rogers test, the junior user has employed the mark in a different context—often in an entirely different market—than the senior user."). Further, Franklin Covey followed the same "Fierce _____" naming convention used by Fierce Inc. in connection with their products and services (e.g., "Fierce Conversations," "Fierce Leadership," "Fierce Accountability," "Fierce Coaching," etc.) and presented *Fierce Loyalty* using a color, typeface, and visual format similar to *Fierce Conversations* and *Fierce Leadership*.

Based upon these considerations, the Court cannot determine as a matter of law that Franklin Covey's use of "Fierce" in *Fierce Leadership* was not an "overt claim[] or explicit reference" to Fierce Inc. and therefore "explicitly misleading as to source." Cf. Twentieth Century Fox, 857 F.3d at 1199; Gordon, 909 F.3d at 271. In any event, as discussed supra, the Court finds that, at this stage, Fierce Inc. has established a likelihood of consumer confusion such that the reasons for treating expressive works differently from other covered words do not apply.

The Court DENIES Franklin Covey's Motion to Dismiss the trademark infringement and unfair competition claims.

1       **IV.    Trade Dress Claims**

2       Franklin Covey contends that Fierce Inc. has failed to state a claim for trade dress
3   infringement because (1) its alleged trade dress is not clearly defined; (2) it has failed to allege
4   that the trade dress has acquired secondary meaning; and (3) it has failed to allege that the trade
5   dress is non-functional. (Dkt. No. 9 at 24-31.)
6       "In contrast to trademark, 'trade dress' refers to the 'total image of a product' and may
7   include features such as size, shape, color, color combinations, texture, or graphics." Int'l
8   Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir. 1993) (citation omitted). The
9   focus is not on the individual elements, but on the "overall visual impression that the
10  combination and arrangement of those elements create." Clicks Billiards, Inc. v. Sixshooters,
11  Inc., 251 F.3d 1252, 1259 (9th Cir. 2001). To establish a claim for infringement of unregistered
12  trade dress, a plaintiff must show that (1) the trade dress is inherently distinctive or has acquired
13  distinctiveness through secondary meaning; (2) the trade dress is nonfunctional; and (3) there is a
14  likelihood that the public will be confused by the infringing use. See Stephen W. Boney, 127
15  F.3d at 828.
16      Because the Court finds that Fierce Inc.'s alleged trade dress is not inherently distinctive,
17  it does not reach the other grounds upon which Franklin Covey seeks dismissal.
18          **A. Distinctiveness**
19      Fierce Inc. identifies its unregistered trade dress as a specific color scheme (a "distinctive
20  orange color" in conjunction with contrasting black and white) and a specific typeface. (Dkt.
21  No. 1 at ¶ 19-21, 27.)
22      As an initial matter, the Court notes that in determining whether trade dress is distinctive,
23  there is an important distinction between product packaging and product design. Trade dress
24

constitutes product packaging when it is intended to "identify the source" or serve a purely aesthetic function. See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 213 (2000). In contrast, trade dress constitutes product design when it is intended to "render the product itself more useful or more appealing." Id. *Product design* requires a showing of secondary meaning, while *product packaging* requires a showing of inherent distinctiveness only. Id. at 211. Franklin Covey's Motion to Dismiss appears to ignore this distinction altogether, and to be "laboring under the misapprehension that all trade dress constitutes product design, and is therefore only protectable if it has achieved secondary meaning." Moroccanoil, Inc. v. Golan, 2012 WL 12885696, at *4 (C.D. Cal. Sept. 26, 2012). Because it is undisputed that Fierce Inc.'s alleged trade dress is product packaging (Dkt. No. 19 at 19), secondary meaning is not required. Golan, 2012 WL 12885696, at *4; Moroccanoil, Inc. v. Zotos Int'l, Inc., 230 F. Supp. 3d 1161, 1172 (C.D. Cal. 2017) (same).

In evaluating inherent distinctiveness, relevant factors include whether the alleged trade dress features "a common basic shape or design," and whether the design is "unique or unusual in a particular field" or "a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods." Preferred Nutrition, Inc. v. Vanderhaeghe, Case No. C10-907RAJ, 2010 WL 11565193, at *9 (W.D. Wash. Nov. 22, 2010) (citing Lisa Frank, Inc. v. Impact Intern., Inc., 799 F. Supp. 790, 988 (D. Ariz. Aug. 13, 1992).) While individual colors generally are not inherently distinctive, "the use of colors to create a unique overall impression may go beyond 'mere ornamentation' and can be an indicator of source." Lisa Frank, 799 F. Supp. at 988.

The Court finds that Fierce Inc. has failed to plead facts giving rise to a reasonable inference that its trade dress is inherently distinctive. The Complaint alleges that "[s]ince shortly after its founding, Fierce has used the color orange in connection with almost everything it does," and provides the following representative images:





(Dkt. No. 1 at ¶ 19.)

(Id. at ¶ 27.)

    The alleged trade dress appears to consist of the color orange, used in conjunction with gray and white, with a sans-serif typeface. These elements, without more, are neither "unique" nor "unusual" with respect to book covers or any other medium. Compare Lisa Frank, 799 F. Supp. at 986, 989 (finding "use of bold colors and a graduated color-fade with knock-out graphics and other artwork" created "distinctive visual impression in the minds of consumers"); AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1536 (11th Cir. 1986) (finding "square size, bright

coloring, pebbled texture, polar bear and sunburst images, and distinctive style of printing" inherently distinctive); Chevron Chem. Co. v. Voluntary Purchasing Grps. Inc., 659 F.2d 695 (5th Cir. 1981) (finding "the combination of particular hues of [red and yellow], arranged in certain geometric designs, presented in conjunction with a particular style of printing" created "distinctive visual impression").

Having found that the alleged trade dress is not inherently distinctive, the Court concludes that it is not protectable as a matter of law and does not reach the remaining grounds upon which Franklin Covey seeks dismissal.

The Court GRANTS Franklin Covey's Motion to Dismiss the trade dress infringement claims, and dismisses these claims with prejudice.

### V. Motion for Relief from Deadline

In light of its ruling on the Motion to Dismiss, the Court GRANTS Franklin Covey's motion for relief from the deadline for amended pleadings. Plaintiffs shall file an amended pleading within fourteen (14) days of the date of this Order.

**Conclusion**

(1) The Court DENIES the Motion to Dismiss with respect to the trademark infringement claims;

(2) The Court GRANTS the Motion to Dismiss with respect to the trade dress infringement claims, and dismisses these claims with prejudice;

(3) The Court GRANTS the Motion for Relief from Deadline, and hereby extends the deadline for amended pleadings to fourteen (14) days from the date of this Order.

The clerk is ordered to provide copies of this order to all counsel.

Dated April 2, 2019.

Marsha J. Pechman
United States District Judge